```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
UNITED STATES OF AMERICA,                                        :
                                                                 :
       -v-                                                       :
                                                                 :
LUIS BLONDET,                                                    :
     a/k/a "Cabezon";                                            :
JULIO MARQUEZ-ALEJANDRO,                                         :    S5 16-CR-387 (JMF)
     a/k/a "Chino Montero";                                      :
OSCAR VALDEZ-GARCIA,                                             :
     a/k/a "Pony";                                               :    OPINION AND ORDER
JASON DONES-GONZALEZ,                                            :
     a/k/a "Jason,"                                              :
     a/k/a "Arrabal";                                            :
JOSE VICTOR PELLOT-CARDONA,                                      :
     a/k/a "Vitito";                                             :
REINALDO CRUZ-FERNANDEZ,                                         :
     a/k/a "Remy";                                               :
RALPH LABOY; and                                                 :
WILLIAM VASQUEZ-BAEZ,                                            :
                                                                 :
                           Defendants.                           :
                                                                 :
-----------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

      Defendants Luis Blondet, Julio Marquez-Alejandro, Oscar Valdez-Garcia, Jason Dones-Gonzalez, Jose Victor Pellot-Cardona, Reinaldo Cruz-Fernandez, Ralph Laboy, and William Vasquez-Baez are charged with a variety of racketeering and violent crimes, including murder, relating to their alleged involvement in "La Organizacion de Narcotraficantes Unidos" ("La ONU"). *See* ECF No. 211 ("S5 Indictment"). Trial is scheduled to being on February 25, 2020. *See* ECF No. 220. Now pending are motions filed by Defendants seeking various forms of pretrial relief, including transfer of the case to the United States District Court for the District of Puerto Rico, dismissal of the S5 Indictment, inspection of the grand jury minutes, severance of

the trial, and disclosure of certain evidence. *See* ECF Nos. 250, 259, 261, 263, 266, 267, 269, 270.[1] For the reasons stated below, the motions are denied in their entirety.

**A. Motion to Dismiss for Lack of Venue**

First, Marquez-Alejandro moves to dismiss the S5 Indictment on the ground that venue in this District is improper. *See* ECF No. 262 ("Marquez-Alejandro Br."), at 3-6. "[W]here venue is challenged on a pre-trial motion to dismiss, the Government's burden is limited to showing that the indictment alleges facts sufficient to support venue." *United States v. Chait*, No. 17-CR-105 (JMF), 2017 WL 6502228, at *1 (S.D.N.Y. Dec. 18, 2017) (internal quotation marks omitted). Here, "that means that the Indictment must allege that at least one 'overt act in furtherance of the conspiracy' — that is, 'any act performed by any conspirator for the purpose of accomplishing the objectives of the conspiracy' — occurred in the district of prosecution." *Id.*; *see, e.g.*, *United States v. Saavedra*, 223 F.3d 85, 92-93 (2d Cir. 2000) (venue for 18 U.S.C. § 1959); *United States v. DeJesus*, 48 F. Supp. 2d 275, 279 (S.D.N.Y. 1998) (venue for 18 U.S.C. § 1962); *United States v. Gotti*, 660 F. Supp. 2d 512, 517-18 (S.D.N.Y. 2009) (venue for 21 U.S.C. § 848(e)(1)(A)); *United States v. Shaw*, No. 06-CR-41 (CM), 2007 WL 4208365, at *2-3 (S.D.N.Y. Nov. 20, 2007) (venue for 18 U.S.C. § 924(j)); *see also* 18 U.S.C. §§ 3235, 3237(a). It does: The S5 Indictment alleges that La ONU "traffick[ed] cocaine" into the Bronx and engaged in racketeering activity "in the Southern District of New York and elsewhere." S5 Indictment ¶¶ 1, 5. These allegations, if proved, are sufficient to establish venue. *See United States v. Kirk Tang Yuk*, 885 F.3d 57, 70 (2d Cir. 2018); *see also, e.g.*, *United States v. Dupigny*, No. S1 18-CR-528 (JMF), 2019 WL 2327697, at *4 (S.D.N.Y. May 30, 2019) (denying a motion

---

[1] Fernando Gomez, also charged in the S5 Indictment, filed motions as well, but the Court denied those motions as moot after he entered a guilty plea. *See* ECF Nos. 273, 282.

to dismiss for lack of venue based on allegations in the indictment that the defendant had "committed the offenses 'within the Southern District of New York and elsewhere,'" noting that "[t]hat general allegation is sufficient to support venue at this stage, as innumerable courts in this District have held" (citing cases)). Accordingly, the motion is DENIED without prejudice to renewal at the close of the Government's case. *See United States v. Ohle*, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010) ("The question of whether there is sufficient evidence to support venue is appropriately left for trial.").

**B. Motion to Transfer to the District of Puerto Rico**

Next, Marquez-Alejandro also moves to transfer the case to the United States District Court for the District of Puerto Rico pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure. *See* Marquez-Alejandro Br. 6-16. Rule 21(b) provides that, "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interests of justice." Fed. R. Crim. P. 21(b). In deciding whether transfer is appropriate under the Rule, a district court must consider and balance the following non-exhaustive list of factors: (1) the location of the defendants; (2) the location of possible witnesses; (3) the location of events likely to be at issue; (4) the location of relevant documents; (5) the potential for disruption of the defendant's business if transfer is denied; (6) expenses to be incurred by the parties if transfer is denied; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) docket conditions in each district; and (10) any other special circumstances that might bear on the desirability of transfer. *See Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964); *see also, e.g.*, *United States v. Larsen*, No. 13-CR-688 (JMF), 2014 WL 177411, at *2 (S.D.N.Y. Jan. 16, 2014). The convenience of "any victim" must also be considered. *See* Fed.

R. Crim. P. 21(b); *see also, e.g.*, *Larsen*, 2014 WL 177411, at *2 n.2. "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (alterations and internal quotation marks omitted).

"As a general rule . . . a criminal prosecution should be retained in the original district in which it was filed." *Larsen*, 2014 WL 177411, at *2 (internal quotation marks omitted). Thus, the defendant bears the burden of proving that fairness requires transfer to another district. *Id.* "That burden is not often or easily met: In the words of Judge Edward Weinfeld, '[t]o warrant a transfer from the district where an indictment was properly returned it should appear that a trial there would be so unduly burdensome that fairness requires the transfer to another district.'" *Id.* (quoting *United States v. U.S. Steel Corp.*, 233 F. Supp. 154, 157 (S.D.N.Y. 1982)). Moreover, there has been a "trend in recent years away from granting transfers" pursuant to Rule 21(b). *United States v. Quinn*, 401 F. Supp. 2d 80, 85-86 (D.D.C. 2005) (citing cases and treatises). "This is hardly surprising when one considers the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades." *Id.* at 86.

In this case, only one factor — the location of the defendants — weighs in favor of transfer, albeit less than it might have in other circumstances given that Marquez-Alejandro and several other Defendants were in federal custody in the continental United States at the time of their arrests. *See, e.g.*, *United States v. Allen*, No. 13-CR-22-A, 2014 WL 4402129, at *2 (W.D.N.Y. Sept. 5, 2014) (denying a motion to transfer, in part, because the defendant was "in the custody of the United States Marshal's Service" and thus no longer resided in the district to which he sought to be transferred); *United States v. Freeman*, No. 2:06-CR-20089-017, 2009 WL 2222969, at *2 (W.D. La. July 23, 2009) (same). The second factor — the location of

4

possible witnesses — does not weigh in favor of transfer because Marquez-Alejandro fails to identify any specific witnesses who would be unable to testify in this District. *See United States v. Avenatti*, No. 19-CR-374 (DAB), 2019 WL 4640232, at *3 (S.D.N.Y. Sept. 24, 2019) ("[T]ransfer is unwarranted based on the mere possibility that unnamed, purported . . . witnesses will be unable to testify because of the location of the trial."); *accord United States v. Estrada*, 880 F. Supp. 2d 478, 482-83 (S.D.N.Y. 2012). The third factor — the location of events likely to be at issue — also weighs against transfer because the racketeering enterprise allegedly "had ties to both" the Southern District of New York and the District of Puerto Rico. *See United States v. Guastella*, 90 F. Supp. 2d 335, 339 (S.D.N.Y. 2000). As a result, the convenience of potential victims does not favor transfer either. And other factors, such as the expenses to be incurred by the parties and the location of counsel, weigh even more strongly against transfer. These considerations outweigh the first factor, which "should not be given dispositive weight." *United States v. Canale*, No. 14-CR-713 (KBF), 2015 WL 3767147, at *5 (S.D.N.Y. June 17, 2015).

Accordingly, Marquez-Alejandro's motion to transfer venue is DENIED.

**C. Motions to Dismiss the S5 Indictment**

Next, Blondet and Pellot-Cardona move to dismiss the S5 Indictment in part and in whole. *See* ECF No. 265 ("Blondet Br."), at 4-13; ECF No. 260 ("Pellot-Cardona Br."), at 2-9. "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008) (internal quotation marks omitted). Significantly, "[a] defendant faces a high standard in seeking to dismiss an indictment." *United States v. White*, No. 17-CR-611 (RWS), 2018 WL 4103490, at *2 (S.D.N.Y. Aug. 28, 2018) (internal quotation marks omitted).

Indeed, "[t]he Second Circuit has 'consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Yücel*, 97 F. Supp. 3d 413, 423 (S.D.N.Y. 2015) (quoting *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999)) (internal quotation marks omitted). Moreover, so long as the indictment has "stated the elements of the offense and provided even minimal protection against double jeopardy," the Court may also consider the Government's other pretrial disclosures to determine whether the defendant has been "sufficiently informed to defend against the charges and to be protected against the risk of double jeopardy." *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013).

Measured against these standards, Defendants' motions plainly fail. Relying in large part on a disclosure letter from the Government, Blondet argues that Count Two of the S5 Indictment fails to adequately allege that the killing of Crystal Martinez-Ramirez was committed "for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity," 18 U.S.C. § 1959(a). *See* Blondet Br. at 4-13; *see also* ECF No. 264-1. Meanwhile, Pellot-Cardona argues that the entire indictment should be dismissed because it fails to allege a racketeering "enterprise" within the meaning of 18 U.S.C. § 1961(4). *See* Pellot-Cardona Br. at 2-9. With respect to the former, however, the S5 Indictment sufficiently alleges that the killing of Crystal Martinez-Ramirez was a violent crime in aid of racketeering. *See* S5 Indictment ¶¶ 7-9 (alleging, *inter alia*, that the killing was "for the purpose of gaining entrance to and maintaining and increasing position in La ONU"); *see also* 18 U.S.C. § 1959(a); *cf. United States v. Vernace*, 811 F.3d 609, 616-17 (2d Cir. 2016) (holding that a reasonable jury could conclude that murders prompted by a spilled drink were designed to show "that the Gambino crime family 'ran the place'" and "to further [the defendant's] *own* reputation, thereby enabling

him to more effectively carry out the activities of the Gambino crime family" (alterations omitted)); *United States v. Santiago-Ortiz*, No. 17-CR-149 (LAK), 2018 WL 4054859, at *4-5 (S.D.N.Y. Aug. 23, 2018) (holding that a reasonable jury could conclude that "disrespect[] as a result of a personal dispute" could prompt a violent crime "to avenge that disrespect *and*, in doing so, . . . preserve and strengthen his own reputation and that of the enterprise"). And with respect to the latter, the S5 Indictment sufficiently alleges that La ONU is a racketeering "enterprise." *See* S5 Indictment ¶¶ 2-5 (alleging, *inter alia*, that La ONU was a "group of individuals associated in fact" from 2004 to 2016); *see also* 18 U.S.C. § 1961(4); *Boyle v. United States*, 556 U.S. 938, 946 (2009). At bottom, Defendants' arguments are premature challenges to the sufficiency of the Government's evidence at trial. Accordingly, Blondet's and Pellot-Cardona's motions to dismiss are DENIED.

### D. Motion to Inspect Grand Jury Minutes

In light of the Government's disclosure letter, Blondet also moves for disclosure or *in camera* review of the grand jury minutes. *See* Blondet Br. 13-19. Grand jury materials are presumptively secret, *see* Fed. R. Crim. P. 6(e)(2)-(3), and generally may not be disclosed "except where compelling necessity exists." *United States v. Bowen*, 18-CR-00205-2 (NSR), 2019 WL 2240258, at *3 (S.D.N.Y. May 23, 2019). The defendant bears the burden of showing a "particularized need" for the material. *Henareh v. United States*, No. 14-CV-7145 (JSR) (SDA), 2018 WL 3468715, at *5 (S.D.N.Y. June 8, 2018). Blondet fails to meet this burden. First, he incorrectly asserts that the information in the Government's letter — namely, that the murder of Crystal Martinez-Ramirez was an unplanned response to her rejection of his advances and "disrespect to Blondet in front of other La ONU leaders," *see* ECF No. 264-1 — "renders Mr. Blondet's motivation incompatible" with the motive required by 18 U.S.C. § 1959(a).

7

Blondet Br. 19; *see United States v. Farmer*, 583 F.3d 131, 143 (2d Cir. 2009) (noting that the enhancement of status need not be the "sole or principal" motive to support a charge under Section 1959); *see also Vernace*, 811 F.3d at 617; *Santiago-Ortiz*, 2018 WL 4054859, at *4-5. Blondet then relies on this incorrect premise to speculate that the Government must have misled the grand jury or otherwise given a "deficien[t]" presentation. Blondet Br. 16. Such speculation, however, does not justify unsealing grand jury materials. *See Henareh*, 2018 WL 3468715, at *5; *see also United States v. Shyne*, No. 05-CR-1067 (KMK), 2007 WL 1075035, at *9 (S.D.N.Y. Apr. 5, 2007) ("It is decidedly not the province of the federal courts to police the sufficiency of the evidence in a prosecutor's presentation to the Grandy Jury."). Accordingly, Blondet's motion to inspect the grand jury minutes is DENIED.

**E. Motion to Sever the Trial**

Next, Pellot-Cardona moves to sever the trial of Marquez-Alejandro and Valdez-Garcia from the trial of all other Defendants, "who are charged with committing one murder or less." Pellot-Cardona Br. 10. Under Rule 14 of the Federal Rules of Criminal Procedure, the Court may "sever the defendants' trials" if "consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). There is, however, a "preference in the federal system for joint trials of defendants who are indicted together," *Zafiro v. United* States, 506 U.S. 534, 537 (1993), especially "when, as here, the defendants are indicted as part of a common scheme or plan," *United States v. Gotti*, No. 02-CR-743 (RCC), 2004 WL 602689, at *6 (S.D.N.Y. Mar. 26, 2004). Thus, "a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks omitted). Among the factors the Court should consider are "(1) the number of defendants and the number of counts; (2) the complexity of the

indictment; (3) the estimated length of the trial; (4) disparities in the degrees of involvement by defendants in the overall scheme; (5) possible conflict between various defense theories; and (6) prejudice resulting from evidence admissible as to some defendants, but not others." *United States v. Ramos*, 346 F. Supp. 2d 567, 570 (S.D.N.Y. 2004).

Applying those standards, the Court concludes that Pellot-Cardona does not meet the heavy burden required for severance. First, contrary to Pellot-Cardona's assertions, *see* Pellot-Cardona Br. 12, the mere fact that there are eight remaining defendants does not call for a severance, particularly because some of the remaining defendants may yet plead guilty. *See, e.g.*, *United States v. Ashburn*, No. 11-CR-303 (NGG), 2014 WL 1800409, at *12 (E.D.N.Y. May 6, 2014) (noting that a trial of six defendants fell "well below" the threshold for unwieldy multidefendant trials); *United States v. Lino*, No. 00-CR-632 (WHP), 2001 WL 8356, at *2 (S.D.N.Y. Jan. 2, 2001) (noting that a RICO case was severed for trial into groups of fourteen and six defendants). The Government estimates that, even without guilty pleas, trial will take about six to eight weeks, *see* ECF No. 276 ("Gov't Opp."), at 35, well within the manageable range for joint trials, *see United States v. Casamento*, 887 F.2d 1141, 1152 (2d Cir. 1989) (noting that joint trials expected to "exceed four months" and involving "more than ten defendants" should be scrutinized for possible severance). Second, with respect to Pellot-Cardona's argument about the risk of spillover prejudice, "[i]t is almost inevitable that in an unlawful scheme or conspiracy involving several defendants some will be shown to have been more culpable than others." *United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984). In any event, Pellot-Cardona's assertion that the jury will be unable to properly distinguish among the Defendants is entirely speculative, and any issues that do arise can be addressed through curative

9

instructions and other courtroom management tools. *See United States v. Guerrero*, 669 F. Supp. 2d 417, 425 (S.D.N.Y. 2009).

Accordingly, Pellot-Cardona's motion for a severance is DENIED.[2]

**F. Motions for Disclosure**

Finally, several Defendants move for disclosure of evidence under a variety of theories. *See* ECF Nos. 250, 259, 261, 266, 270. These motions are without merit, substantially for the reasons set forth in the Government's opposition.[3] *See* Gov't Opp. 50-62. First, to the extent that these motions seek evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), and their progeny, *see* ECF Nos. 250, 259, they are DENIED on the basis of the Government's good-faith representation that it has complied with its obligations and will continue to do so, *see* Gov't Opp. 51; *see also, e.g.*, *United States v. Davis*, No. 17-CR-610 (LGS), 2018 WL 4373998, at *10 (S.D.N.Y. Sept. 13, 2018); *United States v. Mangano*, No. 16-CR-540 (JMA), 2018 WL 851860, at *17 (E.D.N.Y. Feb. 9, 2018) ("Courts in the Second Circuit generally do not compel immediate disclosure of *Brady*/*Giglio* materials where (1) the Government represents it is aware of and will comply with its *Brady*/*Giglio* obligations, and (2) the Defense does not provide any reason for suspecting the Government will

---

[2] Blondet requests leave to file a severance motion after receiving additional information from the Government. *See* Blondet Br. 20-21. Although the Court is skeptical that there are likely to be valid grounds for a severance, to the extent that Blondet (or any other Defendant) believes that a severance would be justified based upon information obtained after the instant motions were filed, he is granted leave to file a motion for a severance. Any such motion shall be filed **no later than forty-five days before trial**.

[3] In addition, the motions may be denied for the independent reason that they are not accompanied by an "affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement," as required by Rule 16.1 of the Local Criminal Rules for the Southern District of New York. *See, e.g.*, *United States v. Molina*, No. 11-CR-528 (JFK), 2013 WL 2455922, at *4 (S.D.N.Y. June 5, 2013) (citing cases).

not comply." (internal quotation marks omitted)).[4] In any event, the Government represents that it will produce "the majority" of Giglio material for cooperating witnesses no later than six weeks before trial (subject to an appropriate protective order restricting such material to counsel's eyes only) and the rest no later than two weeks before trial, Gov't Opp. 58, and there is no basis to conclude (on the present record) that that timetable would be inadequate.

Second, assuming for the sake of argument that the Court even has authority to order early disclosure of the remaining items Defendants seek, *see, e.g.*, *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001) ("[The] Jencks Act *prohibits* a District Court from ordering the pretrial disclosure of witness statements." (emphasis added)), the Government's representations suffice for present purposes. The Government represents that it will:

- disclose "other acts" evidence that it seeks to admit pursuant to Rule 404(b) of the Federal Rules of Evidence no later than sixty days prior to trial;

- produce "the majority" of Jencks Act material for cooperating witnesses no later than six weeks before trial (subject to an appropriate protective order restricting such material to counsel's eyes only) and the rest no later than two weeks before trial; and

- provide notice of its intention to call any experts no later than forty-five days before trial.

*See* Gov't Opp. 58, 61. That schedule is more than adequate under the law. *See* Fed. R. Evid. 404(b) (requiring only "reasonable notice" of the use of such evidence); *United States v. Rivera*,

---

[4] For similar reasons, the Court rejects Dones-Gonzalez's request for an order compelling disclosure of various evidence, including "the unredacted Puerto Rico Police Department (P.R.P.D.) investigatory file." ECF Nos. 252, at 2-3, 252-1; *see also* ECF Nos. 250, 259. That is, the Government represents that it has produced all Rule 16 material within its "possession, custody, or control." Gov't Opp. 51-52; Fed. R. Crim. P. 16; *see United States v. Lobo*, No. 15-CR-174 (LGS), 2017 WL 1102660, at *2 (S.D.N.Y. Mar. 22, 2017) ("[T]he prosecution must disclose documents material to the defense (1) that it has actually reviewed, or (2) that are in the possession, custody, or control of a government agency so closely aligned with the prosecution so as to be considered part of the 'prosecution team.'" (internal quotation marks omitted)); *United States v. Chalmers*, 410 F. Supp. 2d 278, 289-90 (S.D.N.Y. 2006) (declining to require disclosure of documents held by federal agencies that conducted separate investigations). Dones-Gonzalez provides no basis to question that representation.

No. 16-CR-175 (LGS), 2017 WL 1843302, at *1 (S.D.N.Y. 2017) ("Courts in this Circuit have held that two or three weeks' notice [for Rule 404(b) evidence] is reasonable." (internal quotation marks omitted)); *United States v. Noble*, No. 07-CR-284 (RJS), 2008 WL 1990707, at *9 (S.D.N.Y. May 7, 2008) (approving the United States Attorney's Office's agreement "to produce any . . . § 3500 material on the Friday before trial, consistent with its standard practice" (internal quotation marks omitted)); *Lino*, 2001 WL 8356, at *21 (providing for expert witness disclosure thirty days before trial). Accordingly, to the extent that the Court has authority to do so, it adopts the Government's proposed dates as deadlines. It further orders that (1) Defendants shall notify the Government of their intention to call any expert witnesses **no later than thirty days prior to trial**; and (2) the Government shall provide a list of its trial exhibits to Defendants **no later than fourteen days before trial**.

## CONCLUSION

For the reasons stated above, Defendants' motions are all denied. All dates and deadlines — including the trial date of February 25, 2020, *see* ECF No. 220 — remain in effect. The Clerk of Court is directed to terminate ECF Nos. 250, 259, 261, 263, 266, 267, 269, and 270.

SO ORDERED.

Dated: November 4, 2019
       New York, New York

_____
              JESSE M. FURMAN
              United States District Judge