```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
UNITED STATES OF AMERICA                                               :
                                                                       :
                       -v-                                             :    16-CR-387 (JMF)
                                                                       :
LUIS BLONDET and                                                       :    OPINION AND ORDER
JULIO MARQUEZ-ALEJANDRO,                                               :
                                                                       :
                              Defendants.                              :
                                                                       :
-----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In this case, familiarity with which is presumed, Defendants Luis Blondet and Julio Marquez-Alejandro are charged with conspiracy to participate in a largescale racketeering enterprise — namely, *La Organizacion de Narcotraficantes Unidos* or *La ONU* — and various murders. See ECF No. 525. Trial is scheduled to begin on March 16, 2022. On December 20, 2021, Defendants filed thirteen motions — *in limine* motions as well as motions to sever, dismiss, and transfer venue. See ECF No. 591 ("Defs.' Mot.").[1] On February 8, 2022, Defendants filed a motion seeking an order directing the Government to comply with its disclosure obligations. See ECF No. 629 ("Defs.' Disclosure Mot.").

The Court will address each in turn.

1. **Motion to Preclude Acts Listed in the Government's Enterprise Letter**

First, Defendants' motion to preclude evidence of the acts set forth in the Government's "enterprise letter" of December 3, 2021, see ECF No. 580, is DENIED, substantially for the reasons set forth in the Government's opposition memorandum of law, see ECF No. 600 ("Gov't

---

[1]    In a footnote, Defendants seek leave to file an oversized joint motion in limine. See Defs.' Mot. 1 n1. That motion is GRANTED.

Opp'n"), at 1-13.  In a conspiracy case, it is well established that "[t]he Government need not . . . set out with precision" in the indictment "each and every act committed . . . in furtherance of the conspiracy," particularly where the acts proven at trial were part of the "core of the overall scheme and in furtherance of that scheme."  *United States v. Cohen*, 518 F.2d 727, 733 (2d Cir. 1975).  In the case of a racketeering conspiracy — Count One here — "the object . . . is to conduct the affairs of a charged enterprise through a pattern of racketeering, not to commit discrete predicate acts."  *United States v. Pizzonia*, 577 F.3d 455, 459 (2d Cir. 2009).  Thus, although the jury is required to find "the *types* of predicate racketeering acts that the defendants agreed to commit," it is not required to find that any particular act was committed.  *United States v. Applins*, 637 F.3d 59, 82 (2d Cir. 2011) (emphasis added).  It follows from these principles that allowing proof of the acts set forth in the Government's enterprise letter would not be a constructive amendment of the indictment, which alleges that the racketeering activity contemplated by the conspiracy included "multiple acts involving murder," "offenses involving trafficking in controlled substances," and "multiple acts involving bribery."  ECF No. 525, ¶ 5.  The acts themselves are merely "the particulars of how [the] defendant[s] effected the crime" charged. *United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012).[2]

      Nor is there any merit to Defendants' contention that admitting evidence of the acts set forth in the Government's enterprise letter would "jeopardize the constitutionality of the RICO conspiracy statute as applied to the defendants."  Defs.' Mot. 9.  As the Government notes, the Second Circuit has repeatedly rejected as-applied vagueness challenges to the RICO statute.  *See* Gov't Opp'n 10-11 (citing *United States v. Burden*, 600 F.3d 204 (2d Cir. 2010), *United States v.*

---

[2]     Given the Court's conclusion, there is no basis to Defendants' request that the Court inspect the grand jury minutes.  *See* Defs.' Mot. 10.

*Coiro*, 922 F.2d 1008, 1017 (2d Cir. 1991), and other cases). And Defendants provide no basis to distinguish these decisions here. At bottom, the gravamen of their complaint seems to be that the *indictment*, not the statute, fails to provide them with sufficient notice because it charges them with the types of racketeering activity rather than specific acts. But, as noted, that is consistent with well-established law. *See, e.g.*, *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (reaffirming that "an indictment need do little more than to track the language of the statute charged and state the approximate time and place (in approximate terms) of the alleged crime"); Fed. R. Crim. P. 7(c)(1).[3] And, in any event, given the indictment, the Government's enterprise letter, and discovery (including the voluminous 3500 material), Defendants have ample notice of both the charges and the Government's likely proof at trial.

### 2. Motion to Dismiss the Indictment

Defendants' next motion — to dismiss the indictment — is easily rejected. Defendants maintain that the charges and the Government's theory are inconsistent with prior prosecutions brought by the United States Attorney's Office for the District of Puerto Rico. *See* Defs.' Mot. 10-19. They also invoke the multiple-conspiracies doctrine. *See* Defs.' Mot. 15-16. At bottom, however, these arguments amount to an argument that the Government cannot prove the charges in the indictment. That is the basis for a trial, not dismissal of the indictment — and Defendants cite no authority to the contrary. Accordingly, Defendants' motion to dismiss is DENIED.

### 3. Motion for a Bill of Particulars

Next, Defendants' motion for a bill of particulars naming "unindicted co-conspirators that the government has relied upon in charging" them, Defs.' Mot. 19, fails for three independent

---

[3] Moreover, the remedy for any such a defect would not be exclusion, but a bill of particulars. As discussed below, however, that is not warranted here either.

reasons. First, Defendants failed to comply with Local Criminal Rule 16.1 for the Southern and Eastern Districts of New York, which provides that "[n]o motion addressed to a bill of particulars or any discovery matter shall be heard unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement." Local Crim. R. 16.1. By itself, that failure is fatal to the motion. *See, e.g.*, *United States v. Goode*, No. 16-CR-529 (NSR), 2018 WL 919928, at *15 (S.D.N.Y. Feb. 15, 2018); *United States v. Mahabub*, No. 13-CR-908 (AJN), 2014 WL 4243657, at *2 (S.D.N.Y. Aug. 26, 2014).

Second, "the request is largely moot in light of voluntary disclosures that the Government has made." Gov't Opp'n 17. And third, even if the motion were not procedurally barred or moot, the motion falls short on the merits. It is well established that a bill of particulars "is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *United States v. Gibson*, 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001). Instead, "[a] motion for a bill of particulars should be granted only where necessary (1) to inform the accused of the charges against him with sufficient precision to enable him to prepare his defense and avoid surprise; and (2) to enable the accused to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Carroll*, No. 19-CR-545 (CM), 2020 WL 1862446, at *5 (S.D.N.Y. Apr. 14, 2020). Here, given the Indictment, the Government's disclosures (which now includes detailed Jencks Act materials), and the Government's multiple "enterprise letters," there is no question that Defendants are on sufficient notice of the charges against them that a bill of particulars is not warranted. *See, e.g.*, *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999).

4

4. **Defendants' Motions to Sever**

Next, each Defendant moves for a severance. Defs.' Mot. 31-32. Under Rule 14 of the Federal Rules of Criminal Procedure, the Court may "sever the defendants' trials" if "consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). There is, however, a "preference in the federal system for joint trials of defendants who are indicted together," *Zafiro v. United* States, 506 U.S. 534, 537 (1993), especially "when, as here, the defendants are indicted as part of a common scheme or plan," *United States v. Gotti*, No. 02-CR-743 (RCC), 2004 WL 602689, at *6 (S.D.N.Y. Mar. 26, 2004). Thus, "a defendant who seeks separate trials under Rule 14 carries a heavy burden of showing that joinder will result in substantial prejudice." *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994) (internal quotation marks omitted); *United States v. Rosa*, 11 F.3d 315, 341 (2d Cir. 1993) (observing that the "principles that guide the district court's consideration of a motion for severance usually counsel denial"). Among the factors the Court should consider are "(1) the number of defendants and the number of counts; (2) the complexity of the indictment; (3) the estimated length of the trial; (4) disparities in the degrees of involvement by defendants in the overall scheme; (5) possible conflict between various defense theories; and (6) prejudice resulting from evidence admissible as to some defendants, but not others." *United States v. Ramos*, 346 F. Supp. 2d 567, 570 (S.D.N.Y. 2004).

Applying these standards, the Court easily concludes that neither Defendant meets the heavy burden required for severance. Defendants are charged with being leaders and participants in the same racketeering conspiracy and committing acts of violence in furtherance of that conspiracy. It follows that most, if not all, of the Government's evidence would be admissible even if Defendants were tried separately. Moreover, Blondet's assertions notwithstanding, the

differences in the allegations and the likely proof against each Defendant are matters of degree — not of kind, let alone kind that would warrant a severance. And regardless, "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003); *see United States v. Panza*, 750 F.2d 1141, 1149 (2d Cir. 1984) ("It is almost inevitable that in an unlawful scheme or conspiracy involving several defendants some will be shown to have been more culpable than others."). To the extent that any issues do arise — including, but not limited to evidence admissible against only one Defendant — the Court is confident that they can be addressed through curative instructions and other courtroom management tools. *See United States v. Guerrero*, 669 F. Supp. 2d 417, 425 (S.D.N.Y. 2009). Finally, trying Defendants separately would result in extraordinary inefficiencies given that the trials would involve many of the same witnesses, many traveling from some distance amidst the COVID-19 pandemic.

5. **Motion to Change Venue**

Defendants' motion to change venue, Defs.' Mot. 32-33, is DENIED for the reasons that Marquez-Alejandro's earlier motion to change venue was denied. *See* ECF No. 301, at 3-5. In fact, if anything, the arguments against transfer are even stronger now than they were then because the case is on the eve of trial in this District. To transfer now would cause immense expense and inconvenience for witnesses and counsel alike and would result in additional lengthy delays.

6. **Motion to Permit Consciousness of Innocence Argument**

Next, Defendants' motion seeking leave to argue that their "prior guilty pleas to narcotics charges . . . evince[] their 'consciousness of innocence,'" Defs.' Mot. 34, is DENIED. It would

be improper for the jury to infer that Defendants are more likely innocent merely because they chose to go to trial rather than plead guilty. *Cf. United States v. Goffer*, 721 F.3d 113, 128-29 (2d Cir. 2013) (affirming the district court's refusal to permit the defendant to offer his rejection of a favorable plea offer as "consciousness of innocence" evidence); *United States v. Biaggi*, 909 F.2d 662, 690-91 (2d Cir. 1990) (holding that the defendant should have been permitted to introduce evidence that he had rejected an offer of immunity and drawing a distinction with plea bargains because, in rejecting a plea offer, a defendant may simply be exercising his preference "to take his chances on an acquittal . . . rather than accept the certainty of punishment after a guilty plea"). It follows that any such argument would be irrelevant and improper. *See* Fed. R. Evid. 401-402. Moreover, the Court agrees that if Defendants were allowed to argue the point, the Government would be entitled to introduce evidence of the parties' pretrial discussions, which would be "a confusing and highly inappropriate sideshow with little probative value and a high risk of unfair prejudice to both sides." Gov't Opp'n 33-34; *see* Fed. R. Evid. 403.

7. **Motion to Allow Cross-Examination Beyond the Scope of Direct**

Defendants' motion for "general leeway" as to the scope of cross-examination, Defs.' Mot. 35-36, is largely GRANTED. As the Government acknowledges, "[g]iven the travel logistics for many witnesses in this trial and the complications posed by the COVID-19 pandemic," there is good reason to "allow such leeway." Gov't Opp'n 34; *see* Fed. R. Evid. 611(b). That said, the Court agrees that such leeway is appropriate only "within reasonable limits and subject to a case-by-case assessment." Gov't Opp'n 34. To that end, the defense shall advise the Government in advance — and certainly no later than the close of a witness's direct testimony — if the defense wishes to raise a subject of cross-examination beyond the scope of direct so that the parties can confer and raise any disputes with the Court in a timely fashion.

8. **Motion to Preclude "Improper Vouching"**

Defendants' motion to preclude what they characterize as "improper vouching" by the Government — namely, disclosure of a prosecutor's "personal involvement" with a witness and claims that if a cooperating witness lies, his or her cooperation agreement will be terminated, Defs.' Mot. 36-37 — is DENIED without prejudice to particularized objections at trial. To be sure, a prosecutor may not link his or her own credibility to that of the witness, *see United States v. Rivera*, 971 F.2d 876, 884 (2d Cir. 1992), or imply the existence of other proof supporting the witness's credibility, *see United States v. Bagaric*, 706 F.2d 42, 61 (2d Cir. 1983). But it does not follow that *any* reference to a prosecutor's "involvement" with a witness would be objectionable. So too, the Government may well be able to elicit testimony from cooperating witnesses about the truth-telling provisions in their agreements and their understanding of those provisions, as such evidence can be relevant and probative of a witness's incentive to tell the truth. *See United States v. Williams*, 787 F. App'x 8, 10-11 (2d Cir. 2019) (summary order) (holding that testimony regarding the truth-telling provisions in a cooperation agreement is admissible once the defense has attacked the witness's credibility).

9. **Motion for Sequestration/Separation of Cooperating Witnesses**

Next, Defendants move, pursuant to Rule 615 of the Federal Rules of Evidence, for "sequestration of cooperating witnesses both before and after each witness testifies." Defs.' Mot. 37. The Court denies the motion to the extent it seeks an order barring all contact between witnesses *before* trial. Such a request goes well beyond the plain language of Rule 615 and is unsupported even by those decisions that have construed the Rule broadly. *See, e.g.*, *United States v. Teman*, 465 F. Supp. 3d 277, 325 (S.D.N.Y. 2020) ("Some circuits have found or suggested that Rule 615 may preclude out-of-court communication between witnesses *during*

trial revealing developments at trial." (citing cases) (emphasis added)).  Moreover, such an order is unnecessary, both because the Government has already "consistently instructed its cooperating witnesses not to discuss the substance of their testimony with anyone other than counsel," Gov't Opp'n 38, and because "any witness can be examined or cross-examined as to his or her" communications with others, *United States v. Ianniello*, 740 F. Supp. 171, 189-90 (S.D.N.Y. 1990).  To the extent that the motion seeks an order barring contact between and certain communications with cooperating witnesses during trial, the Court reserves judgment.  The parties should be prepared to address the issue at the final pretrial conference.

**10. Motion for Advanced Notice of Witnesses and the Subjects of Their Testimony**

Defendants' motion for advanced notice of which witnesses are being called for which incident or incidents, Defs.' Mot. 38-39, is GRANTED in part and DENIED in part.  Given the complexity and breadth of this case and the number of witnesses that the Government anticipates calling, the Court agrees that the Government should give reasonable advanced notice of the witnesses it intends to call.  The Court will discuss the issue with the parties at the final pretrial conference, but it is inclined to require that the Government provide at least two or three business days' notice of any witness it intends to call.  The Court agrees with the Government that, given the extensive 3500 materials, there is no basis or need for the Government to identify the incident or incidents about which each witness will testify.  *See* Gov't Opp'n 39-40.

**11. Motion to Preclude Use of the Term "Defendant" or "Defendants"**

Defendants motion to preclude use of the word "Defendants" or "Defendant" is DENIED.  There is nothing confusing or prejudicial about referring to the two Defendants together as "Defendants," and Defendants cite no case law suggesting, let alone holding, otherwise.  When referring to an individual Defendant, the Government and witnesses should

endeavor to refer to the relevant Defendant by name to avoid any risk of confusion. That said, the Court is confident that it can address any potential confusion on an ad hoc basis during trial. Thus, there is no need or basis to preclude use of the term "Defendant" altogether.

## 12. Motion for Judicial Notice of CJA Representation

Defendant's motion to take judicial notice of their CJA representation is DENIED as moot in light of the Government's representation that it does not intend to elicit testimony about *La ONU* hiring defense attorneys for its members. *See* Gov't Opp'n 41-42; Defs.' Reply 14.

## 13. Motion to Compel

Finally, Defendants move, by letter motion, for an Order compelling the Government to provide additional discovery materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 16 of the Federal Rules of Criminal Procedure. That motion is DENIED, substantially for the reasons set forth in the Government's opposition. *See* ECF No. 637 ("Gov't Disclosure Opp'n"). First, to the extent that the motion seeks materials pursuant to Rule 16, the motion is patently untimely. The deadline for pretrial motions in this case was July 1, 2019, and Defendants were plainly aware of the bases for the motion at that time. *See* Fed. R. Crim. P. 12(b)(3)(E) (stating that a motion to compel Rule 16 discovery "must be raised by pretrial motion if the basis for the motion is then reasonably material."). Second, and in any event, the motion fails because the materials sought are not in possession of the prosecution team in this case. *See, e.g.*, *United States v. Avenatti*, No. 19-CR-374 (JMF), 2022 WL 457315, at *9-12 (S.D.N.Y. Feb. 15, 2022); *United States v. Merced*, 19-CR-832 (ER), 2021 WL 5826286, at *5-7 (S.D.N.Y. Dec. 8, 2021); *see also, e.g.*, *United States v. Middendorf*, No. 18-CR-36 (JPO), 2018 WL 3956494, at *4 (S.D.N.Y. Aug. 17, 2018) (discussing factors to be considered in

determining the scope of the prosecution team for purposes of the Government's disclosure obligations).[4]

On top of that, the question of whether the Government has complied with its obligations under *Brady* and *Giglio* is not one to be decided by the Court in advance of trial. *See, e.g.*, *United States v. Gatto*, 316 F. Supp.3d 654, 658 (S.D.N.Y. 2018) ("[T]o ask the Court to decide in advance of trial whether the government's non-production of specific documents or categories of evidence would violate its *Brady* obligations . . . is flatly contrary to the law in this Circuit."). That is, "[a]lthough the government's obligations under *Brady* may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty — and, concomitantly, the scope of a defendant's constitutional right — is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial." *United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001). Accordingly, Defendants' motion must be and is DENIED.[5]

\*   \*   \*   \*

In short, all of Defendants' motions *in limine* and their motion to compel are DENIED, except for their motions to allow cross-examination beyond the scope of direct, for advanced notice of witnesses the Government plans to call, and for sequestration of witnesses during trial,

---

[4] Defendants suggest that the Due Process Protections Act, Pub L. No. 116-182, 134 Stat. 894 (2020), and the Order that this Court entered pursuant to the Act, *see* ECF No. 452, expanded the Government's disclosure obligations. *See* Defs.' Disclosure Mot. 2, 7 n.4. But that is not the case. The Act was intended to reinforce and remind the Government of its preexisting obligations under *Brady* and its progeny and "did not change the substance of those obligations." *United States v. Wilson*, 518 F. Supp.3d 678, 683 n.3 (S.D.N.Y. 2021).

[5] All of that said, the Court urges the Government to swiftly complete its "re-review[] [of the] material that [DEA] Agent-1 previously provided to the USAO-SDNY," Gov't Disclosure Opp'n 10-11, to determine whether additional disclosures should be made and to take a broader view of what may be subject to disclosure given Agent-1's involvement in prior investigations.

11

which are either granted or deferred as discussed above.

    The Clerk of Court is directed to terminate ECF Nos. 591 and 629.

    SO ORDERED.

Dated: February 18, 2022
       New York, New York

                                            JESSE M. FURMAN
                                          United States District Judge