UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                :

UNITED STATES OF AMERICA,                                   :

                                                :

        -v-                                            :

                                                :          S13 16-CR-387 (JMF)

JULIO MARQUEZ-ALEJANDRO and LUIS          :
BLONDET,                                                         :          <u>ORDER</u>

                                 :

                       Defendants.          :

                                                :
---------------------------------------------------------------------- X

JESSE M. FURMAN, United States District Judge:

      Attached is a revised version of the jury instructions, reflecting changes the Court made
as a result of the charge conference held earlier today.  For ease of review, the Court also
attaches a redline showing the changes that were made.

      Given the scope and nature of the changes, the parties are encouraged to review the
revised instructions this evening.  The parties shall advise the Court of any new objections or
concerns tomorrow morning.  (The parties need not — indeed, should not — renew any
objections that are already made and preserved.)

      SO ORDERED.

Dated:  April 5, 2022
       New York, New York                    _____
                                        JESSE M. FURMAN
                             United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                       :

UNITED STATES OF AMERICA,          :

                                       :

           -v-                      :

                                       :

JULIO MARQUEZ-ALEJANDRO and LUIS    :       S13 16-CR-387 (JMF)
BLONDET,                              :

                                     :

                    Defendants.        :

                                     :

------------------------------------------------------------------------X

## JURY CHARGE

April 7, 2022

**Table of Contents**

**GENERAL INTRODUCTORY INSTRUCTIONS** ................................................................ 1
   A.   Role of the Court and the Jury ................................................................ 1
   B.   The Parties ................................................................................................ 2
   C.   Conduct of Counsel ................................................................................. 2
   D.   Presumption of Innocence; Burden of Proof; Reasonable Doubt ......... 3
   E.   Duty to Consider Each Defendant Separately ....................................... 4
   F.   What Is and Is Not Evidence .................................................................. 5
      1.   Seized Evidence ...................................................................... 6
      2.   Recording and Transcripts of Recordings .............................. 6
      3.   Specific Investigative Techniques Not Required ................... 7
      4.   Stipulations ............................................................................ 7
      5.   Limited Purpose Evidence ..................................................... 8
      6.   Redactions .............................................................................. 8
   G.   Direct and Circumstantial Evidence ...................................................... 9
   H.   Inferences .............................................................................................. 10
   I.   Consciousness of Guilt from Intimidation of a Witness ...................... 10
   J.   Credibility of Witnesses ....................................................................... 11
      1.   Bias of Witnesses ................................................................. 12
      2.   Accomplice or Cooperator Testimony ................................. 12
      3.   Witness Using or Addicted to Drugs .................................... 15
      4.   Prior Inconsistent or Consistent Statements ........................ 15
      5.   Law Enforcement and Government Witnesses ..................... 16
      6.   Expert Witnesses .................................................................. 16
      7.   Preparation of Witnesses ...................................................... 17
   K.   Uncalled Witnesses .............................................................................. 18
   L.   Number of Witnesses and Uncontradicted Testimony ......................... 18
   M.   Evidence of Custody ............................................................................. 19
   N.   Persons Not on Trial ............................................................................. 19
   O.   A Defendant's Right Not to Testify ..................................................... 19

**INSTRUCTIONS ABOUT THE CHARGED CRIMES** ................................................ 20
   A.   The Indictment ..................................................................................... 20
   B.   Summary of the Indictment .................................................................. 21
   C.   Racketeering Conspiracy ...................................................................... 23
      1.   First Element: Existence of the Conspiracy ......................... 25
      2.   Second Element: Effect on Interstate or Foreign Commerce ......... 27
      3.   Third Element: Membership in the Conspiracy .................... 28
      4.   Fourth Element: Agreement to Commit Predicate Acts ....... 30
      5.   Difference Between "Enterprise" and "Pattern of Racketeering Activity" ......... 33
      6.   Racketeering Predicates ........................................................ 34
        i.   Racketeering Predicate: Murder in Violation of Puerto Rico Law ......... 34
        ii.   Racketeering Predicate: Attempted Murder in Violation of Puerto Rico Law .......... 36
        iii.   Racketeering Predicate: Narcotics Conspiracy ......... 36
        iv.   Racketeering Predicate: Bribery in Violation of Puerto Rico Law ......... 38

    7.    Multiple Conspiracies ............................................................................ 39
D.    Aiding and Abetting ....................................................................................... 41
E.    Murder in Aid of Racketeering ...................................................................... 43
    1.    Murder in Aid of Racketeering: Existence of the Enterprise.......................... 44
    2.    Murder in Aid of Racketeering: Murder in Violation of Puerto Rico Law ................. 45
    3.    Murder in Aid of Racketeering: Purpose of Gaining Entrance to, or Maintaining or
            Increasing Position, in the Enterprise ...................................................... 45
    4.    Defense Theory Regarding Count Two (Defendant Luis Blondet).............................. 46
F.    Murder While Engaged in a Drug Crime......................................................... 46
    1.    Murder While Engaged in a Drug Crime: Narcotics Conspiracy; Drug Weight........... 47
    2.    Murder While Engaged in a Drug Crime: Counsel, Command, Induce, Procure, or
            Cause an Intentional Killing ...................................................................... 48
       i.    "While Engaged In" ................................................................................. 48
      ii.    "Intentionally Killed"............................................................................... 48
     iii.  "Counsel, Command, Induce, Procure, and Cause" ................................ 48
    3.    Murder While Engaged in a Drug Crime: Death Results ................................. 49
G.    Murder Using a Firearm ................................................................................. 49
    1.    Murder Using a Firearm: Use, Carry, or Possess ........................................... 50
    2.    Murder Using a Firearm: During and in Relation to a Crime of Violence or Drug
            Trafficking Crime ...................................................................................... 51
    3.    Murder Using a Firearm: Causing Death........................................................ 52
    4.    Murder Using a Firearm: Death Qualifies as a Murder under Federal Law................. 53
    5.    Murder Using a Firearm: Knowingly ............................................................. 53
H.    Venue ............................................................................................................. 54
I.    Timing of the Offenses .................................................................................. 55

**CONCLUDING INSTRUCTIONS** ...................................................................... **55**
A.    COVID-19 Protocols ..................................................................................... 55
B.    Selection of the Foreperson ........................................................................... 55
C.    Right to See Exhibits and Hear Testimony..................................................... 56
D.    Juror Note-Taking.......................................................................................... 57
E.    Bias or Sympathy as Juror ............................................................................. 57
F.    Duty to Deliberate ......................................................................................... 58
G.    Return of the Verdict ..................................................................................... 59
H.    Closing Comments......................................................................................... 60

1        **GENERAL INTRODUCTORY INSTRUCTIONS**

2        Members of the jury, you have now heard all of the evidence in the case and the lawyers'

3   closing arguments.  It is my duty at this point to fully instruct you as to the law.  My instructions to you

4   will be in three parts.

5        First, I will give you general instructions — for example, about your role as the jury, what you

6   can and cannot consider in your deliberations, and the burden of proof.

7        Second, I will describe the law that you must apply to the facts as you find them to be

8   established by the evidence.

9        Finally, I will give you some instructions for your deliberations.

10       I am going to read my instructions to you.  It is not my favorite way to communicate — and not

11  the most scintillating thing to listen to — but there is a need for precision, and it is important that I get

12  the words just right, and so that is why I will be reading.

13       Because my instructions cover many points, I have given you a copy of my instructions to

14  follow along.  Please limit yourself to following along; that is, do *not* read ahead in the instructions.  If

15  you find it easier to listen and understand while you are following along with me, please do so.  If you

16  would prefer, you can just listen and not follow along.  Either way, you may take your copy of the

17  instructions with you into the jury room so you can consult it if you want to re-read any portion of the

18  charge to facilitate your deliberations.

19       For now, listen carefully and try to concentrate on the substance of what I'm saying.  You

20  should not single out any instruction as alone stating the law; rather, you should consider my

21  instructions as a whole when you retire to deliberate in the jury room.

22

23  A.  Role of the Court and the Jury

24       You, the members of the jury, are the sole and exclusive judges of the facts.  You must weigh

25  and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.  It

1    is your duty to accept my instructions as to the law and to apply them to the facts as you determine

2    them.  Remember: If either party stated a legal principle differently from any that I state to you in my

3    instructions, it is my instructions that you must follow.

4

5    B.   The Parties

6         In reaching your verdict, you must remember that all parties stand equal before a jury in the

7    courts of the United States.  The fact that the Government is a party and the prosecution is brought in

8    the name of the United States does not entitle the Government or its witnesses to any greater

9    consideration than that accorded to any other party.  By the same token, you must give it no less

10   deference.  The Government and the defendants, Julio Marquez-Alejandro and Luis Blondet, stand on

11   equal footing before you.

12        It would be improper for you to consider, in reaching your decision as to whether the

13   Government sustained its burden of proof, any personal feelings you may have about a defendant's

14   race, national origin, religious beliefs, sex, or age.  All persons are entitled to the same presumption of

15   innocence and the Government has the same burden of proof with respect to all persons.

16

17   C.   Conduct of Counsel

18        The personalities and the conduct of counsel are not in any way at issue.  If you formed

19   opinions of any kind about any of the lawyers in the case, favorable or unfavorable, whether you

20   approved or disapproved of their behavior, those opinions should not enter into your deliberations.

21        In addition, remember that it is the duty of a lawyer to object when the other side offers

22   testimony or other evidence that the lawyer believes is not properly admissible.  Therefore, you should

23   draw no inference from the fact that there was an objection to any evidence.  Nor should you draw any

24   inference from the fact that I sustained or overruled an objection.  Simply because I have permitted

1  certain evidence to be introduced does not mean that I have decided on its importance or significance.

2  That is for you to decide.

3

4  D.  Presumption of Innocence; Burden of Proof; Reasonable Doubt

5  The defendants have each pleaded not guilty to the charges against them.  As a result of those

6  pleas of not guilty, the burden is on the Government to prove each defendant's guilt beyond a

7  reasonable doubt.  This burden never shifts to a defendant for the simple reason that the law never

8  imposes upon a defendant in a criminal case the burden or duty of testifying, or calling any witness, or

9  locating or producing any evidence.

10  Furthermore, the law presumes a defendant to be innocent of the charges against him.  The

11  presumption of innocence was in each defendant's favor when the trial began, continued in his favor

12  throughout the entire trial, remains with him even as I speak to you now, and persists in his favor

13  during the course of your deliberations in the jury room, unless and until the Government proves

14  beyond a reasonable doubt that he committed the charged crime you are considering.

15  The question that naturally arises is, "What is a reasonable doubt?"  A reasonable doubt is a

16  doubt based on your reason, your judgment, your experience, and your common sense.  It is a doubt

17  that a reasonable person has after carefully weighing all the evidence.  It is a doubt founded in reason

18  and arising out of the evidence in the case — or the lack of evidence.

19  Proof beyond a *reasonable* doubt does not mean proof beyond all *possible* doubt.  It is

20  practically impossible for a person to be absolutely and completely convinced of any disputed fact that,

21  by its very nature, cannot be proved with mathematical certainty.  The Government's burden is to

22  establish guilt beyond a *reasonable* doubt, not all *possible* doubt.

23  If, after a fair and impartial consideration of all the evidence, you can candidly and honestly say

24  that you are not satisfied with the guilt of the defendant, that you do not have an abiding belief of the

3

1    defendant's guilt — in other words, if you have such a doubt as would reasonably cause a prudent

2    person to hesitate in acting in matters of importance in his or her own affairs — then you have a

3    reasonable doubt, and in that circumstance it is your duty to acquit.

4         On the other hand, if, after a fair and impartial consideration of all the evidence, you can

5    candidly and honestly say that you do have an abiding belief of the defendant's guilt, such a belief as a

6    prudent person would be willing to act upon in important matters in the personal affairs of his or her

7    own life, then you have no reasonable doubt, and in that circumstance it is your duty to convict.

8

9    E.   Duty to Consider Each Defendant Separately

10        The defendants — Julio Marquez-Alejandro and Luis Blondet — are on trial together.  In

11   reaching a verdict, however, you must bear in mind that guilt is individual in nature.  Your verdict

12   must be determined separately with respect to each defendant, based solely on the evidence, or lack of

13   evidence, presented against him, without regard to the guilt or innocence of anyone else.

14        In this regard, you must be careful not to find any defendant guilty merely by reason of

15   relationship or association with other persons.  The fact that one person may be guilty of an offense

16   does not mean that that person's friends, relatives, associates, or co-defendants, were also involved in

17   the crime.  You may, of course, consider those associations as part of the evidence in the case, and may

18   draw whatever inferences are reasonable from the fact of the associations together with all of the other

19   evidence.  In short, for each defendant, the question of guilt or innocence must be individually

20   considered and individually answered, and you may not find any defendant guilty unless the evidence

21   proves that defendant's guilt beyond a reasonable doubt.

22

1   F.   <u>What Is and Is Not Evidence</u>

2          In determining the facts, you must rely upon your own recollections of the evidence.  The

3   evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits received into

4   evidence, and (3) any stipulations made by the parties.  Anything else is not evidence, and you are to

5   be guided solely by the evidence in this case.  For example, the questions posed to a witness are not

6   evidence: It is the witnesses' answers that are evidence, not the questions.  I remind you that even if

7   you understand Spanish, you may not rely on any testimony that was given in Spanish; the English

8   translation of any testimony that was given in Spanish is the evidence that you may consider during

9   your deliberations. In addition, exhibits marked for identification but not admitted by me are not

10  evidence.  As I told you during trial, nor are materials brought forth only to refresh a witness's

11  recollection.  Moreover, testimony that has been stricken or excluded by me is not evidence and may

12  not be considered by you in rendering your verdict.

13         Arguments by the advocates are also not evidence.  What you heard during the opening

14  statements and summations is merely intended to help you understand the evidence and reach your

15  verdict.  If your recollection of the facts differs from the parties' statements, you should rely on your

16  recollection.  If a lawyer made a statement during his or her opening or summation and you find that

17  there is no evidence to support the statement, you should disregard the statement.

18         Finally, any statements that I may have made during the trial or during my instructions do not

19  constitute evidence.  At times, I may have admonished a witness or directed a witness to be responsive

20  to questions or to keep his or her voice up or to speak into a microphone.  At times, I may have asked a

21  question myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify

22  the presentation of evidence and to bring out something that I thought might be unclear.  You should

23  draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or

24  any party in the case, by reason of any comment, question, or instruction of mine.  The rulings I have

1   made during the trial and these instructions are no indication of my views of what your decision should

2   be.  Nor should you infer that I have any views as to the credibility of any witness, as to the weight of

3   the evidence, or as to how you should decide any issue that is before you.  That is entirely your role.

4        I will now explain in greater detail certain types of evidence:

5

6        1.   Seized Evidence

7        You have heard testimony about evidence that was seized and about various searches, including

8   searches of electronic devices.  Evidence obtained from these searches was properly admitted in this

9   case and may be properly considered by you.  Indeed, such searches were entirely appropriate law

10  enforcement actions.  Whether you approve or disapprove of how the evidence was obtained should

11  not enter into your deliberations because I instruct you that the Government's use of the evidence was

12  lawful.  You must, therefore, regardless of your personal opinions, give this evidence full consideration

13  along with all the other evidence in the case in determining whether the Government has proved the

14  defendant's guilt beyond a reasonable doubt.  Once again, however, it is for you to decide what weight,

15  if any, to give to this evidence.

16

17       2.   Recording and Transcripts of Recordings

18       Audio recordings of various telephone conversations, and transcripts of those recordings, have

19  been admitted into evidence.  Whether you approve or disapprove of the recording or interception of

20  those conversations may not enter your deliberations.  The recordings were made in a lawful manner,

21  and no one's rights were violated.  You may consider the recorded conversations, and the transcripts of

22  those recordings, as evidence.

23       With respect to the Spanish to English transcripts, the transcripts are evidence that you may

24  consider during deliberations.  I remind you that even if you understand Spanish, you should not rely

1   in any way on any knowledge you may have of the Spanish language that was spoken on the

2   recordings; your consideration of the transcripts should be based on the evidence introduced in the

3   trial.  Remember that the jury is the ultimate fact finder and, as with all the evidence, you may give the

4   transcripts such weight, if any, as you believe they deserve.

5

6          3.   Specific Investigative Techniques Not Required

7          During the trial, you may have heard testimony of witnesses and argument by counsel that the

8   Government did not utilize specific investigative techniques.  You may consider these facts, together

9   with all the other evidence, in deciding whether the Government has met its burden of proof.  But I

10  instruct you that there is no legal requirement that the Government use any specific techniques to

11  investigate or prove its case.  Whether you approve or disapprove of the law enforcement techniques

12  the Government elected to use, or whether you would have preferred they use different tactics, is not

13  the question.  Your concern, as I have said, is to determine, based solely on the evidence or lack of

14  evidence, whether the Government has proved each defendant's guilt beyond a reasonable doubt.

15

16         4.   Stipulations

17         Stipulations were entered into relating to various facts in this case.  A stipulation is an

18  agreement between parties as to what certain facts were or what the testimony would be if certain

19  people testified before you.  You must accept as true what the stipulation is — that is, either that the

20  stipulated fact is true or that the person would have given the stipulated testimony had that person

21  testified.  In other words, the stipulations are the same for your purposes as the presentation of live

22  testimony.  You should consider the weight to be given such evidence just as you would any other

23  evidence.

24

1      5.   Limited Purpose Evidence

2          If certain testimony or evidence was received for a limited purpose, you must follow the

3    limiting instructions I have given.

4          In particular, I remind you that, while you heard some evidence regarding crimes allegedly

5    committed by the defendants before the alleged creation of La ONU in or about 2004, they are not on

6    trial for committing these crimes.  That is, criminal conduct occurring before in or about 2004 cannot

7    be considered as part of the pattern of criminal conduct charged in Count One or as proof of the

8    charged enterprise.  You may not consider evidence of the defendants' conduct from before 2004 as a

9    substitute for proof that the defendants committed the charged crimes.  Nor may you consider such

10   evidence as proof that either defendant has a bad character or a propensity to commit crimes.  Instead,

11   you may only consider evidence of conduct occurring before in or about 2004 for other purposes, for

12   example as background of the alleged formation and existence of the La ONU enterprise, to understand

13   relationships between certain persons, and to understand prior bad acts of the witnesses who testified.

14         In addition, you have heard evidence that each defendant has previously pleaded guilty to a

15   drug offense.  Each defendant's guilty plea was admitted as evidence only against that defendant and

16   you may consider such evidence only against that defendant.

17

18      6.   Redactions

19         Some of the exhibits admitted into evidence contain redactions of certain information.

20   "Redacted" means that part of the document or recording was taken or blacked out.  There is nothing

21   unusual or improper about such redactions.  You are to concern yourself only with the part of the

22   document that has been admitted into evidence.  You should not consider any possible reason why the

23   other part of it was not admitted into evidence.

24

8

1    G. <u>Direct and Circumstantial Evidence</u>

2         There are two types of evidence that you may properly use in deciding whether the defendant

3    you are considering is guilty or not guilty of the crimes with which he is charged.

4         One type of evidence is called direct evidence.  Direct evidence of a fact in issue is presented

5    when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise

6    observed through the five senses.  The second type of evidence is circumstantial evidence.

7    Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other

8    facts.

9         There is a simple example of circumstantial evidence that is often used in this courthouse.

10   Assume that when you came into the courthouse this morning, the sun was shining and it was a nice

11   day outside.  Also assume that the courtroom shades were drawn and you could not look outside.

12   Assume further that as you were sitting here, someone walked in with an umbrella that was dripping

13   wet, and then, a few moments later, somebody else walked in with a raincoat that was also dripping

14   wet.

15        Now, because you could not look outside the courtroom and you could not see whether it was

16   raining, you would have no direct evidence of that fact.  But, on the combination of facts that I have

17   asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

18        That is all there is to circumstantial evidence.  You infer on the basis of your reason,

19   experience, and common sense from one established fact the existence or the nonexistence of some

20   other fact.

21        The matter of drawing inferences from facts in evidence is not a matter of guesswork or

22   speculation.  An inference is a logical, factual conclusion that you might reasonably draw from other

23   facts that have been proved.

1    Many material facts, such as a person's state of mind, are not easily proved by direct evidence.

2    Usually such facts are established by circumstantial evidence and the reasonable inferences you draw.

3    Circumstantial evidence may be given as much weight as direct evidence.  The law makes no

4    distinction between direct and circumstantial evidence.  The law simply requires that before convicting

5    a defendant, you must be satisfied of the defendant's guilt beyond a reasonable doubt, based on all of

6    the evidence in the case.

7

8    H.  Inferences

9    During the trial you have heard the attorneys use the term "inference," and in their arguments

10   they have asked you to infer, on the basis of your reason, experience, and common sense, from one or

11   more established facts, the existence of some other fact.

12   There are times when different inferences may be drawn from facts, whether proved by direct

13   or circumstantial evidence.  The Government asks you to draw one set of inferences, while one or both

14   defendants ask you to draw another.  It is for you, and you alone, to decide what inferences you will

15   draw.

16   Here again, let me remind you that, whether based on direct or circumstantial evidence, or on

17   the logical, reasonable inferences drawn from such evidence, you must be satisfied of the guilt of the

18   defendant beyond a reasonable doubt before you may convict.

19

20   I.  Consciousness of Guilt from Intimidation of a Witness

21   You have heard evidence that the Government argues shows that Mr. Blondet attempted to

22   intimidate or coerce a witness in this case, Harold Figueroa Sanchez.  Mr. Blondet is not on trial for

23   that conduct and you may not consider the evidence as a substitute for proof of guilt in this case.

1      Nevertheless, if you find that Mr. Blondet did attempt to coerce or intimidate a witness in this

2  case, you may, but are not required to, infer that Mr. Blondet believed that he was guilty of the crime

3  or crimes about which he thought Mr. Figueroa Sanchez would testify.  However, consciousness of

4  guilt alone is not sufficient proof beyond a reasonable doubt.

5      Whether the testimony you have heard shows that Mr. Blondet did, in fact, attempt to

6  intimidate or coerce a witness; if so, whether that shows he believed he was guilty of any crime or

7  crimes for which he is now charged; and the significance, if any, to be given to such evidence, are

8  matters for you, the jury, to decide.

9

10  J.   Credibility of Witnesses

11      How do you evaluate the credibility or believability of the witnesses?  The answer is that you

12  use your common sense.  There is no magic formula by which you can evaluate testimony.  You may

13  use the same tests here that you use in your everyday life when evaluating statements made by others

14  to you.  You may ask yourselves: Did the witness impress you as open, honest, and candid?  How

15  responsive was the witness to the questions asked on direct examination and on cross-examination?

16      If you find that a witness intentionally told a falsehood, that is always a matter of importance

17  you should weigh carefully.  On the other hand, a witness may be inaccurate, contradictory, or even

18  untruthful in some respects and entirely believable and truthful in other respects.  It is for you to

19  determine whether such inconsistencies are significant or inconsequential, and whether to accept or

20  reject all of the testimony of any witness, or to accept or reject only portions.

21      You are not required to accept testimony even though the testimony is uncontradicted and the

22  witness's testimony is not challenged.  You may reject it because of the witness's bearing or demeanor,

23  or because of the inherent improbability of the testimony, or for other reasons sufficient for you to

24  conclude that the testimony is not worthy of belief.

1     I will now explain in greater detail certain considerations for evaluating witness credibility.

2

3     1.  Bias of Witnesses

4     In deciding whether to believe a witness, you should note any evidence of hostility or

5  preference that the witnesses may have toward one or more of the parties.  In particular, you should

6  consider any evidence of resentment or anger that a government witness may have towards a

7  defendant.  Evidence that a witness is biased, prejudiced, or hostile toward a defendant requires you to

8  view the witness' testimony with caution, to weigh it with care, and subject it to close and searching

9  scrutiny.

10     Likewise, you should take into account any evidence that a witness may benefit in some way

11  from the outcome of the case.  Such an interest in the outcome can create a motive to testify falsely and

12  may sway a witness in a way that advances his or her own interests.

13     Keep in mind, though, that it does not automatically follow that testimony given by an

14  interested witness is to be disbelieved.  There are many people who, no matter what their interest in the

15  outcome of the case may be, would not testify falsely.  It is for you to decide, based on your own

16  perceptions and common sense, whether the possible interest of any witness has, intentionally or

17  otherwise, colored or distorted his or her testimony.

18

19     2.  Accomplice or Cooperator Testimony

20     You have heard from a number of witnesses who testified that they were involved in planning

21  and carrying out some of the crimes charged in the Indictment.  You have heard a great deal in

22  counsel's summations about these so-called accomplice or "cooperating" witnesses and whether or not

23  you should believe them.

24     Experience will tell you that the Government sometimes must rely on the testimony of

witnesses who admit to participating in the alleged crimes at issue.  The Government must take its witnesses as it finds them and sometimes must use such testimony in a criminal prosecution, because otherwise it would be difficult or impossible to detect and prosecute wrongdoers.  For these very reasons, the law allows the use of testimony from cooperating witnesses.  Indeed, under federal law, the testimony of a cooperating witness may be enough in itself for conviction, if the jury believes that the testimony establishes guilt beyond a reasonable doubt.

However, because of the interest a cooperator may have in testifying, you should scrutinize his testimony with special care and caution.  You may consider the fact that a witness is a cooperator as bearing upon his credibility.  Like the testimony of any other witness, accomplice witness testimony should be given such weight as it deserves in light of the facts and circumstances before you, taking into account the witness's demeanor and candor, the strength and accuracy of the witness's recollection, his background, and the extent to which his testimony is or is not corroborated by other evidence in the case.  You may consider whether a cooperating witness has an interest in the outcome of the case, and if so, whether that interest has affected his testimony.

You heard testimony about agreements between the Government and each of the cooperating witnesses.  I must caution you that it is no concern of yours why the Government made an agreement with a particular witness.  You may, however, consider the effect, if any, that the existence or terms of the agreement have on the witness's credibility.  A witness who hopes to obtain leniency may have a motive to testify as he believes the Government wishes, or he may feel that it is in his interest to incriminate others.  As with any witness, your responsibility is to determine whether any such motive or intent has influenced the witness's testimony and whether the witness has told the truth, in whole or in part.

In sum, in evaluating the testimony of a cooperating witness, you should ask yourselves the following questions:  Would the accomplice benefit more by lying or by telling the truth?  Was any

1   part of his testimony potentially made up because he believed or hoped that he would receive favorable

2   treatment from the Government by testifying falsely or as he believed the Government wanted?  Or did

3   he believe that his interests would be best served by testifying truthfully?  If you believe that the

4   witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie,

5   or was it one that would cause him to tell the truth?  Did this motivation color his testimony?  It does

6   not follow, however, that simply because a person has admitted to participating in one or more crimes,

7   he is incapable of giving a truthful version of what happened.

8           If you think that the testimony was false, you should reject it.  However, if, after a cautious and

9   careful examination of an accomplice witness's testimony, you are satisfied that the witness told the

10  truth, you may accept his testimony as credible and act upon it accordingly.

11          As with any witness, let me emphasize that the issue of credibility need not be decided in an

12  all-or-nothing fashion.  If you find that a witness has been untruthful in some respect, you may, but are

13  not required to, reject the witness's testimony in its entirety.  Even if you find that a witness testified

14  falsely in one part, you still may accept his testimony in other parts.  How much of a witness's

15  testimony to accept, if any, is a determination entirely for you, the jury.

16          Finally, you have heard testimony from witnesses who have pleaded guilty to certain charges

17  arising out of the same facts as this case.  I must emphasize that you may not draw any conclusions or

18  inferences of any kind about the guilt of the defendants on trial from the fact that one or more

19  prosecution witnesses pleaded guilty to similar charges.  The decisions of those witnesses to plead

20  guilty were personal decisions those witnesses made about their own guilt.  It may not be used by you

21  in any way as evidence against or unfavorable to the defendants.

22

14

        **3.**  <u>Witness Using or Addicted to Drugs</u>

There has been evidence introduced at the trial that the Government called as a witness a person who was using or addicted to drugs when events he observed took place or who was using drugs when he made or heard certain statements.  I instruct you that there is nothing improper about calling such a witness to testify about events within his personal knowledge.

On the other hand, his testimony must be examined with greater scrutiny than the testimony of any other witness.  The testimony of a witness who was under the influence of drugs at the time of events about which he is testifying may be less believable because of the effects the drugs may have on his ability to perceive or relate the events in question.

If you decide to accept his testimony, after considering it in light of all the evidence in this case, then you may give it whatever weight, if any, you find it deserves.


        **4.**  <u>Prior Inconsistent or Consistent Statements</u>

You have heard evidence that, at some earlier time, witnesses have said something that counsel argues is inconsistent with their trial testimony.

Evidence of a prior inconsistent statement was placed before you not because it is itself evidence of the guilt or innocence of the defendants, but for the purpose of helping you decide whether to believe the trial testimony of a witness who may have contradicted himself.  If you find that the witness made an earlier statement that conflicts with the witness's trial testimony, you may consider that fact in deciding how much of the witness's trial testimony, if any, to believe.

In making this determination, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency and, if so, whether that explanation appealed to your common sense.

1    It is exclusively your duty, based upon all the evidence and your own good judgment, to

2    determine whether the prior statement was inconsistent and, if so, how much weight, if any, to give to

3    the inconsistent statement in determining whether to believe all, or part of, the witness testimony.

4    You have also heard evidence that certain witnesses made earlier statements that were

5    consistent with their trial testimony.  Such statements were admitted not as independent evidence of

6    guilt or innocence, but solely for whatever light they may shed on the witness's credibility.  If you find

7    that a witness had a motive to testify as he did, but also that he or she told the same story before he had

8    that motive, you may take that into account in deciding whether the witness's interest or motive

9    colored his or her testimony.

10

11        5.   Law Enforcement and Government Witnesses

12    You have heard testimony from a number of law enforcement officers.  The fact that a witness

13    may be employed as a law enforcement officer or government employee does not mean that his or her

14    testimony is necessarily deserving of more or less consideration, or greater or lesser weight, than that

15    of any other witness.  Such testimony should not be regarded as more or less truthful or accurate than

16    that of any other witness simply based on the witness's employment.  It is your decision, after

17    reviewing all the evidence, whether to accept the testimony of any law enforcement witness or

18    government witness, as it is with every other type of witness, and to give to that testimony the weight,

19    if any, you find it deserves.

20

21        6.   Expert Witnesses

22    You have heard testimony from several expert witnesses. As I previously explained, an expert

23    witness is someone who, by education or experience, has acquired learning or experience in a

24    specialized area of knowledge.  Such a witness is permitted to express his or her opinions on matters

1    about which he or she has specialized knowledge and training.  The parties present expert testimony to

2    you on the theory that someone who is experienced in the field can assist you in understanding the

3    evidence or in reaching an independent decision on the facts.

4         Your role in judging credibility applies to experts as well as other witnesses.  In weighing an

5    expert's opinion, you may consider the expert's qualifications, education, and reasons for testifying, as

6    well as all of the other considerations that ordinarily apply, including all the other evidence in the case.

7    If you find the opinion of an expert is based on sufficient data, education, and experience, and the other

8    evidence does not give you reason to doubt his or her conclusions, you would be justified in placing

9    reliance on his or her testimony.  However, you should not accept witness testimony simply because

10   the witness is an expert.  The determination of the facts in this case rests solely with you.

11

12        7.  <u>Preparation of Witnesses</u>

13        You have heard evidence during the trial that witnesses have discussed the facts of the case and

14   their testimony with their own lawyers or with Government lawyers before they appeared in court.

15   Although you may consider these facts when you are evaluating a witness's credibility, there is nothing

16   either unusual or inherently improper about a witness meeting with lawyers before testifying so that

17   the witness can be aware of the subjects he or she will be questioned about, focus on the subjects, and

18   have the opportunity to review relevant exhibits before being questioned about them.  Such

19   consultation helps conserve your time and the Court's time.  In fact, it would be unusual for a lawyer

20   to call a witness without such consultation.

21        In addition, you have heard evidence that certain witnesses and their lawyers may have met

22   together with other defendants and their lawyers in what is called a joint defense meeting.  I instruct

23   you that there is nothing improper about such joint defense meetings and that they are common in

24   cases with multiple defendants because they allow defendants and their lawyers to plan for trial.

1    As always, the weight you give to the fact or the nature of these issues and what inferences you

2    draw from them are matters completely within your discretion.

3

4    K.   Uncalled Witnesses

5    There are people whose names you have heard during the course of the trial but who did not

6    appear here to testify.  I instruct you that each party had an equal opportunity, or lack of opportunity, to

7    call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as

8    to what they would have testified to had they been called.  Their absence should not affect your

9    judgment in any way.

10    You should, however, remember my instruction that the law does not impose on a defendant in

11    a criminal case the burden or duty of calling any witness or producing any evidence.  The burden of

12    proof remains at all times with the Government.

13

14    L.   Number of Witnesses and Uncontradicted Testimony

15    The fact that the Government called more witnesses or introduced more evidence does not

16    mean that you should necessarily find the facts in its favor.  By the same token, you do not have to

17    accept the testimony of any witness who has not been contradicted or impeached, if you find the

18    witness to be not credible.  You must decide which witnesses to believe and determine which facts are

19    true.  To do this, you must look at all the evidence or lack of evidence, drawing upon your own

20    common sense and personal experience.

21    Again, you should also keep in mind that the burden of proof is always on the Government.

22    The defendants are not required to call any witnesses or offer any evidence, since they are presumed to

23    be innocent.  On the other hand, the Government is not required to prove each element of the offense

24    by any particular number of witnesses.  The testimony of a single witness may be enough to convince

18

1    you beyond a reasonable doubt of the existence of the elements of a charged offense — if you believe

2    that the witness has truthfully and accurately related what he or she has told you.  The testimony of a

3    single witness may also be enough to convince you that reasonable doubt exists, in which case you

4    must find the defendant you are considering not guilty.

5

6    M.  Evidence of Custody

7         You have heard evidence that each of the defendants was in custody at one point or another.

8    You may consider this evidence as evidence of the defendants' whereabouts at these points in time.

9    However, you may not consider a defendant's being in custody as evidence that the defendant you are

10   considering is of bad character or has a propensity to commit crime.

11

12   N.  Persons Not on Trial

13        During the course of the trial, you have heard the names of other individuals mentioned in

14   connection with this case.  Some of these other individuals have been mentioned in connection with

15   what the Government alleges was illegal activity, including as members of the enterprise known as La

16   ONU.  You may not draw any inference, favorable or unfavorable, toward the Government or the

17   defendants from the fact that any person is not on trial here.  Nor may you speculate as to what became

18   of them and why.  These matters are wholly outside your concern and have no bearing on your

19   function as jurors in deciding the case before you.

20

21   O.  A Defendant's Right Not to Testify

22        The defendants, Julio Marquez-Alejandro and Luis Blondet, did not testify in this trial.  Under

23   our Constitution, a defendant is presumed innocent and has no obligation to testify or to present any

24   other evidence because, as I have told you, it is the Government's burden to prove a defendant guilty

1    beyond a reasonable doubt.  That burden remains on the Government throughout the entire trial and

2    never shifts to a defendant.  A defendant is never required to prove that he is innocent.

3            You may not attach any significance to the fact that the defendants did not testify.  No adverse

4    inference against a defendant may be drawn by you because the defendant did not take the witness

5    stand.  You may not consider this in any way in your deliberations in the jury room.

6                            *                    *                    *

7            That concludes my introductory instructions.  Let me now turn to the charges.

8

9

10                    **INSTRUCTIONS ABOUT THE CHARGED CRIMES**

11

12    A.  The Indictment

13            The two defendants, Julio Marquez-Alejandro and Luis Blondet, are formally charged in an

14    Indictment.  As I instructed you at the outset of this trial, the Indictment is not evidence.  It is simply

15    an accusation, a statement of the charges made against the defendants.  It gives the defendants notice

16    of the charges against them, and it informs the court and the public of the nature of the accusation.  But

17    it is not evidence, and it does not prove or even indicate guilt.  It does not create any presumption or

18    permit any inference that the defendants are guilty.  As a result, you are to give it no weight in deciding

19    the defendants' guilt or lack of guilt.  What matters is the evidence you heard at this trial.  Indeed, as I

20    have previously noted, the defendants are presumed innocent, and each has entered a plea of not guilty.

21    It is the prosecution's burden to prove each defendant's guilt beyond a reasonable doubt.

22            The Indictment before you contains nine counts, or charges.  Each count of the Indictment

23    relates to a different alleged crime.  Julio Marquez-Alejandro is charged in seven counts, and Luis

24    Blondet is charged in three counts.  In your deliberations and in reaching your verdict, you must bear

1    in mind that guilt is individual.  You must therefore consider each count and each defendant separately,

2    must weigh the evidence as to each defendant separately for each count in which that defendant is

3    charged, and return a verdict of guilty or not guilty for each defendant on each count.  Your verdict as

4    to each defendant must be determined separately with respect to him, solely on the evidence, or lack of

5    evidence, presented against him, without regard to the guilt or innocence of anyone else.

6

7    B.  Summary of the Indictment

8        Now, what are the charges in the Indictment?  If I were to ask you right now what the charges

9    are, you would say this case is about a gang, drugs, murders, guns, and bribery.  And that would be

10   correct, in general terms.  But the charges in the Indictment are more specific.

11       In particular, the Government must prove beyond a reasonable doubt the specific elements of

12   the specific charges that it has brought.  That is because this is a federal Indictment, and under our

13   federal system of Government, the United States Government, as opposed to a state or territory, only

14   has jurisdiction to deal with certain kinds of cases.  So, for example, although simply murdering

15   someone is a crime under the laws of Puerto Rico, it is not, by itself, a crime under United States

16   federal law.  Instead, the murders alleged in this Indictment are charged under specific federal statutes

17   designed to meet the specific requirements of federal jurisdiction.

18       Count One charges both defendants with conspiracy in the affairs of a criminal enterprise,

19   which the Indictment refers to as *La Organizacion de Narcotraficantes Unidos* — or La ONU for

20   short.  The alleged members of this criminal enterprise, including the defendants, are accused of

21   engaging in crimes such as murder, attempted murder, drug trafficking, and bribery in order to promote

22   the enterprise, enrich its members, and enhance their standing in it.

23       Count One charges that, from at least in or about 2004 up to and including about 2016, the

24   defendants, together with others, conspired together and with each other to conduct the affairs of a

1    racketeering enterprise through a series of criminal acts alleged to constitute a pattern of racketeering

2    activity.  The Indictment refers to the racketeering enterprise as *La Organizacion de Narcotraficantes*

3    *Unidos*, or La ONU, which is alleged to have been an association of individuals formed in or about

4    2004 and that existed for several purposes.  These included: (1) enriching its members and associates

5    through, among other things, the distribution of narcotics, including the trafficking of cocaine to New

6    York; (2) preserving and protecting the power of the enterprise and its members and associates through

7    murder, attempted murder, and other acts of violence and threats of violence; and (3) promoting and

8    enhancing the enterprise and the activities of its members and associates.

9        Counts Two and Three relate to the murder of Crystal Martinez-Ramirez on or about April 9,

10   2005.  Count Two charges Mr. Blondet with the murder of Ms. Martinez-Ramirez for the purpose of

11   maintaining or increasing his position in the La ONU racketeering enterprise.

12       Count Three charges Mr. Blondet with using or carrying a gun during or in relation to a crime

13   of violence — namely, the murder in aid of racketeering charged in Count Two — resulting in the

14   murder of Crystal Martinez-Ramirez.

15       Counts Four, Five and Six relate to the murder of Israel Crespo-Cotto on or about December

16   28, 2006.  Count Four charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing

17   the murder of Mr. Crespo-Cotto for the purpose of maintaining or increasing his position in the La

18   ONU racketeering enterprise.

19       Count Five charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing

20   another person to kill Mr. Crespo-Cotto while engaged in a drug crime.

21       And Count Six charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing

22   another person to use and carry a gun during and in relation to a crime of violence or drug trafficking

23   crime, resulting in the murder of Israel Crespo-Cotto.

24       Finally, Counts Seven, Eight, and Nine relate to the murder of Carlos Barbosa on or about

22

1   March 20, 2009.  <u>Count Seven</u> charges Mr. Marquez-Alejandro with aiding and abetting or willfully

2   causing the murder of Mr. Barbosa for the purpose of maintaining and increasing his position in the La

3   ONU racketeering enterprise.

4       <u>Count Eight</u> charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing

5   another person to kill Carlos Barbosa while engaged in a drug crime.

6       And <u>Count Nine</u> charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing

7   another person to use and carry a gun during and in relation to a crime of violence or drug trafficking

8   crime, resulting in the murder of Carlos Barbosa.

9       You'll notice that the various charges overlap in certain ways.  For example, the murder of

10   Israel Crespo-Cotto is charged as a murder in aid of racketeering in Count Four of the Indictment, as a

11   murder in connection with a drug crime in Count Five, and as a murder using a firearm in Count Six.

12   And the murder is also one of the crimes that you may consider as a racketeering act under Count One,

13   which charges the crime of racketeering conspiracy.  It is perfectly legitimate for the Government to

14   charge the same alleged conduct as violations of different statutes.  But, in order for you to convict any

15   defendant of any charge, you will have to consider, as I have said before, whether the Government has

16   met its burden of proving each of the elements of the specific crime charged beyond a reasonable

17   doubt.  You may find that the Government has proved all of these charges, or none, or only some,

18   depending on the evidence relevant to each charge.  So it will be very important for you to follow the

19   different elements of each particular crime.

20       With that, I will turn to the elements of each count in turn.

21

22   C.  <u>Racketeering Conspiracy</u>

23       Count One charges each defendant with conspiring with others to conduct and participate in the

24   affairs of an enterprise through a pattern of racketeering activity.  Most of the charges in the

1  Indictment, and indeed most crimes, are straightforward in the sense that they involve particular acts,

2  committed at one moment in time.  But these racketeering crimes do not involve the commission of a

3  single act at a single time.  Instead, these crimes concern a conspiracy to participate in an organization

4  over a period of time by committing a pattern of criminal acts.  Let me explain these charges.

5        Count One alleges a conspiracy to violate the "RICO" statute, which stands for "Racketeering

6  Influenced and Corrupt Organizations."  The statute makes it a crime for a person to participate in the

7  conduct of an enterprise's affairs through a pattern of certain violations of law known as "racketeering

8  acts."  In this case, each defendant is charged with participating in a conspiracy to violate the RICO

9  statute from at least in or about 2004 through and including in or about 2016.

10       In order to convict a given defendant of a conspiracy to violate the RICO statute, the

11  Government must prove beyond a reasonable doubt each of the following four elements:

12          <u>First</u>, that the conspiracy existed — that is, that two or more persons agreed to

13           conduct or participate in the conduct of a racketeering enterprise;

14          <u>Second</u>, that the racketeering enterprise or its activities would have affected, or in

15           fact affected, interstate commerce;

16          <u>Third</u>, that the defendant you are considering knowingly and intentionally joined the

17           conspiracy; and

18          <u>Fourth</u>, that the defendant you are considering knowingly and intentionally agreed

19           with at least one other person that either he or a co-conspirator would participate in the

20           conduct of the affairs of the enterprise through a pattern of two or more criminal acts, called

21           "racketeering acts."

22       It is important to realize that the word "racketeering," as used in the RICO statute, is a purely

23  technical term that is defined specifically for the statute.  You should put out of your mind whatever

24  meaning the term may have for you in ordinary English.  What matters is not whether the defendant

1 you are considering seems to you to be a "racketeer" in any ordinary sense of the word.  All that

2 matters is whether the Government has proved beyond a reasonable doubt each of the elements that

3 make up a violation of this statute, as I will define them for you.

4

5        1.  <u>First Element: Existence of the Conspiracy</u>

6        The first element the Government must prove beyond a reasonable doubt with respect to Count

7 One is the existence of a conspiracy that had as its object the illegal purpose charged in the Indictment.

8        A conspiracy is a kind of criminal partnership — a combination or agreement among two or

9 more persons to join together to accomplish some unlawful purpose.  A conspiracy to violate a federal

10 law is a separate and distinct offense from the actual violation of such law, which is the so-called

11 "substantive crime."  A defendant's guilt does not depend on the ultimate success of the conspiracy.

12 The conspiracy itself is a separate crime, even if the conspiracy to commit the underlying substantive

13 crime was not successful.

14        To establish the existence of a conspiracy, the Government is not required to show that two or

15 more people sat around a table and entered into a formal contract or even expressed their agreement

16 orally.  It is sufficient if two or more persons, in any manner, whether they say so directly or not, come

17 to a common understanding to violate the law.  Express language or specific words are not required to

18 indicate agreement to or membership in a conspiracy.  If you find beyond a reasonable doubt that two

19 or more persons came to an understanding, express or implied, to violate the law and to accomplish an

20 unlawful plan, then the Government will have sustained its burden of proof as to this element.

21        In determining whether there has been an unlawful agreement, you may consider acts and

22 conduct of the alleged co-conspirators that were done to carry out an apparent criminal purpose.  The

23 adage "actions speak louder than words" is applicable here.  Sometimes the only evidence that is

24 available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the

1   part of the individual conspirators, when taken together and considered as a whole.  Different

2   conspirators may undertake different acts at different times.  However, these acts or conduct may

3   warrant the inference that a conspiracy existed.

4        The "object" of a conspiracy is the illegal purpose that the conspirators agree or hope to

5   achieve.  In this case, the object of the conspiracy is to violate the RICO statute, that is, to conduct or

6   participate in the conduct of the affairs of an enterprise whose activities would affect interstate

7   commerce through a pattern of racketeering activity.  Let me define these terms for you.

8        What is an "enterprise"?  Under the racketeering statute, an enterprise means a group of people

9   who have associated together for a common purpose; have an ongoing organization, either formal or

10  informal; and have personnel who function as a continuing unit.  The enterprise does not have to have

11  a particular name or, for that matter, have any name at all.  Nor must it be registered or licensed as an

12  enterprise.  It does not have to be a commonly recognized legal entity, such as a corporation, a trade

13  union, a partnership, or the like.  An enterprise may be a group of people who have informally

14  associated together for a common purpose of engaging in a course of conduct.  This group may be

15  organized for a legitimate and lawful purpose or it may be organized for an unlawful purpose.  Here,

16  the Government alleges that the organization referred to as *La Organizacion de Narcotraficantes*

17  *Unidos*, or La ONU, constituted such an enterprise.

18       In addition to having a common purpose, the enterprise must have a core of personnel who

19  function as a continuing unit.  Furthermore, the enterprise must continue to exist in a substantially

20  similar form through the period charged, in this case from 2004 through 2016.  This does not mean that

21  the membership must remain exactly identical.  The members of the organization can change, and

22  participants in its affairs may come and go, but the enterprise must have a recognizable core that

23  continues during a substantial period during the time frame charged in the Indictment.

1    If you find that there was an agreement to conduct or participate in the conduct of a group of

2    people characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and

3    (3) personnel who function as a continuing unit, then you may find that a conspiracy to violate the

4    RICO statute existed.

5

6    　　　　2.  Second Element: Effect on Interstate or Foreign Commerce

7    　　　　The second element that the Government must prove beyond a reasonable doubt as to Count

8    One is that the criminal enterprise itself, or the racketeering activities of those associated with the

9    enterprise, would have had some effect on interstate or foreign commerce, or in fact has such an effect.

10   This effect on interstate or foreign commerce could have occurred in any way and it need only have

11   been minimal.

12   　　　　Interstate commerce includes the movement of goods, services, money, and individuals

13   between states or between states and a U.S. territory, such as Puerto Rico.  It is sufficient, for example,

14   that in the course of racketeering activities, members of the enterprise used weapons that had traveled

15   in interstate commerce, traveled interstate themselves, used telephone facilities interstate, or took

16   money from businesses that had an effect on interstate commerce.  In addition, Congress has

17   determined that all narcotics activity, even purely local narcotics activity, has an effect on interstate

18   commerce.  Thus, if you find that, in the course of the racketeering activities, members of the

19   enterprise trafficked in narcotics, this element is satisfied.  As with the enterprise element, it is not

20   necessary for the Government to prove that any particular act or acts affected interstate or foreign

21   commerce or even that acts that the defendant you are considering personally committed affected

22   interstate or foreign commerce.  It need only prove that some act or acts of the enterprise — even

23   perfectly legal acts of the enterprise —had such an effect.  It is not necessary for you to find that the

24   defendant you are considering knew the enterprise was engaged in interstate commerce.

1

2        3.  Third Element: Membership in the Conspiracy

3        The third element that the Government must prove beyond a reasonable doubt as to Count One

4 is that, at some time during the time period charged in the Indictment, in or about 2004 through in or

5 about 2016, the defendant you are considering was a member of the charged conspiracy.  It is not

6 required that the Government prove that the defendant you are considering was a member of the

7 conspiracy for the entire time that the conspiracy existed.

8        You must determine not only whether the defendant you are considering participated in the

9 conspiracy, but also whether he did so intentionally and knowingly — that is, did he participate in the

10 conspiracy with knowledge of its unlawful purpose and with the specific intention of furthering its

11 objective.  "Unlawful" simply means contrary to law; a defendant need not have known that he was

12 breaking any particular law, but he must have been aware of the generally unlawful nature of his acts.

13        In that regard, it has been said that in order for a defendant to be deemed a participant in a

14 conspiracy, he must have had a stake in venture or its outcome.  You are instructed that, while proof of

15 a financial interest in the outcome of the scheme is not essential, if you find that a defendant had such

16 an interest, that is a factor that you may properly consider in determining whether or not that defendant

17 was a member of a conspiracy charged in the Indictment.

18        As I mentioned a moment ago, before the defendant you are considering can be found to have

19 been a conspirator, you must first find that he knowingly joined the unlawful agreement or plan.  The

20 key question, therefore, is whether the defendant you are considering joined the conspiracy with an

21 awareness of the basic aims and purposes of the unlawful agreement.

22        It is important for you to note that a defendant's participation in the conspiracy must be

23 established by independent evidence of his own acts or statements, as well as those of the other alleged

28

1    co-conspirators, and the reasonable inferences that may be drawn from them.  A defendant's

2    knowledge is a matter of inference from facts proved.

3        A person acts "intentionally" and "knowingly" if he acts purposely and deliberately and not

4    because of mistake or accident, mere negligence, or other innocent reason.  That is, the acts must be

5    the product of the defendant's conscious objective.

6        If you find that the conspiracy existed and that a defendant participated knowingly and

7    intentionally in it, the extent of that defendant's participation has no bearing on whether or not he is

8    guilty.  The fact that a defendant's participation in a conspiracy was more limited than that of a co-

9    conspirator should not affect your verdict.

10       In addition, the duration and extent of a defendant's participation has no bearing on the issue of

11   that defendant's guilt.  A defendant need not have joined the conspiracy at the outset.  A defendant

12   may have joined the conspiracy at any time in its progress, and that defendant will be held responsible

13   for all that was done before he joined and all that was done during the conspiracy's existence while he

14   was a member.  Each member of a conspiracy may perform separate and distinct acts.  Some

15   conspirators play major roles, while others play minor roles in the scheme.  The law does not require

16   equal roles.  In fact, even a single act may be sufficient to draw a defendant within the scope of the

17   conspiracy.

18       Similarly, the Government need not prove that the defendant you are considering agreed with

19   every other member of the conspiracy, knew all the other members of the conspiracy, or had full

20   knowledge of all the details of the conspiracy.  However, in proving this element, the Government

21   must prove beyond a reasonable doubt that the defendant you are considering was connected to the

22   conspiracy in some meaningful way, and that the defendant knew the general nature of the conspiracy

23   and knew that the conspiracy existed beyond his individual role.

1    I want to caution you, however, that a defendant's mere presence at the scene of an alleged

2    crime does not, by itself, make him a member of the conspiracy.  Similarly, mere association with one

3    or more members of the conspiracy does not automatically make a defendant a member.  A person may

4    know, or be friendly with, a criminal, without being a criminal himself.  Mere knowledge that a crime

5    is being committed is, by itself, not sufficient to constitute membership in a conspiracy.  Likewise,

6    mere similarity of conduct or the fact that they may have assembled together and discussed common

7    aims and interests does not necessarily establish membership in the conspiracy.  What is necessary is

8    that a defendant participated with knowledge of at least some of the purposes and objectives of the

9    conspiracy and with intent to aid in the accomplishment of those unlawful objectives.

10    Ultimately, the question is this: Has the Government proved beyond a reasonable doubt that the

11    defendant you are considering joined the conspiracy and knowingly and intentionally participated in it

12    with the awareness of its basic purpose and as something he wished to bring about?

13

14        4.   Fourth Element: Agreement to Commit Predicate Acts

15    The fourth element that the Government must prove beyond a reasonable doubt as to Count

16    One is that the defendant you are considering knowingly conspired or agreed to participate in the

17    conduct of the affairs of the enterprise through a pattern of racketeering activity.  The focus of this

18    element is on a defendant's agreement to participate in the objective of the enterprise to engage in a

19    pattern of racketeering activity, and not on a defendant's agreement to commit the individual criminal

20    acts.  Additionally, the Government is not required to prove that the defendant you are considering

21    agreed to commit two racketeering acts himself, or that he actually committed two such acts.  Instead,

22    the Government must prove that the defendant agreed to participate in the enterprise with the intent

23    that he or another member or members of the conspiracy would commit two or more racketeering acts,

24    which I will describe in a few minutes.

1    As I have told you, it is not necessary that a conspiracy actually succeed in its purpose for you

2    to conclude that it existed.  Because the agreement to commit a racketeering offense is the essence of

3    Count One, the Government need only prove that if the conspiracy achieved its objective as

4    contemplated, the enterprise would be established, that its members would participate in conducting

5    the affairs of the enterprise through a pattern of racketeering activity, and that those activities would

6    affect interstate or foreign commerce.  Of course, proof that the objective of the conspiracy was

7    accomplished, if you find it was, may be the most persuasive evidence of the existence of the

8    conspiracy.

9    A pattern of racketeering activity requires at least two acts of racketeering, the last of which

10   occurred within ten years, excluding any period of imprisonment after the commission of a prior act of

11   racketeering.  To establish an agreement that the enterprise would engage in a "pattern of racketeering

12   activity," as alleged in Count One of the Indictment, the Government must prove three things beyond a

13   reasonable doubt:

14   First, the Government must prove beyond a reasonable doubt that the defendant you are

15   considering agreed that a conspirator (which could include the defendant himself) would intentionally

16   commit, or cause, or aid and abet the commission of, two or more of the racketeering acts of the types

17   alleged in Count One of the Indictment, which I will list for you shortly.  The jury must be unanimous

18   as to which two acts it finds a defendant conspired to commit; it would not be sufficient for six jurors

19   to find a defendant guilty of conspiring to commit two racketeering acts and the other six jurors to find

20   him guilty of conspiracy to commit two different racketeering acts.

21   Second, the Government must prove beyond a reasonable doubt that the two racketeering acts

22   have a "nexus" to the enterprise and are "related" to one another.  A racketeering act has a "nexus" to

23   the enterprise if it has a meaningful connection to the enterprise.  To be "related" to one another, the

24   racketeering acts must have the same or similar purposes, results, participants, victim, or methods of

31

1    commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated

2    events.  But the racketeering acts do not need to be directly related to each other, as long as they are

3    related to the same enterprise.  For example, for both "nexus" and "relatedness" purposes, the requisite

4    relationship between the RICO enterprise and a predicate racketeering act may be established by

5    evidence that the defendant you are considering was able to commit the racketeering act solely by

6    virtue of his position in the enterprise or involvement in or control over its affairs; by evidence that the

7    defendant's position in the enterprise facilitated his commission of the racketeering act; by evidence

8    that the racketeering act benefitted the enterprise; by evidence that the racketeering act was authorized

9    by the enterprise; or by evidence the racketeering act promoted or furthered the purposes of the

10   enterprise.  Nevertheless, it is not sufficient for the Government to prove only that the defendant you

11   are considering or a co-conspirator committed or planned to commit two racketeering acts.  A series of

12   disconnected acts does not constitute a pattern.

13          Third, to establish a pattern of racketeering activity, the Government must prove beyond a

14   reasonable doubt that the racketeering acts either extended over a substantial period of time or that they

15   posed or would pose a threat of continued racketeering activity.  A series of criminal acts poses a threat

16   of continued racketeering activity if the acts were committed to further the goals of a long-term

17   association that exists for criminal purposes.  The Government need not prove such a threat of

18   continuity by any mathematical formula or by any particular method of proof, but rather may prove it

19   in a variety of ways.  For example, the threat of continued unlawful activity may be established when

20   the evidence shows that the racketeering acts are part of a long-term association that exists for criminal

21   purposes or when the racketeering acts are shown to be the regular way of conducting the affairs of the

22   enterprise.  Moreover, in determining whether the object of the conspiracy involved the threat of

23   continued unlawful activity, you are not limited to consideration of the specific racketeering acts that a

24   defendant himself is alleged to have committed; instead, in addition to considering such acts, you also

1  may consider the nature of the enterprise, and other unlawful activities of the enterprise and its

2  members viewed in their entirety, including both charged and uncharged unlawful activities.

3       Let me be clear about what the Government is and is not required to prove for a conviction

4  under Count One.  The Government must prove that the defendant you are considering intended to

5  further an endeavor which, if completed, would have satisfied all of the elements of a racketeering

6  offense.  But the Government is not required to prove that the defendant personally committed or even

7  agreed to commit any act of racketeering.  Nor is it required to prove that any acts of racketeering

8  actually occurred.  Instead, for a conviction under Count One, the Government must prove beyond a

9  reasonable doubt that the defendant you are considering agreed to participate in the enterprise with the

10  knowledge and intent that at least one member, which could be the defendant himself, would commit

11  at least two racketeering acts in the conduct of the affairs of the enterprise, and that those acts would

12  constitute a pattern of racketeering activity as defined above.

13

14       5.  Difference Between "Enterprise" and "Pattern of Racketeering Activity"

15       Keep in mind that an enterprise is not the same thing as the pattern of racketeering activity.  To

16  convict, the Government must prove beyond a reasonable doubt that if the conspiracy achieved its

17  objective, there would be an enterprise *and* that the enterprise's affairs would be conducted through a

18  pattern of racketeering activity.  As I have mentioned, the enterprise in this case is alleged to be a

19  group of individuals who associated together for a common purpose of engaging in a course of

20  conduct, known as La ONU.  A pattern of racketeering activity, on the other hand, is a series of

21  criminal acts.  The proof used to establish these separate elements may be the same or overlapping.

22  For example, if you find that an ongoing enterprise existed, the existence of this enterprise may help

23  establish that the separate racketeering acts were part of a "pattern" of continuing criminal activity.

1  Nevertheless, you should bear in mind that proof of an enterprise does not necessarily establish proof

2  of a pattern of racketeering activity or vice versa.

3

4        6.  Racketeering Predicates

5        I will now instruct you on the substantive law governing the racketeering crimes that the

6  Indictment alleges were part of the pattern of racketeering activity in this case.

7        The Indictment alleges that the following categories of criminal violations were committed or

8  were intended to be committed as part of the racketeering conspiracy charged in Count One:

9            i.    acts involving murder, in violation of Puerto Rico law;

10           ii.   acts involving attempted murder, in violation of Puerto Rico law;

11           iii.  acts involving trafficking in controlled substances, in violation of federal law; and

12           iv.   acts involving bribery, in violation of Puerto Rico law.

13       As a reminder, you must be unanimous as to the *types* of predicate racketeering acts that the

14  defendant you are considering agreed to commit, but you are not required to make a finding of specific

15  predicate acts.

16       I will instruct you about each kind of alleged racketeering act in turn.

17

18           i.    Racketeering Predicate: Murder in Violation of Puerto Rico Law

19       The Indictment alleges that one of the categories of criminal violations that were committed or

20  intended to be committed as part of the racketeering conspiracy charged in Count One included

21  murder, in violation of Puerto Rico law.

22       Murder is the killing of another human being with malice aforethought.  In particular, pursuant

23  to Puerto Rico law, the Government must prove two elements beyond a reasonable doubt.

24       First, the Government must prove beyond a reasonable doubt that the person caused the death

25  of another human being, or aided and abetted or willfully caused another person to cause the death of

34

1    another human being.  The person's conduct must be the direct cause of the victim's death.  In other

2    words, an act caused a victim's death if the act, in a natural and continuous sequence, results in the

3    death, and if the death would not have occurred without the act.

4         Second, the Government must prove that the person acted with malice aforethought.  "Malice

5    aforethought" is the state of mind that would cause a person to act without regard to the life of another.

6    To satisfy this element, the person must have acted consciously, with the intent to kill another human

7    being.  Malice can be proved in any of three ways, and the Government satisfies its burden of proof if

8    it proves any of the three.  The first alternative is that a person intended to kill the victim.  A person

9    must have had it in his mind to kill the victim.  It involves concentrating or focusing the mind for some

10   perceptible period.  The person must have possessed the actual, subjective intent to kill.  The second is

11   that the person intended to cause grievous bodily harm to the victim.  Grievous bodily harm means

12   severe injury to the body.  The third is that the person acted recklessly and wantonly, in a way that

13   grossly deviated from a reasonable standard of care such that he was aware of the serious risk that

14   death would result.  In order to establish this element, the Government must prove beyond a reasonable

15   doubt that the person acted willfully, with a bad or evil purpose to break the law.  However, the

16   Government need not prove spite, malevolence, hatred, or ill will toward the victim.

17        A defendant is not guilty of murder under Puerto Rico law, however, if the killing occurred in a

18   sudden heat of passion or rage and was caused by an adequate provocation on the part of the victim.

19   For the provocation to reduce the crime of murder to voluntary manslaughter, it must be of such a

20   nature as to cause an ordinary man to lose control of himself and, impelled by such provocation, to act

21   on the spur of the moment, without due reflection and without deliberate intent.

22

35

1       ii. Racketeering Predicate: Attempted Murder in Violation of Puerto Rico Law

2    The Indictment also alleges that one of the categories of criminal violations that were

3 committed or intended to be committed as part of the racketeering conspiracy charged in Count One

4 included acts of attempted murder in violation of Puerto Rico law.  To prove that a person committed

5 an attempted murder, the Government must prove beyond a reasonable doubt that:

6    First, the person intended for a murder to occur;

7    Second, that the person engaged in an act or omission, or aided and abetted or willfully caused

8 another person to engage in an act or omission, that was unequivocally and instantaneously directed

9 toward initiating the commission of the crime; and

10    Third, the crime was not completed due to circumstances beyond the control of the person.

11

12       iii. Racketeering Predicate: Narcotics Conspiracy

13    The Indictment also alleges that one of the categories of criminal violations that were

14 committed or intended to be committed as part of the racketeering conspiracy charged in Count One

15 included acts involving drug trafficking, namely the distribution or possession with intent to distribute

16 of cocaine, and conspiracy to do the same, in violation of federal law.

17    To sustain its burden of proof with respect to proving a narcotics conspiracy, the Government

18 must prove beyond a reasonable doubt the following two elements:

19    First, that a conspiracy existed; and

20    Second, that the person intentionally and knowingly became a member of that conspiracy —

21 that is, that he knowingly associated himself with the conspiracy and participated in the conspiracy to

22 distribute, or possess with the intent to distribute, cocaine.

23    I refer you to the instructions I previously gave you in connection with Count One regarding

24 the meaning and requirements of these two elements.

1          a.   Object of the Conspiracy

2          Here, the alleged object of the conspiracy — the illegal goal of the conspiracy — was the

3    distribution or possession with intent to distribute of cocaine.

4          Let me note that the Government must prove only that the person either (1) conspired to

5    distribute a controlled substance or (2) conspired to possess the controlled substance with the intent to

6    distribute it.  The Government may, but need not, prove both.  You must be unanimous, however, as to

7    which of these two objectives (or both) was proved beyond a reasonable doubt to have been the object

8    of the conspiracy.

9          b.   Distribution

10         The word "distribution" means the actual, constructive, or attempted transfer of the drug.  To

11    distribute simply means to deliver, to pass over, to hand over something to another person, or to cause

12    it to be delivered, passed on, or handed over to another.  Distribution does not require a sale, but it does

13    include sales.

14         c.   Possession with Intent to Distribute

15         In defining "possession with intent to distribute," I will first discuss the concept of

16    "possession" and then discuss the concept of "intent to distribute."

17         The legal concept of possession may differ from the everyday term, so let me explain it in in

18    some detail.  Actual possession is what most of us think of as possession — that is, having physical

19    custody or control of an object, as I possess this pen.  However, a person need not have actual, physical

20    possession — that is, physical control over an object — in order to be in *legal* possession of it.  If a

21    person has the ability to exercise substantial control over an object, even if he or she does not have the

22    object in his physical custody, and that person has the intent to exercise such control, then the person is

23    in possession of that object.  This is called "constructive possession."

1       Control over an object may be demonstrated by the existence of a working relationship between

2   one person having the power or ability to control the item and the person who has actual physical

3   custody.  The person having control "possesses" the object because he or she has an effective working

4   relationship with the person who has actual physical custody of the object and because he or she can

5   direct the movement or transfer or disposition of the object.

6       More than one person can have control over the same object.  The law recognizes that

7   possession may be sole or joint.  Finally, possession and ownership are not the same.  A person can

8   possess an object and not be the owner of the object.

9       Possession "with intent to distribute" simply means the possession of a controlled substance

10   with the intent or purpose to "distribute" it to another person or persons, as I have already defined that

11   term.

12       Because no one can read a person's mind, the determination as to a person's intent may be

13   inferred from his behavior.  You may ask yourself whether any drugs in a person's possession, that is,

14   subject to his control, were for his personal use or for the purpose of distribution to another.

15                             d.   Controlled Substance

16       Finally, I instruct you that cocaine is a "controlled substance" as a matter of law.

17

18                         iv.   Racketeering Predicate: Bribery in Violation of Puerto Rico Law

19       Finally, the Indictment also alleges that one of the categories of criminal violations that were

20   committed or intended to be committed as part of the racketeering conspiracy charged in Count One

21   included acts of bribery in violation of Puerto Rico law.  Under Puerto Rico law, any person who,

22   directly or through an intermediary, gives or promises to give money or any benefit to a public officer

23   or employee for the purpose of getting that public officer or employee to perform, omit, or delay an act

24   that pertains to his or her regular office or duties, or to perform an act that is contrary to his or her

1 regular duties, or with the understanding that such renumeration or benefit shall influence any action,

2 decision, vote, or ruling by that person in his or her official capacity, is guilty of bribery.

3 Accordingly, to prove that a person committed bribery, the Government must prove beyond a

4 reasonable doubt two elements.

5 First, the Government must prove that the person, directly or through an intermediary, gave or

6 promised to give money or any benefit to a public officer or employee.  A police officer qualifies as a

7 public officer or employee.

8 Second, the Government must prove that the person did so for one of the following purposes:

9 (a) to get that public officer or employee to perform, omit, or delay an act pertaining to his regular

10 duties; (b) to get that public officer or employee to perform an act that is contrary to his regular duties;

11 or (c) to influence any action or decision by that public officer or employee in his official capacity.  It

12 is sufficient for the act to fall within the general duties of the employee; it is not necessary to show that

13 the official had final authority over any particular matter.

14

15  7.  Multiple Conspiracies

16 Count One charges a racketeering conspiracy relating to a specific alleged enterprise —

17 namely, La ONU.  The defendants argue that there were actually several separate and independent

18 racketeering conspiracies with various groups of members.

19 Whether there existed a single unlawful agreement, or many such agreements, or indeed, no

20 agreement at all, is a question of fact for you, the jury, to determine in accordance with the instructions

21 I am about to give you.

22 When two or more people join together to further one common unlawful design or purpose, a

23 single conspiracy exists.  By way of contrast, multiple conspiracies exist when there are separate

24 unlawful agreements to achieve distinct purposes.

39

1    Proof of several separate and independent conspiracies is not proof of the single, overall

2    conspiracy charged in Count One of the Indictment, unless one of the conspiracies proved happens to

3    be the single conspiracy described in the Indictment.

4    You may find that there was a single conspiracy despite the fact that there were changes in

5    personnel, activities, or both, so long as you find beyond a reasonable doubt that some of the co-

6    conspirators continued to act for the duration of the conspiracy for the purposes charged in Count One

7    of the Indictment.  The fact that the members of a racketeering conspiracy are not always identical

8    does not necessarily imply that separate racketeering conspiracies exist.  In addition, the existence of

9    subgroups or subunits within a larger conspiracy does not necessarily mean that the larger conspiracy

10   does not exist.

11   On the other hand, if you find that the racketeering conspiracy charged in the Indictment did

12   not exist, you cannot find either defendant guilty of the single racketeering conspiracy charged in

13   Count One.  This is so even if you find that some racketeering conspiracy other than the one charged in

14   Count One existed, even though the purposes of both conspiracies may have been the same, and even

15   though there may have been some overlap in membership.

16   Similarly, if you find that the defendant you are considering was a member of another

17   conspiracy, and not the one charged in the Indictment, then you must acquit that defendant of the

18   conspiracy charge.  A person can be part of more than one conspiracy at the same time, and his actions

19   can further the interests of more than one conspiracy at the same time.

20   Therefore, what you must do is determine whether the conspiracy charged in the Indictment

21   existed.  If it did, you then must determine the nature of the conspiracy and who were its members.

22

23                              *                *                *

40

1    That completes my instructions as to Count One, the racketeering conspiracy charge.  I will

2    now instruct you on the remaining counts of the Indictment, each of which charges a single defendant

3    with a specific murder in violation of one of three different federal laws.

4

5    D. <u>Aiding and Abetting</u>

6    Before I move on to the remaining counts of the Indictment, which charge the defendants with

7    what are known as substantive (that is, non-conspiracy) crimes, I want to instruct you on the concept of

8    aiding and abetting, including willfully causing.

9    The defendants are charged in Counts Two through Nine with committing certain criminal acts

10   but are also charged with aiding and abetting or willfully causing the commission of those acts by

11   another person.  It is not necessary for the Government to show that the defendant you are considering

12   himself physically committed a crime in order for you to find him guilty.  You may, under certain

13   circumstances, find the defendant you are considering guilty of the crime as an aider and abettor or as

14   someone who willfully caused someone else to commit the crime.

15   Aiding and abetting liability is its own theory of criminal liability that applies to Counts Two

16   through Nine.  In effect, it is a theory of liability that permits a person to be convicted of a specified

17   crime if the person, while not himself committing the crime, assisted another person or persons in

18   committing the crime or willfully caused another person to commit the crime.

19   Under the federal aiding and abetting statute, whoever "aids, abets, counsels, commands,

20   induces or procures" the commission of an offense is punishable as a principal.  You should give these

21   words their ordinary meaning.  A person "aids or abets" a crime if he knowingly does some act for the

22   purpose of aiding or encouraging the commission of that crime, with the intention of causing the crime

23   charged to be committed.  To "counsel" means to give advice or recommend.  To "induce" means to

24   lead or move by persuasion or influence as to some action or state of mind.  To "procure" means to

41

1  bring about by unscrupulous or indirect means.  To "cause" means to bring something about, to effect

2  something.

3        A person who aids and abets another to commit an offense is just as guilty of that offense as if

4  he had committed it himself.  Therefore, if you find that the Government has proved beyond a

5  reasonable doubt that another person actually committed a crime, and that the defendant you are

6  considering aided and abetted that person in the commission of the offense, then you may find the

7  defendant you are considering guilty of the crime.

8        As you can see, the first requirement is that the crime charged was actually committed by

9  someone.  Obviously, no one can be convicted of aiding and abetting a crime if no crime was

10  committed.  But if you do find that a crime was committed, then you must consider whether the

11  defendant you are considering aided or abetted the commission of the crime.

12        In order to aid and abet another to commit a crime, it is necessary that the defendant you are

13  considering willfully and knowingly associated himself in some way with the crime and that he

14  willfully and knowingly sought by some act to help make the crime succeed.  To establish that the

15  defendant you are considering participated in the commission of the crime, the Government must

16  prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of

17  bringing about that crime.

18        The mere presence of a person where a crime is being committed, even coupled with

19  knowledge by that person that a crime is being committed, or merely associating with others who were

20  committing a crime is not sufficient to establish aiding and abetting.  An aider and abettor must have

21  some interest in the criminal venture and must take some action to assist or encourage the commission

22  of the crime.

23        To determine whether a defendant aided and abetted the commission of a crime with which he

24  is charged, ask yourself these questions:

1          1.   Did he participate in the crime charged as something he wished to bring about?

2          2.   Did he associate himself with the criminal venture knowingly and willfully?

3          3.   Did he seek by his actions to make the criminal venture succeed?

4     If he did, then that defendant is an aider and abettor and therefore guilty of the offense.  If your

5     answer to any one of these questions in "no," then you must find that defendant not guilty.

6     Similarly, a defendant can be found guilty even if he did not himself commit the crime if he

7     willfully caused another person to commit the crime.  In considering whether a defendant willfully

8     caused another person to commit a crime, ask yourself these questions:

9          1.   Did the defendant intend for someone to commit the crime?

10         2.   Did the defendant intentionally instruct or cause another person to commit the criminal

11              act?

12    If you are persuaded beyond a reasonable doubt that the answer to both of these questions is

13    "yes," then the defendant you are considering is guilty of the crime charged just as if he himself had

14    actually committed it.  If not, you must find him not guilty under this theory.

15

16    E.  Murder in Aid of Racketeering

17    Counts Two, Four, and Seven each charge one defendant with committing or causing a murder

18    at least in part for the purpose of maintaining or increasing the defendant's position in a racketeering

19    enterprise.  I am addressing all three of these counts together because the elements of the charges are

20    the same, but to be clear: Count Two charges Mr. Blondet (and Mr. Blondet only) with this crime for

21    the murder of Crystal Martinez-Ramirez; and Counts Four and Seven charge Mr. Marquez-Alejandro

22    (and Mr. Marquez-Alejandro only) with this crime for the murders of Israel Crespo-Cotto and Carlos

23    Barbosa, respectively.

1       This law makes it a crime for any person, for the purpose of gaining entrance to or maintaining

2    or increasing position in an enterprise engaged in racketeering activity, to murder any individual in

3    violation of local law.

4       Accordingly, in order to sustain its burden of proof as to each of Counts Two, Four, and Seven,

5    the Government must prove each of the following three elements beyond a reasonable doubt:

6       <u>First</u>, that the enterprise described in Count One existed, that it engaged in a pattern of

7    racketeering activity, and that its activities affected interstate or foreign commerce, as I have

8    previously defined these terms for you;

9       <u>Second</u>, that the defendant at issue committed murder in violation of Puerto Rico law; and

10       <u>Third</u>, that one of the defendant's purposes in committing the murder was to gain entrance to,

11    maintain his position in, or increase his position in the enterprise.

12       I will explain each of these elements in more detail now.

13       1.  <u>Murder in Aid of Racketeering: Existence of the Enterprise</u>

14       I already defined for you, in connection with Count One, the meaning of "enterprise,"

15    "affecting interstate or foreign commerce," and "racketeering activity."  But unlike the instructions I

16    gave you for Count One, which charged a *conspiracy* to commit racketeering, for purposes of Counts

17    Two, Four, and Seven, the Government must prove that the enterprise charged in the Indictment, La

18    ONU, actually existed.  You must find that at the general time that the murder occurred, the enterprise

19    was engaged in racketeering activity, as I defined that term for you.  And finally, you must find that the

20    criminal enterprise itself, or the racketeering activities associated with it, had some effect on interstate

21    or foreign commerce, as I have previously explained these terms to you.

22

1        2.   Murder in Aid of Racketeering: Murder in Violation of Puerto Rico Law

2           The second element the Government must prove beyond a reasonable doubt with respect to

3    Counts Two, Four, and Seven is that the defendant at issue committed or aided and abetted the charged

4    murder in violation of Puerto Rico law.

5           I have already instructed you on the elements of murder under Puerto Rico law and you should

6    apply those instructions here.  I remind you that, just like the other murder charges I have already

7    discussed, a defendant may be guilty of murder by personally committing the crime, by willfully

8    causing it, or by aiding and abetting it.

9

10       3.   Murder in Aid of Racketeering: Purpose of Gaining Entrance to, or Maintaining or

11             Increasing Position, in the Enterprise

12          The third element that the Government must prove beyond a reasonable doubt with respect to

13   Counts Two, Four, and Seven is that the defendant at issue, or the person whom the defendant aided

14   and abetted or willfully caused to commit the crime, acted for the purpose of gaining entrance to,

15   maintaining his position in, or increasing his position in the La ONU enterprise.

16          Your focus in this element is on the general purpose or motive of the defendant or the person

17   whom the defendant aided and abetted or willfully caused to commit the charged crime.  The

18   Government does not need to prove that gaining entrance to, or maintaining or increasing position in

19   the enterprise, was the defendant's *only* motive, or even his principal motive, so long as it was a

20   substantial motivating factor in the defendant's decision to participate in the murder.  For example, this

21   element is satisfied if the defendant committed the crime because he knew it was expected of him by

22   reason of his involvement in La ONU, because it would enhance or maintain his power or prestige

23   within La ONU, or, with respect to a high-ranking member of the enterprise, if he committed or

1    sanctioned the charged violent act to protect La ONU's operations or to advance its objectives.   These

2    examples, however, are by way of illustration and are not exhaustive.

3

4           4.   Defense Theory Regarding Count Two (Defendant Luis Blondet)

5           Mr. Blondet's position is that the Government has not proved beyond a reasonable doubt that

6    the killing of Crystal Martinez-Ramirez (who is not alleged to have been involved in the affairs of La

7    ONU in any respect) was in furtherance of the La ONU enterprise, or that gaining entrance to, or

8    maintaining or increasing his position in La ONU was a substantial motivating factor in the killing.

9           Mr. Blondet also argues that the Government has not proved beyond a reasonable doubt that he

10   acted with malice aforethought and proved beyond a reasonable doubt that the killing of Crystal

11   Martinez-Ramirez was not committed in the heat of the moment, caused by adequate provocation.

12          If you agree with either argument, you must acquit Mr. Blondet on Count Two.

13

14   F.   Murder While Engaged in a Drug Crime

15          Counts Five and Eight charge that, while engaged in a conspiracy to distribute five kilograms

16   or more of cocaine, Mr. Marquez-Alejandro killed or aided and abetted or willfully caused another

17   person to kill someone.  Count Five charges Mr. Marquez-Alejandro with this crime in connection

18   with the murder of Israel Crespo-Cotto, and Count Eight charges him with this crime in connection

19   with the murder of Carlos Barbosa.

20          This law makes it a crime for any person who is engaging in certain narcotics offenses to

21   intentionally kill, or counsel, command, induce, procure, or cause the intentional killing of an

22   individual, if such killing results.

23          In order to sustain its burden of proof as to Counts Five and Eight, the Government must prove

24   each of the following three elements beyond a reasonable doubt:

1    First, that at the time of the charged murder, the defendant was engaged in a conspiracy to

2    distribute five kilograms or more of cocaine;

3    Second, that while engaged in that narcotics conspiracy, the defendant either intentionally

4    killed, or aided and abetted the killing of, another person or counseled, commanded, induced, procured,

5    or caused the intentional killing of that person by someone else; and

6    Third, that the killing actually resulted from the defendant's actions.

7

8    1.   Murder While Engaged in a Drug Crime: Narcotics Conspiracy; Drug Weight

9    As I just mentioned, to find Mr. Marquez-Alejandro guilty of Counts Five and Eight, you must

10   determine first that he was engaged in a narcotics conspiracy, and second, as to these counts, that the

11   conspiracy involved at least five kilograms of cocaine.

12   I have already explained to you the elements of a narcotics conspiracy in connection with

13   Count One and you should apply those instructions here.

14   If, but only if, you conclude that the Government has proved beyond a reasonable doubt that

15   the Defendant is guilty of participating in the conspiracy described above, you must then determine

16   whether they intended the distribution of at least five kilograms of cocaine.

17   To calculate this amount, you should include (1) any transactions in furtherance of the

18   conspiracy in which the Defendant personally participated, and (2) any transactions in furtherance of

19   the conspiracy that the Defendant reasonably foresaw even though he did not personally participate in

20   these sales.  Your findings on quantity must be unanimous and beyond a reasonable doubt.

21

47

1        2.  <u>Murder While Engaged in a Drug Crime: Counsel, Command, Induce, Procure, or</u>

2           <u>Cause an Intentional Killing</u>

3        The second element that the Government must prove beyond a reasonable doubt with respect to

4    Counts Five and Eight is that Mr. Marquez-Alejandro, while engaged in that narcotics conspiracy,

5    intentionally killed the person specified in the Indictment, or counseled, commanded, induced,

6    procured, or caused the killing of that person.  I will define those terms for you now.

7           i.  <u>"While Engaged In"</u>

8        To show that the killing of the person specified in the Indictment occurred while the defendant

9    was engaged in a narcotics conspiracy, the Government must prove more than simply a temporal

10    connection between the killing and the drug conspiracy.  The Government must prove beyond a

11    reasonable doubt that the killing occurred because and as part of the defendant's engaging in the

12    narcotics conspiracy.  The Government must show that a substantive connection existed between the

13    alleged conspiracy and the killing — in other words, that the alleged conspiracy was one purpose of

14    the killing.  If you find that the murder was wholly unconnected to the alleged narcotics conspiracy or

15    was simply coincidental to it, then this element is not satisfied.  A drug-related motive need not be the

16    sole purpose, the primary purpose, or even one that was equally important to any non-drug-related

17    purpose, as long as it was one of the purposes.

18           ii.  <u>"Intentionally Killed"</u>

19        A person intentionally kills another person when he does so deliberately and purposefully.

20    That is, the defendant's actions must have been his conscious objective rather than the product of a

21    mistake or accident or mere negligence or some other innocent reason.

22           iii.  <u>"Counsel, Command, Induce, Procure, and Cause"</u>

23        To meet its burden of proof, the Government does not need to prove that Mr. Marquez-

24    Alejandro directly caused the death of the person specified in the count you are considering.  The

1   statute takes into consideration that while certain people might have direct involvement in an

2   intentional killing, others can be held responsible even if they play a less direct role.  Thus, this

3   element can be satisfied if you find beyond a reasonable doubt that Mr. Marquez-Alejandro aided,

4   abetted, counseled, commanded, induced, procured, or caused the relevant killing.  I have already

5   instructed you on the meaning of these terms within the aiding and abetting instruction, and you should

6   apply those instructions in determining whether this element is met.

7

8          3.   Murder While Engaged in a Drug Crime: Death Results

9          The third element that the Government must prove beyond a reasonable doubt with respect to

10   Counts Five and Eight is that the death actually resulted from the acts of Mr. Marquez-Alejandro or a

11   person for whose conduct he is criminally responsible.

12

13   G.   Murder Using a Firearm

14          Finally, Counts Three, Six, and Nine each charge a defendant with knowingly using and

15   carrying a firearm in relation to a crime of violence or a drug trafficking crime — or aiding and

16   abetting or willfully causing another person to do the same — resulting in murder.  Count Three

17   charges Mr. Blondet with this crime in connection with the murder of Crystal Martinez-Ramirez, and

18   Counts Six and Nine charge Mr. Marquez-Alejandro with this crime in connection with the murders of

19   Israel Crespo-Cotto and Carlos Barbosa, respectively.

20          To sustain its burden of proof with respect to each of these counts, the Government must prove

21   each of the following five elements beyond a reasonable doubt:

22          First, that on or about the date alleged in the Indictment, the defendant at issue used or carried

23   or possessed a firearm, or any combination of those acts, or aided and abetted or willfully caused

24   another person to do so;

49

1       Second, that the use or carrying of the firearm was during and in relation to a crime of violence

2 or a drug trafficking crime, or possession of the firearm was in furtherance of such a crime;

3       Third, that the defendant at issue or the person he aided and abetted caused the death of another

4 person through the use of a firearm;

5       Fourth, that the death of that person qualifies as a murder under federal (not Puerto Rico) law,

6 as I will define that term for you in a moment; and

7       Fifth, that the defendant at issue acted knowingly.

8

9       1.   Murder Using a Firearm: Use, Carry, or Possess

10       The first element the Government must prove beyond a reasonable doubt with respect to

11 Counts Three, Six, and Nine is that, on or about the date charged in the Indictment, the defendant at

12 issue, or the person he aided and abetted, used, carried, or possessed a firearm.  Let me start by

13 defining some terms.

14       A "firearm" is defined as any weapon that will, or is designed to or may readily be converted

15 to, expel a projectile by the action of an explosion.  It does not matter if the firearm was loaded or

16 operable at the time of the crime.  A gun is a firearm.

17       In order to prove that someone "used" a firearm, the Government must prove beyond a

18 reasonable doubt an active employment of the firearm during and in relation to the relevant crime of

19 violence or drug trafficking crime, as I will explain those terms in a moment.  This does not mean that

20 the defendant at issue, or the person he aided and abetted or intentionally caused to use the firearm,

21 must actually have fired or attempted to fire the weapon, although those would obviously constitute

22 use of the weapon.  Brandishing, displaying, or even referring to the weapon so that other people knew

23 that the person had a firearm available if needed all constitute "use" of the firearm.  But the mere

1  possession of a firearm at or near the site of the crime at issue, without active employment, is not

2  sufficient to constitute "use" of the firearm.

3       To prove that someone "carried" a firearm, the Government must prove beyond a reasonable

4  doubt that the defendant at issue, or the person he aided and abetted or intentionally caused to carry a

5  firearm, had the weapon within his control in such a way that it furthered the commission of the

6  relevant crime of violence or drug trafficking crime.

7       With respect to "possessing" a firearm, the Government must prove beyond a reasonable doubt

8  that the defendant at issue, or the person he aided and abetted or intentionally caused to possess a

9  firearm, either had actual physical possession of the firearm or had substantial custody or control over

10  it.  But mere possession of a firearm is not enough.  The possession must be in furtherance of the

11  relevant crime of violence or drug trafficking crime — in other words, it must have played some part

12  in furthering the crime for this element to be satisfied.

13

14      2.  <u>Murder Using a Firearm: During and in Relation to a Crime of Violence or Drug</u>

15        <u>Trafficking Crime</u>

16       The second element that the Government must prove beyond a reasonable doubt with respect to

17  Counts Three, Six, and Nine is that the defendant at issue either used or carried a firearm during and in

18  relation to a crime of violence or drug trafficking crime, or possessed a firearm in furtherance of such a

19  crime, or aided and abetted or willfully caused another person to do so.  You must find beyond a

20  reasonable doubt that the defendant actually committed the underlying crime of violence or drug

21  trafficking crime.  Possession in furtherance, as I explained earlier, requires that the firearm must have

22  played some part in furthering the crime in order for this element to be satisfied.

1    For <u>Count Three</u>, which charges Mr. Blondet with committing this crime in connection with the

2    murder of Crystal Martinez-Ramirez, the underlying crime of violence that must be proved beyond a

3    reasonable doubt is the murder in aid of racketeering crime that is charged in Count Two.

4    For <u>Counts Six</u> and <u>Nine</u>, which charge Mr. Marquez-Alejandro with committing this crime in

5    connection with the murders of Israel Crespo-Cotto and Carlos Barbosa, respectively, the underlying

6    crimes of violence and drug trafficking crimes — only one of which must be proved beyond a

7    reasonable doubt — are the murder in aid of racketeering and drug-related murder crimes that are

8    charged in Counts Four and Five and Counts Seven and Nine, respectively.  You must be unanimous,

9    however, as to which of these underlying crimes was proved beyond a reasonable doubt.

10

11            3.   <u>Murder Using a Firearm: Causing Death</u>

12    The third element the Government must prove beyond a reasonable doubt with respect to

13    Counts Three, Six, and Nine is that the defendant at issue caused the death of a person through the use

14    of a firearm, or aided and abetted or willfully caused the same.  The defendant may be found to have

15    caused the death of the victim if his conduct, or the conduct of the person he aided and abetted, was a

16    substantial factor in causing the death and the victim would not have died except for that conduct.

17    Conduct was a substantial factor if it had such an effect in producing the death that would lead a

18    reasonable person to regard the conduct as a cause of death.  The death of a person may have one or

19    more than one cause.  The Government need not prove that the conduct of the defendant at issue, or the

20    person he aided and abetted, was the only cause of the victim's death, and you do not need to find that

21    the defendant at issue shot the victim or that he committed the final, fatal act.  The Government need

22    prove only that the conduct of the defendant at issue, or the person he aided and abetted, was a

23    substantial factor in causing the death.

24

1            4.   <u>Murder Using a Firearm: Death Qualifies as a Murder under Federal Law</u>

2            The fourth element the Government must prove beyond a reasonable doubt with respect to

3      Counts Three, Six, and Nine is that the defendant at issue committed, or aided and abetted, the charged

4      murder in violation of federal law.  Fortunately, the definition of murder under federal law is very

5      similar to the definition under Puerto Rico law, which I explained to you in connection with Count

6      One.  The federal statute defines murder as "the unlawful killing of a human being, with malice

7      aforethought."  As I previously instructed, a killing is done with "malice aforethought," if it was done

8      consciously with the intent to kill.  The Government must prove beyond a reasonable doubt that the act

9      that caused death was done willfully, with a bad or evil purpose to break the law.  But the Government

10     need not prove spite, malevolence, hatred, or ill will toward the victim in order to prove "malice

11     aforethought."

12

13           5.   <u>Murder Using a Firearm: Knowingly</u>

14           The final element the Government must prove beyond a reasonable doubt with respect to

15     Counts Three, Six, and Nine is that the defendant at issue knew that he, or the person he aided and

16     abetted, was using, carrying, or possessing a firearm and that he acted knowingly in doing so.

17           To satisfy this element, you must find that the defendant at issue had knowledge that what was

18     being carried or used was a firearm as that term is generally used.  An act is done "knowingly" if it is

19     done purposefully and voluntarily as opposed to mistakenly or accidentally.  You will recall that I

20     instructed you earlier that to find that someone acted knowingly requires you to make a finding as to

21     that person's state of mind.  In order for the Government to satisfy this element, it must prove that the

22     defendant at issue knew what he was doing — for example, that he knew that he, or the person he

23     aided and abetted, was possessing or carrying a firearm in furtherance of the commission of a crime of

1   violence or a drug trafficking crime.  It is not necessary, however, for the Government to prove that the

2   defendant knew that he was violating any particular law.

3

4   H.  <u>Venue</u>

5        In addition to all of the elements that I have described for you, in order to convict a defendant

6   on any count of the Indictment, you must also decide whether any act in furtherance of that crime

7   occurred within the Southern District of New York.  The Southern District of New York includes

8   Manhattan and the Bronx.

9        The Government need not prove that any crime was committed entirely in this district or that

10  any defendant was present here.  It is sufficient to establish venue if any act in furtherance of the crime

11  you are considering occurred within the Southern District of New York, and it was reasonably

12  foreseeable to the defendant that the act would take place in the Southern District of New York.

13  Therefore, the fact that a murder is alleged to have occurred outside of this district does not preclude

14  you from finding that venue has been established as to the specific charged offenses.  Any action in

15  this district or any communication into or out of this district can establish venue so long as the action

16  or communication furthered the charged offense.  If you find that the crime charged was committed in

17  more than one district, venue is proper in any district in which the crime was begun, continued, or

18  completed.

19       I should note that on this issue — and this issue alone — the Government's burden is not proof

20  beyond a reasonable doubt, but only proof by a preponderance of the evidence.  Thus, the Government

21  has satisfied its venue obligations as to a count if you conclude that it is more likely than not that any

22  act in furtherance of the crime charged in that count occurred in the Southern District of New York.

23  By contrast, if you find that the Government failed to prove venue by a preponderance of the evidence

24  with regard to any count, then you must acquit the defendant you are considering of that count.

1

2      I.    Timing of the Offenses

3             With respect to the dates set forth in the Indictment, it is sufficient if you find that the charged

4      conduct that you are considering occurred around the dates set forth in the Indictment.

5             This is also a good opportunity to instruct you that it does not matter if a specific event or

6      transaction is alleged to have occurred on or about a certain date and the evidence indicates that, in

7      fact, it occurred on another date.  The law requires only a substantial similarity between the dates

8      alleged in the Indictment and the dates established by the testimony and other evidence.

9

10

11                                **CONCLUDING INSTRUCTIONS**

12     A.  COVID-19 Protocols

13            In a few minutes, you are going to go into the jury room and begin your deliberations.  During

14     your deliberations, please continue to adhere to the safety protocols that we have used throughout the

15     trial, including social distancing and masking.  We have taken those precautions, on the advice of our

16     medical experts, to ensure that everyone remains safe and healthy during trials.  In addition, as I

17     mentioned to you during trial, people have different levels of anxiety and risk tolerance when it comes

18     to COVID-19.  By adhering to the protocols, you not only ensure that everyone remains safe and

19     healthy, but also respect the fact that your fellow jurors may or may not have the same level of comfort

20     with the current situation that you have.

21

22     B.  Selection of the Foreperson

23            After you retire to begin your deliberations, your first task will be to select a foreperson.  The

24     foreperson has no greater voice or authority than any other juror but is the person who will

55

1  communicate with me when questions arise and when you have reached a verdict and who will be

2  asked in open court to pass your completed Verdict Form to me.  Notes should be signed by the

3  foreperson and should include the date and time they were sent.  Any notes from the jury will become

4  part of the record in this case.  So please be as clear and specific as you can be in any notes that you

5  send.  Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is

6  reached.

7

8  C.  Right to See Exhibits and Hear Testimony

9          All of the exhibits (other than the contraband) will be given to you near the start of

10  deliberations.  The documentary evidence will be provided to you in electronic form.  In addition, you

11  will also be provided with an electronic list that the parties have prepared of all witnesses who testified

12  at trial and a separate list of all exhibits that were received into evidence.  When you retire to

13  deliberate, the Court staff with provide you with information on how to access and display these lists

14  and the evidence in the jury room.

15          If, during your deliberations, you prefer to view any evidence here in the courtroom or you

16  want any of the testimony read back to you, you may also request that.  Keep in mind that if you ask

17  for testimony, however, the court reporter must search through his or her notes, the parties must agree

18  on what portions of testimony may be called for, and if they disagree I must resolve those

19  disagreements.  That can be a time-consuming process.  So please try to be as specific as you possibly

20  can in requesting portions of the testimony, if you do.

21          Again, your requests for testimony — in fact, any communication with the Court — should be

22  made to me in writing, signed by your foreperson with the date and time, and given to one of the Court

23  Security Officers.

24

1    D.  Juror Note-Taking

2         If any one of you took notes during the course of the trial, you should not show your notes to,

3    or discuss your notes with, any other jurors during your deliberations.  Any notes you have taken are to

4    be used solely to assist you.  The fact that a particular juror has taken notes entitles that juror's views

5    to no greater weight than those of any other juror.  Finally, your notes are not to substitute for your

6    recollection of the evidence in the case.  If, during your deliberations, you have any doubt as to any of

7    the testimony, you may — as I just told you — request that the official trial transcript that has been

8    made of these proceedings be read back to you.

9

10   E.  Bias or Sympathy as Juror

11        All of us, no matter how hard we try, tend to look at others and weigh what they have to say

12   through the lens of our own experience and background.  We each have a tendency to stereotype others

13   and make assumptions about them.  Often, we see life and evaluate evidence through a clouded filter

14   that tends to favor those like ourselves.  You must do the best you can to put aside such stereotypes, for

15   all litigants and witnesses are entitled to a level playing field.

16        Indeed, under your oath as jurors, you are not to be swayed by bias or sympathy.  You are to be

17   guided solely by the evidence in this case, and as you sift through the evidence, the crucial question

18   that you must ask yourselves for each count is:  Has the Government proved each element beyond a

19   reasonable doubt?

20        It is for you and you alone to decide whether the Government has proved that each defendant is

21   guilty of each count, solely on the basis of the evidence and subject to the law as I have instructed you.

22        It must be clear to you that once you let prejudice, bias, or sympathy interfere with your

23   thinking, there is a risk that you will not arrive at a true and just verdict.

1   If you have a reasonable doubt as to a defendant's guilt with respect to a particular count, then

2   you must render a verdict of acquittal as to that defendant on that particular count.  On the other hand,

3   if you should find that the Government has met its burden of proving the guilt of a defendant beyond a

4   reasonable doubt with respect to a particular count, then you should not hesitate because of sympathy

5   or any other reason to render a verdict of guilty as to that defendant on that count.

6   I also caution you that, under your oath as jurors, you cannot allow to enter into your

7   deliberations any consideration of the punishment that may be imposed upon a defendant if he is

8   convicted.  The duty of imposing a sentence in the event of conviction rests exclusively with the Court,

9   and the issue of punishment may not affect your deliberations as to whether the Government has

10   proved a defendant's guilt beyond a reasonable doubt.

11

12   F.  <u>Duty to Deliberate</u>

13   The most important part of this case, members of the jury, is the part that you as jurors are now

14   about to play as you deliberate on the issues of fact.  I know you will try the issues that have been

15   presented to you according to the oath that you have taken as jurors.  In that oath you promised that

16   you would well and truly try the issues joined in this case and a true verdict render.

17   As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity

18   to express your own views.  Every juror should be heard.  No one juror should hold the center stage in

19   the jury room and no one juror should control or monopolize the deliberations.  If, after listening to

20   your fellow jurors and if, after stating your own view, you become convinced that your view is wrong,

21   do not hesitate because of stubbornness or pride to change your view.  On the other hand, do not

22   surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or

23   because you are outnumbered.

1     Your verdict must be unanimous.  If at any time you are not in agreement, you are instructed

2     that you are not to reveal the standing of the jurors, that is, the split of the vote, to anyone, including

3     me, at any time during your deliberations.

4

5     G.  <u>Return of the Verdict</u>

6     We have prepared a Verdict Form for you to use in recording your verdict as to each defendant

7     on each count in which he is charged.  As to some counts, if you find a defendant guilty, there will be

8     additional determinations for you to make.  The Verdict Form will set out clearly for you each of the

9     determinations that you will be called upon to make.

10    A copy of the Verdict Form is attached to these instructions.  But do not write on your

11    individual copies of the Verdict Form.  My staff will give the official Verdict Form to Juror Number

12    One, who should give it to the foreperson after the foreperson has been selected.

13    You should draw no inference from the questions on the Verdict Form as to what your verdict

14    should be.  The questions are not to be taken as any indication that I have any opinion as to how they

15    should be answered.

16    After you have reached a verdict, the foreperson should fill in the Verdict Form and note the

17    date and time, and you should all sign the Verdict Form.  The foreperson should then give a note —

18    **<u>not</u>** the Verdict Form itself — to the Court Security Officer outside your door stating that you have

19    reached a verdict.  Do not specify what the verdict is in your note.  Instead, the foreperson should

20    retain the Verdict Form and hand it to me in open court when I ask for it.

21    I will stress again that each of you must be in agreement with the verdict that is announced in

22    court.  Once your verdict is announced in open court and officially recorded, it cannot ordinarily be

23    revoked.

24

1    H. <u>Closing Comments</u>

2          Finally, I say this, not because I think it is necessary, but because it is the custom in this

3    courthouse to say it: You should treat each other with courtesy and respect during your deliberations.

4          All litigants stand equal in this room.  All litigants stand equal before the bar of justice.  All

5    litigants stand equal before you.  Your duty is to decide between these parties fairly and impartially,

6    and to see that justice is done.

7          Under your oath as jurors, you are not to be swayed by sympathy.  You should be guided solely

8    by the evidence presented during the trial and the law as I gave it to you, without regard to the

9    consequences of your decision.  You have been chosen to try the issues of fact and reach a verdict on

10   the basis of the evidence or lack of evidence.  If you let sympathy interfere with your clear thinking,

11   there is a risk that you will not arrive at a just verdict.  You must make a fair and impartial decision so

12   that you will arrive at the just verdict.

13         Members of the jury, I ask your patience for a few moments longer.  It is necessary for me to

14   spend a few moments with the parties and the court reporter at the side bar.  I will ask you to remain

15   patiently in the jury box, without speaking to each other, and we will return in just a moment to submit

16   the case to you.  Thank you.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                   :
UNITED STATES OF AMERICA,                                          :
                                                                   :
              -v-                                                  :        S13 16-CR-387 (JMF)
                                                                   :
JULIO MARQUEZ-ALEJANDRO and LUIS                                   :
BLONDET,                                                           :        <u>VERDICT FORM</u>
                                                                   :
                     Defendants.                                   :
                                                                   :
-------------------------------------------------------------------X

***All Answers Must Be Unanimous***

***<u>Rest of Page Left Intentionally Blank — Please Turn to the Next Page</u>***

**Count One: Racketeering Conspiracy (Defendant JULIO MARQUEZ-ALEJANDRO)**

As to Count One, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

Guilty _____   Not Guilty _____

If and only if you find defendant JULIO MARQUEZ-ALEJANDRO guilty of Count One, which types of racketeering crimes do you find were involved in the offense?

Acts Involving Murder or Attempted Murder

Proved _____        Not Proved _____

If you find that the offense involved acts involving murder or attempted murder, how many such acts do you find were involved in the offense?

One _____    Two _____    More Than Two _____

Acts Involving Drug Trafficking

Proved _____        Not Proved _____

If you find that the offense involved acts involving drug trafficking, how many such acts do you find were involved in the offense?

One _____    Two _____    More Than Two _____

If you find that the offense involved acts involving drug trafficking, did the offense involve five kilograms or more of cocaine?

Proved _____        Not Proved _____

Acts Involving Bribery

Proved _____        Not Proved _____

If you find that the offense involved acts involving bribery, how many such acts do you find were involved in the offense?

One _____    Two _____    More Than Two _____

2

**Count One: Racketeering Conspiracy (Defendant LUIS BLONDET)**

As to Count One, how do you find defendant LUIS BLONDET?

      Guilty \_\_\_\_\_   Not Guilty \_\_\_\_\_

If and only if you find defendant LUIS BLONDET guilty of Count One, which types of racketeering crimes do you find were involved in the offense?

    Acts Involving Murder or Attempted Murder

        Proved \_\_\_\_\_        Not Proved \_\_\_\_\_

        If you find that the offense involved acts involving murder or attempted murder, how many such acts do you find were involved in the offense?

        One \_\_\_\_\_    Two \_\_\_\_\_    More Than Two \_\_\_\_\_

    Acts Involving Drug Trafficking

        Proved \_\_\_\_\_        Not Proved \_\_\_\_\_

        If you find that the offense involved acts involving drug trafficking, how many such acts do you find were involved in the offense?

        One \_\_\_\_\_    Two \_\_\_\_\_    More Than Two \_\_\_\_\_

        If you find that the offense involved acts involving drug trafficking, did the offense involve five kilograms or more of cocaine?

        Proved \_\_\_\_\_        Not Proved \_\_\_\_\_

    Acts Involving Bribery

        Proved \_\_\_\_\_        Not Proved \_\_\_\_\_

        If you find that the offense involved acts involving bribery, how many such acts do you find were involved in the offense?

        One \_\_\_\_\_    Two \_\_\_\_\_    More Than Two \_\_\_\_\_

**<u>Count Two: Murder in Aid of Racketeering – Crystal Martinez-Ramirez</u>**

As to Count 2, how do you find defendant LUIS BLONDET?

       Guilty _____          Not Guilty _____

**<u>Count Three: Murder Using a Firearm – Crystal Martinez-Ramirez</u>**

As to Count Three, how do you find defendant LUIS BLONDET?

       Guilty _____          Not Guilty _____

**<u>Count Four: Murder in Aid of Racketeering – Israel Crespo-Cotto</u>**

As to Count Four, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

       Guilty _____          Not Guilty _____

**<u>Count Five: Murder While Engaged in a Drug Crime – Israel Crespo-Cotto</u>**

As to Count Five, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

       Guilty _____          Not Guilty _____

**<u>Count Six: Murder Using a Firearm – Israel Crespo-Cotto</u>**

As to Count Six, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

       Guilty _____          Not Guilty _____

**<u>Count Seven: Murder in Aid of Racketeering – Carlos Barbosa</u>**

As to Count Seven, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

       Guilty _____          Not Guilty _____

**<u>Count Eight: Murder While Engaged in a Drug Crime – Carlos Barbosa</u>**

As to Count Eight, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

       Guilty _____          Not Guilty _____

**Count Nine: Murder Using a Firearm – Carlos Barbosa**

As to Count Nine, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

Guilty _____          Not Guilty _____

***After completing the Verdict Form, please sign your names in the spaces provided below, fill in the date and time, and inform the Court Security Officer that you have reached a verdict.***

_____          _____
Foreperson

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

Date and Time: _____

***Once you have signed the Verdict Form, please give a note — NOT the Verdict Form itself — to the Court Security Officer stating that you have reached a verdict.***

5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                     :
UNITED STATES OF AMERICA,                                            :
                                                                     :
              -v-                                                    :
                                                                     :
JULIO MARQUEZ-ALEJANDRO and LUIS                                     :              S13 16-CR-387 (JMF)
BLONDET,                                                             :
                                                                     :
                      Defendants.                                    :
                                                                     :
------------------------------------------------------------------------X


## ~~DRAFT~~ JURY CHARGE

April ~~5~~7, 2022

# Table of Contents

**GENERAL INTRODUCTORY INSTRUCTIONS** ................................................................. 1

   A.   Role of the Court and the Jury ................................................................. 8
   B.   The Parties ................................................................................................. 8
   C.   Conduct of Counsel .................................................................................. 9
   D.   Presumption of Innocence; Burden of Proof; Reasonable Doubt ................... 9
   E.   Duty to Consider Each Defendant Separately ....................................... 10
   F.   What Is and Is Not Evidence ................................................................. 11
      1.   Seized Evidence ............................................................................ 12
      2.   Recording and Transcripts of Recordings ................................. 13
      3.   Specific Investigative Techniques Not Required ....................... 13
      4.   Stipulations ................................................................................... 14
      5.   Limited Purpose Evidence ........................................................... 14
      6.   Redactions .................................................................................... 15
   G.   Direct and Circumstantial Evidence ...................................................... 15
   H.   Inferences ................................................................................................ 17
   I.   Consciousness of Guilt from Intimidation of a Witness ....................... 17
   J.   Credibility of Witnesses ......................................................................... 18
      1.   Bias of Witnesses ......................................................................... 19
      2.   Accomplice or Cooperator Testimony ....................................... 19
      3.   Witness Using or Addicted to Drugs .......................................... 22
      4.   Prior Inconsistent or Consistent Statements .............................. 22
      5.   Law Enforcement and Government Witnesses ........................... 23
      6.   Expert Witnesses .......................................................................... 24
      7.   Preparation of Witnesses ............................................................. 25
   K.   Uncalled Witnesses ................................................................................ 25
   L.   Number of Witnesses and Uncontradicted Testimony .......................... 26
   M.   Evidence of Custody .............................................................................. 27
   N.   Persons Not on Trial ............................................................................... 27
   O.   A Defendant's Right Not to Testify ....................................................... 27

**INSTRUCTIONS ABOUT THE CHARGED CRIMES** .......................................... 28

   A.   The Indictment ....................................................................................... 28
   B.   Summary of the Indictment .................................................................... 29
   C.   Racketeering Conspiracy ....................................................................... 35
      1.   First Element: Existence of the Conspiracy ............................... 36
      2.   Second Element: Effect on Interstate or Foreign Commerce ....... 38
      3.   Third Element: Membership in the Conspiracy .......................... 39
      4.   Fourth Element: Agreement to Commit Predicate Acts .............. 42
      5.   Difference Between "Enterprise" and "Pattern of Racketeering Activity" ....... 45
      6.   Racketeering Predicates ............................................................... 46
         i.   Racketeering Predicate: Murder in Violation of Puerto Rico Law ............. 46
        ii.   Racketeering Predicate: Attempted Murder in Violation of Puerto Rico Law ........... 48
        iii.   Racketeering Predicate: Narcotics Conspiracy .............................. 49
        iv.   Racketeering Predicate: Bribery in Violation of Puerto Rico Law ............. 51

7.   Multiple Conspiracies ........................................................................... 52
D.   Aiding and Abetting ..................................................................................... 54
E.   Murder in Aid of Racketeering .................................................................... 56
1.   Murder in Aid of Racketeering: Existence of the Enterprise......................... 57
2.   Murder in Aid of Racketeering: Murder in Violation of Puerto Rico Law .................. 58
3.   Murder in Aid of Racketeering: Purpose of Gaining Entrance to, or Maintaining or Increasing Position, in the Enterprise ............................................. 58
4.   Defense Theory Regarding Count Two (Defendant Luis Blondet)............................ 59
F.   Murder While Engaged in a Drug Crime......................................................... 61
1.   Murder While Engaged in a Drug Crime: Narcotics Conspiracy; Drug Weight........... 62
2.   Murder While Engaged in a Drug Crime: Counsel, Command, Induce, Procure, or Cause an Intentional Killing ................................................. 62
i.   "While Engaged In" ............................................................................ 63
ii.  "Intentionally Killed"......................................................................... 63
iii. "Counsel, Command, Induce, Procure, and Cause" ................................. 63
3.   Murder While Engaged in a Drug Crime: Death Results ............................. 64
G.   Murder Using a Firearm ................................................................................ 64
1.   Murder Using a Firearm: Use, Carry, or Possess ........................................ 65
2.   Murder Using a Firearm: During and in Relation to a Crime of Violence or Drug Trafficking Crime .................................................... 66
3.   Murder Using a Firearm: Causing Death......................................................... 67
4.   Murder Using a Firearm: Death Qualifies as a Murder under Federal Law................. 68
5.   Murder Using a Firearm: Knowingly .............................................................. 69
H.   Venue ............................................................................................................ 69
I.   Timing of the Offenses ................................................................................ 70

**CONCLUDING INSTRUCTIONS** ............................................................... **71**
A.   COVID-19 Protocols .................................................................................... 71
B.   Selection of the Foreperson ......................................................................... 71
C.   Right to See Exhibits and Hear Testimony................................................. 72
D.   Juror Note-Taking......................................................................................... 73
E.   Bias or Sympathy as Juror ........................................................................... 73
F.   Duty to Deliberate......................................................................................... 74
G.   Return of the Verdict ................................................................................... 75
H.   Closing Comments......................................................................................... 76

iii

## ~~PRELIMINARY INSTRUCTIONS BEFORE SUMMATIONS~~

~~A.   Introductory Remarks~~

~~Members of the jury, you have now heard all of the evidence in the case.  Soon you will hear the final arguments of the parties.  You have paid careful attention to the evidence, and I am confident that you will act together with fairness and impartiality to reach a just verdict.~~

~~My usual practice in giving legal instructions to the jury is to wait until after you have heard the closing arguments of the lawyers.  And for the most part, I will follow that practice in this trial.  However, because the Indictment in this case is a bit complex, I believe it will be helpful to you in understanding and evaluating the parties' arguments if I describe the charges in the Indictment to you now and give you a brief explanation of what is necessary in order for those charges to be proved.~~

~~In particular, I am going to outline the specific charges in the Indictment, and very briefly tell you what those charges mean, what we lawyers call the elements of each crime charged.  I hope that this will help you to understand what the lawyers are arguing about, and that it may help streamline the arguments of counsel because they will not have to explain so much to you about the relevance of the arguments they are making.  Now, the elements of these various offenses will require further explanation or definition.  Don't worry —— I will provide those definitions in full at a later point, after the lawyers' closing arguments.  And remember that, when you deliberate, no portion of these instructions is more important than any other; you have to take the instructions as a whole.~~

~~Now and later,~~

1    I am going to read my instructions to you.  It is not my favorite way to communicate — and not

2    the most scintillating thing to listen to — but there is a need for precision, and it is important that I get

3    the words just right, and so that is why I will be reading.

4    I know that many of you have been taking notes throughout the trial, and it's perfectly fine to

5    continue to do so during the instructions and the arguments.  But at least as far as my instructions are

6    concerned, you don't have to take notes.  That is because you will have copies of what I'm reading

7    now, and what I'll be reading to you later, in the jury room to consult, so you don't have to worry if

8    you miss a word or two.  For now, just listen carefully and try to concentrate on what I'm saying.  And

9    as always, keep an open mind until you have heard all the arguments and my legal instructions.

10

11   B.   The Indictment

12   The two defendants, Julio Marquez-Alejandro and Luis Blondet, are formally charged in an

13   Indictment.  As I instructed you at the outset of this trial, the Indictment is not evidence.  It is simply

14   an accusation, a statement of the charges made against the defendants.  It gives the defendants notice

15   of the charges against them, and it informs the court and the public of the nature of the accusation.  But

16   it is not evidence, and it does not prove or even indicate guilt.  It does not create any presumption or

17   permit any inference that the defendants are guilty.  As a result, you are to give it no weight in deciding

18   the defendants' guilt or lack of guilt.  What matters is the evidence you heard at this trial.  Indeed, as I

19   have previously noted, the defendants are presumed innocent, and each has entered a plea of not guilty.

20   It is the prosecution's burden to prove each defendant's guilt beyond a reasonable doubt.

21   The Indictment before you contains nine counts, or charges.  Each count of the Indictment

22   relates to a different alleged crime.  Julio Marquez-Alejandro is charged in seven counts, and Luis

23   Blondet is charged in three counts.  In your deliberations and in reaching your verdict, you must bear

24   in mind that guilt is individual.  You must therefore consider each count and each defendant separately,

25   must weigh the evidence as to each defendant separately for each count in which that defendant is

1   charged, and return a verdict of guilty or not guilty for each defendant on each count.  Your verdict as

2   to each defendant must be determined separately with respect to him, solely on the evidence, or lack of

3   evidence, presented against him, without regard to the guilt or innocence of anyone else.

4        You will have a copy of the Indictment to consult in the jury room.  You will also have a

5   verdict form on which to record your verdict as to each defendant on each count in which he is

6   charged.  As to some counts, if you have found a defendant guilty, there will be additional

7   determinations for you to make.  The verdict form will set out clearly for you each of the

8   determinations that you will be called upon to make.

9

10   C.A.   Summary of the Indictment

11        Now, what are the charges in the Indictment?  If I were to ask you right now what the charges

12   are, you would say this case is about a gang, drugs, murders, guns, and bribery.  And that would be

13   correct, in general terms.  But the charges in the Indictment are more specific.

14        In particular, the Government must prove beyond a reasonable doubt the specific elements of

15   the specific charges that it has brought.  That is because this is a federal Indictment, and under our

16   federal system of Government, the United States Government, as opposed to a state or territory, only

17   has jurisdiction to deal with certain kinds of cases.  So, for example, although simply murdering

18   someone is a crime under the laws of Puerto Rico, it is not, by itself, a crime under United States

19   federal law.  Instead, the murders alleged in this Indictment are charged under specific federal statutes

20   designed to meet the specific requirements of federal jurisdiction.

21        I will now summarize for you the specific counts that you will be considering as you deliberate.

22   As I said, there are nine separate charges or counts in the Indictment.  In overview, the Indictment

23   charges that both defendants participated in the affairs of a criminal enterprise, which the Indictment

24   refers to as *La Organizacion de Narcotraficantes Unidos* — or La ONU for short.  The alleged

1    members of this criminal enterprise, including the defendants, are accused of engaging in crimes such

2    as murder, attempted murder, drug trafficking, and bribery in order to promote the enterprise, enrich its

3    members, and enhance their standing in it.

4          As I describe the charges, you'll notice that they overlap in certain ways.  For example, the

5    murder of Israel Crespo-Cotto is charged as a murder in aid of racketeering in Count Four of the

6    Indictment.  This murder is also charged as a murder in connection with a drug crime in Count Five

7    and a murder using a firearm in Count Six.  And the murder is also one of the crimes that you may

8    consider as a racketeering act under Count One, which charges the crime of racketeering conspiracy.  It

9    is perfectly legitimate for the Government to charge the same alleged conduct as violations of different

10   statutes.  But, in order for you to convict any defendant of any charge, you will have to consider, as I

11   have said before, whether the Government has met its burden of proving each of the elements of the

12   specific crime charged beyond a reasonable doubt.  You may find that the Government has proved all

13   of these charges, or none, or only some, depending on the evidence relevant to each charge.  So it will

14   be very important for you to follow the different elements of each particular crime.

15         With that, I will briefly summarize the nine counts.

16         Count One charges that, from at least in or about 2004 up to and including about 2016, Julio

17   Marquez-Alejandro and Luis Blondet, together with others, conspired together with each other to

18   conduct the affairs of a racketeering enterprise through a series of criminal acts alleged to constitute a

19   pattern of racketeering activity.  The Indictment refers to the racketeering enterprise as *La*

20   *Organizacion de Narcotraficantes Unidos*, or La ONU, which is alleged to have been an association of

21   individuals that existed for several purposes.  These included: (1) enriching its members and associates

22   through, among other things, the distribution of narcotics, including the trafficking of cocaine to New

23   York; (2) preserving and protecting the power of the enterprise and its members and associates through

24   murder, attempted murder, and other acts of violence and threats of violence; and (3) promoting and

3

1    enhancing the enterprise and the activities of its members and associates.

2        This charge, Count One, is perhaps the most complicated charge in the Indictment.  In order to

3    convict a defendant of this charge — which the lawyers may refer to as the "racketeering conspiracy"

4    or "RICO conspiracy" charge — the Government must prove beyond a reasonable doubt each of the

5    following four elements:

6            First, that the conspiracy existed — that is, that two or more persons agreed to conduct

7                or participate in the conduct of a racketeering enterprise;

8            Second, that the racketeering enterprise or its activities would have affected, or in fact

9                affected, interstate commerce;

10           Third, that the defendant you are considering knowingly and intentionally joined the

11               conspiracy; and

12           Fourth, that the defendant you are considering knowingly and intentionally agreed with

13               at least one other person that either he or a co-conspirator would participate in the

14               conduct of the affairs of the enterprise through a pattern of two or more criminal acts,

15               called "racketeering acts."  The Indictment lists a number of so-called racketeering acts

16               including murder and attempted murder, drug distribution, and bribery.

17   I will define each of these elements for you later, after the lawyers have made their arguments.

18       Counts Two and Three relate to the murder of Crystal Martinez-Ramirez on or about April 9,

19   2005.  Count Two charges Mr. Blondet with the murder of Ms. Martinez-Ramirez for the purpose of

20   maintaining or increasing his position in the La ONU racketeering enterprise.  Accordingly, in order to

21   convict Mr. Blondet of this crime, the Government must prove beyond a reasonable doubt not only that

22   Mr. Blondet is responsible for the murder of Ms. Martinez-Ramirez, but also that the purpose of the

23   murder was to maintain or increase his position in the specific criminal enterprise described in Count

24   One.  Count Three charges Mr. Blondet with using or carrying a gun during or in relation to a crime of

1    violence — namely, the murder in aid of racketeering charged in Count Two — resulting in the murder

2    of Crystal Martinez-Ramirez.

3         Counts Four, Five and Six relate to the murder of Israel Crespo-Cotto, on or about December

4    28, 2006.  Count Four charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing

5    the murder of Mr. Crespo-Cotto for the purpose of maintaining or increasing his position in the La

6    ONU racketeering enterprise.  Count Five charges Mr. Marquez-Alejandro with aiding and abetting or

7    willfully causing another person to kill Mr. Crespo-Cotto while engaged in a drug crime.  Count Six

8    charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing another person to use

9    and carry a gun during and in relation to a crime of violence or drug trafficking crime, resulting in the

10   murder of Israel Crespo-Cotto.

11        Counts Seven, Eight, and Nine relate to the murder of Carlos Barbosa on or about March 20,

12   2009.  Count Seven charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing the

13   murder of Mr. Barbosa for the purpose of maintaining and increasing his position in the La ONU

14   racketeering enterprise.  Count Eight charges Mr. Marquez-Alejandro with aiding and abetting or

15   willfully causing another person to kill Carlos Barbosa while engaged in a drug crime.  Count Nine

16   charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing another person to use

17   and carry a gun during and in relation to a crime of violence or drug trafficking crime, resulting in the

18   murder of Carlos Barbosa.

19        That is an overview of the nine charges in the Indictment, in fairly simple terms.  Once again, I

20   remind you that I will be giving you more detailed instructions later, in which I will further explain and

21   define the terms used in these different charges.  You are required to decide the case based on the

22   totality of the instructions, not just part of them.  My purpose in giving you this overview is just to

23   summarize the charges that you will be hearing about in the closing arguments of the parties, so as to

24   make it easier for you to follow the arguments.

D.  The Summations

Shortly, you will hear counsel's arguments.  The Government will go first, then you will hear from lawyers for each defendant, and then finally the Government will have a rebuttal.  The Government has the first and last word because the Government has the burden of proof.

Let me remind you, as I have told you before, that the arguments of the lawyers are not evidence in the case.  The evidence is what you heard and saw during the body of the trial.  If any lawyer tells you something about the evidence that differs from how you remember it, it is your recollection that counts, not theirs.  If either party states a legal principle differently from any that I state to you in my instructions, it is my instructions that you must follow. All the lawyers are going to do is make arguments about what they think the evidence proves or does not prove.  You should listen carefully to the arguments because they will be helpful in framing the issues in the case for your deliberations, but you should give them weight only insofar as they are consistent with the evidence, consistent with my instructions as to the law, and appeal to your common sense.

1    ~~INSTRUCTIONS AFTER SUMMATIONS~~

2

3    <u>**GENERAL INTRODUCTORY INSTRUCTIONS**</u>

4    Members of the jury, you have now heard all of the evidence in the case and the lawyers'

5    closing arguments.  It is my duty at this point to fully instruct you as to the law.  My instructions to you

6    will be in three parts.

7    <u>First</u>, I will give you general instructions — for example, about your role as the jury, what you

8    can and cannot consider in your deliberations, and the burden of proof.

9    <u>Second</u>, I will describe the law that you must apply to the facts as you find them to be

10   established by the evidence.

11   <u>Finally</u>, I will give you some instructions for your deliberations.

12   <u>I am going to read my instructions to you.  It is not my favorite way to communicate — and not</u>

13   <u>the most scintillating thing to listen to — but there is a need for precision, and it is important that I get</u>

14   <u>the words just right, and so that is why I will be reading.</u>

15   Because my instructions cover many points, I have given you a copy of my instructions

16   ~~(including the preliminary instructions I gave you before the lawyers' summations)~~ to follow along.

17   Please limit yourself to following along; that is, do *not* read ahead in the instructions.  If you find it

18   easier to listen and understand while you are following along with me, please do so.  If you would

19   prefer, you can just listen and not follow along.  Either way, you may take your copy of the

20   instructions with you into the jury room so you can consult it if you want to re-read any portion of the

21   charge to facilitate your deliberations.

22   ~~At this point, I ask you to just~~<u>For now,</u> listen carefully and try to concentrate on the substance

23   of ~~the charges I am describing~~<u>what I'm saying.  You should not single out any instruction as alone</u>

24   <u>stating the law; rather, you should consider my instructions as a whole when you retire to deliberate in</u>

1   the jury room.

2

3   A.  Role of the Court and the Jury

4        You, the members of the jury, are the sole and exclusive judges of the facts.  You must weigh

5   and consider the evidence without regard to sympathy, prejudice, or passion for or against any party.  It

6   is your duty to accept my instructions as to the law and to apply them to the facts as you determine

7   them.  Remember: If either party stated a legal principle differently from any that I state to you in my

8   instructions, it is my instructions that you must follow.

9   Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

10

11  B.  The Parties

12       In reaching your verdict, you must remember that all parties stand equal before a jury in the

13  courts of the United States.  The fact that the Government is a party and the prosecution is brought in

14  the name of the United States does not entitle the Government or its witnesses to any greater

15  consideration than that accorded to any other party.  By the same token, you must give it no less

16  deference.  The Government and the defendants, Julio Marquez-Alejandro and Luis Blondet, stand on

17  equal footing before you.

18       It would be improper for you to consider, in reaching your decision as to whether the

19  Government sustained its burden of proof, any personal feelings you may have about a defendant's

20  race, national origin, religious beliefs, sex, or age.  All persons are entitled to the same presumption of

21  innocence and the Government has the same burden of proof with respect to all persons.

22  Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

23

8

1   C.  Conduct of Counsel

2        The personalities and the conduct of counsel are not in any way at issue.  If you formed

3   opinions of any kind about any of the lawyers in the case, favorable or unfavorable, whether you

4   approved or disapproved of their behavior, those opinions should not enter into your deliberations.

5        In addition, remember that it is the duty of a lawyer to object when the other side offers

6   testimony or other evidence that the lawyer believes is not properly admissible.  Therefore, you should

7   draw no inference from the fact that there was an objection to any evidence.  Nor should you draw any

8   inference from the fact that I sustained or overruled an objection.  Simply because I have permitted

9   certain evidence to be introduced does not mean that I have decided on its importance or significance.

10  That is for you to decide.

11  *Adapted from United States v. Ansah, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).*

12

13  D.  Presumption of Innocence; Burden of Proof; Reasonable Doubt

14       The defendants have each pleaded not guilty to the charges against them.  As a result of those

15  pleas of not guilty, the burden is on the Government to prove each defendant's guilt beyond a

16  reasonable doubt.  This burden never shifts to a defendant for the simple reason that the law never

17  imposes upon a defendant in a criminal case the burden or duty of testifying, or calling any witness, or

18  locating or producing any evidence.

19       Furthermore, the law presumes a defendant to be innocent of the charges against him.  The

20  presumption of innocence was in each ~~defendants'~~defendant's favor when the trial began, continued in

21  his favor throughout the entire trial, remains with him even as I speak to you now, and persists in his

22  favor during the course of your deliberations in the jury room, unless and until the Government proves

23  beyond a reasonable doubt that he committed ~~one of~~ the charged ~~crimes~~crime you are considering.

9

1    The question that naturally arises is, "What is a reasonable doubt?"  A reasonable doubt is a

2    doubt based on your reason, your judgment, your experience, and your common sense.  It is a doubt

3    that a reasonable person has after carefully weighing all the evidence.  It is a doubt founded in reason

4    and arising out of the evidence in the case — or the lack of evidence.

5    Proof beyond a *reasonable* doubt does not mean proof beyond all *possible* doubt.  It is

6    practically impossible for a person to be absolutely and completely convinced of any disputed fact that,

7    by its very nature, cannot be proved with mathematical certainty.  The Government's burden is to

8    establish guilt beyond a *reasonable* doubt, not all *possible* doubt.

9    If, after a fair and impartial consideration of all the evidence, you can candidly and honestly say

10   that you are not satisfied with the guilt of the defendant, that you do not have an abiding belief of the

11   defendant's guilt — in other words, if you have such a doubt as would reasonably cause a prudent

12   person to hesitate in acting in matters of importance in his or her own affairs — then you have a

13   reasonable doubt, and in that circumstance it is your duty to acquit.

14   On the other hand, if, after a fair and impartial consideration of all the evidence, you can

15   candidly and honestly say that you do have an abiding belief of the defendant's guilt, such a belief as a

16   prudent person would be willing to act upon in important matters in the personal affairs of his or her

17   own life, then you have no reasonable doubt, and in that circumstance it is your duty to convict.

18   ~~Adapted from *United States v. Avenatti*, 19 Cr. 374 (JMF) (S.D.N.Y. 2022); *United States v. Ansah*,~~

19   ~~19 Cr. 752 (JMF) (S.D.N.Y. 2021).~~

20

21   E.  <u>Duty to Consider Each Defendant Separately</u>

22   The defendants — Julio Marquez-Alejandro and Luis Blondet — are on trial together.  In

23   reaching a verdict, however, you must bear in mind that guilt is individual in nature.  Your verdict

1    must be determined separately with respect to each defendant, based solely on the evidence, or lack of

2    evidence, presented against him, without regard to the guilt or innocence of anyone else.

3         In this regard, you must be careful not to find any defendant guilty merely by reason of

4    relationship or association with other persons.  The fact that one person may be guilty of an offense

5    does not mean that that person's friends, relatives, associates, or co-defendants, were also involved in

6    the crime.  You may, of course, consider those associations as part of the evidence in the case, and may

7    draw whatever inferences are reasonable from the fact of the associations together with all of the other

8    evidence.  In short, for each defendant, the question of guilt or innocence must be individually

9    considered and individually answered, and you may not find any defendant guilty unless the evidence

10    proves that defendant's guilt beyond a reasonable doubt.

11    ~~Adapted from *United States v. Lopez-Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014).~~

12

13    F.  <u>What Is and Is Not Evidence</u>

14         In determining the facts, you must rely upon your own recollections of the evidence.  The

15    evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits received into

16    evidence, and (3) any stipulations made by the parties.  Anything else is not evidence, and you are to

17    be guided solely by the evidence in this case.  For example, the questions posed to a witness are not

18    evidence: It is the witnesses' answers that are evidence, not the questions.  I remind you that even if

19    you understand Spanish, you may not rely on any testimony that was given in Spanish; the English

20    translation of any testimony that was given in Spanish is the evidence that you may consider during

21    your deliberations. In addition, exhibits marked for identification but not admitted by me are not

22    evidence.  As I told you during trial, nor are materials brought forth only to refresh a witness's

23    recollection.  Moreover, testimony that has been stricken or excluded by me is not evidence and may

24    not be considered by you in rendering your verdict.

1     Arguments by the advocates are also not evidence.  What you heard during the opening

2     statements and summations is merely intended to help you understand the evidence and reach your

3     verdict.  If your recollection of the facts differs from the parties' statements, you should rely on your

4     recollection.  If a lawyer made a statement during his or her opening or summation and you find that

5     there is no evidence to support the statement, you should disregard the statement.

6     Finally, any statements that I may have made during the trial or during my instructions do not

7     constitute evidence.  At times, I may have admonished a witness or directed a witness to be responsive

8     to questions or to keep his or her voice up or to speak into a microphone.  At times, I may have asked a

9     question myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify

10    the presentation of evidence and to bring out something that I thought might be unclear.  You should

11    draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any witness or

12    any party in the case, by reason of any comment, question, or instruction of mine.  The rulings I have

13    made during the trial and these instructions are no indication of my views of what your decision should

14    be.  Nor should you infer that I have any views as to the credibility of any witness, as to the weight of

15    the evidence, or as to how you should decide any issue that is before you.  That is entirely your role.

16    I will now explain in greater detail certain types of evidence:

17    *Adapted from United States v. Ansah, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).*

18

19    1.  Seized Evidence

20    You have heard testimony about evidence that was seized and about various searches, including

21    searches of electronic devices.  Evidence obtained from these searches was properly admitted in this

22    case and may be properly considered by you.  Indeed, such searches were entirely appropriate law

23    enforcement actions.  Whether you approve or disapprove of how the evidence was obtained should

24    not enter into your deliberations because I instruct you that the Government's use of the evidence was

1    lawful.  You must, therefore, regardless of your personal opinions, give this evidence full consideration

2    along with all the other evidence in the case in determining whether the Government has proved the

3    defendant's guilt beyond a reasonable doubt.  Once again, however, it is for you to decide what weight,

4    if any, to give to this evidence.

5    Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

6

7              2.   Recording and Transcripts of Recordings

8              Audio recordings of various telephone conversations, and transcripts of those recordings, have

9    been admitted into evidence.  Whether you approve or disapprove of the recording or interception of

10   those conversations may not enter your deliberations.  The recordings were made in a lawful manner,

11   and no one's rights were violated.  You may consider the recorded conversations, and the transcripts of

12   those recordings, as evidence.

13             With respect to the Spanish to English transcripts, the transcripts are evidence that you may

14   consider during deliberations.  I remind you that even if you understand Spanish, you should not rely

15   in any way on any knowledge you may have of the Spanish language that was spoken on the

16   recordings; your consideration of the transcripts should be based on the evidence introduced in the

17   trial.  Remember that the jury is the ultimate fact finder and, as with all the evidence, you may give the

18   transcripts such weight, if any, as you believe they deserve.

19   Adapted from *United States v. Lopez-Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014).

20

21             3.   Specific Investigative Techniques Not Required

22             During the trial, you may have heard testimony of witnesses and argument by counsel that the

23   Government did not utilize specific investigative techniques.  You may consider these facts, together

24   with all the other evidence, in deciding whether the Government has met its burden of proof.  But I

1   instruct you that there is no legal requirement that the Government use any specific techniques to

2   investigate or prove its case.  Whether you approve or disapprove of the law enforcement techniques

3   the Government elected to use, or whether you would have preferred they use different tactics, is not

4   the question.  Your concern, as I have said, is to determine, based solely on the evidence or lack of

5   evidence, whether the Government has proved each defendant's guilt beyond a reasonable doubt.

6   ~~Adapted from *United States v. Lopez-Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014).~~

7         4.   <u>Stipulations</u>

8   Stipulations were entered into relating to various facts in this case.  A stipulation is an

9   agreement between parties as to what certain facts were or what the testimony would be if certain

10   people testified before you.  You must accept as true what the stipulation is — that is, either that the

11   stipulated fact is true or that the person would have given the stipulated testimony had that person

12   testified.  In other words, the stipulations are the same for your purposes as the presentation of live

13   testimony.  You should consider the weight to be given such evidence just as you would any other

14   evidence.

15   ~~Adapted from *United States v. Avenatti*, 19 Cr. 374 (JMF) (S.D.N.Y. 2022); *see* Sand, *Modern*~~

16   ~~*Federal Jury Instructions - Criminal*, Instrs. 5-6, 5-7.~~

17

18         5.   <u>Limited Purpose Evidence</u>

19   If certain testimony or evidence was received for a limited purpose, you must follow the

20   limiting instructions I have given.

21   In particular, I remind you that, while you heard some evidence regarding crimes allegedly

22   committed by the defendants before the alleged creation of La ONU in or about 2004, they are not on

23   trial for committing these crimes.  That is, criminal conduct occurring before in or about 2004 cannot

24   be considered as part of the pattern of criminal conduct charged in Count One or as proof of the

14

1   charged enterprise.  You may not consider evidence of the defendants' conduct from before 2004 as a

2   substitute for proof that the defendants committed the charged crimes.  Nor may you consider such

3   evidence as proof that either defendant has a bad character or a propensity to commit crimes.  Instead,

4   you may only consider evidence of conduct occurring before in or about 2004 for other purposes, for

5   example as background of the alleged formation and existence of the La ONU enterprise, to understand

6   relationships between certain persons, and to understand prior bad acts of the witnesses who testified.

7   ~~I remind you as well that you may consider the evidence concerning Jose Victor Pellot~~

8   ~~Cardona's statements to the Puerto Rico Police Department in 2002 only for purposes of impeachment~~

9   ~~— that is, as prior inconsistent statements.  I will explain what that means more fully shortly.~~

10   In addition, you have heard evidence that each defendant has previously pleaded guilty to a

11   drug offense.  Each defendant's guilty plea was admitted as evidence only against that defendant and

12   you may consider such evidence only against that defendant.

13

14         6.  Redactions

15         Some of the exhibits admitted into evidence contain redactions of certain information.

16   "Redacted" means that part of the document or recording was taken or blacked out.  There is nothing

17   unusual or improper about such redactions.  You are to concern yourself only with the part of the

18   document that has been admitted into evidence.  You should not consider any possible reason why the

19   other part of it was not admitted into evidence.

20   ~~Adapted from *United States v. Berry*, No. 20 Cr. 84 (AJN) (S.D.N.Y. 2021).~~

21

22   G.  Direct and Circumstantial Evidence

23         There are two types of evidence that you may properly use in deciding whether the defendant

24   you are considering is guilty or not guilty of the crimes with which he is charged.

15

1       One type of evidence is called direct evidence.  Direct evidence of a fact in issue is presented

2    when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise

3    observed through the five senses.  The second type of evidence is circumstantial evidence.

4    Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other

5    facts.

6       There is a simple example of circumstantial evidence that is often used in this courthouse.

7    Assume that when you came into the courthouse this morning, the sun was shining and it was a nice

8    day outside.  Also assume that the courtroom shades were drawn and you could not look outside.

9    Assume further that as you were sitting here, someone walked in with an umbrella that was dripping

10    wet, and then, a few moments later, somebody else walked in with a raincoat that was also dripping

11    wet.

12       Now, because you could not look outside the courtroom and you could not see whether it was

13    raining, you would have no direct evidence of that fact.  But, on the combination of facts that I have

14    asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

15       That is all there is to circumstantial evidence.  You infer on the basis of your reason,

16    experience, and common sense from one established fact the existence or the nonexistence of some

17    other fact.

18       The matter of drawing inferences from facts in evidence is not a matter of guesswork or

19    speculation.  An inference is a logical, factual conclusion that you might reasonably draw from other

20    facts that have been proved.

21       Many material facts, such as a person's state of mind, are not easily proved by direct evidence.

22    Usually such facts are established by circumstantial evidence and the reasonable inferences you draw.

23    Circumstantial evidence may be given as much weight as direct evidence.  The law makes no

24    distinction between direct and circumstantial evidence.  The law simply requires that before convicting

1  a defendant, you must be satisfied of the defendant's guilt beyond a reasonable doubt, based on all of

2  the evidence in the case.

3  Adapted from *United States v. Avenatti*, 19 Cr. 374 (JMF) (S.D.N.Y. 2022).

4

5  H.  Inferences

6       During the trial you have heard the attorneys use the term "inference," and in their arguments

7  they have asked you to infer, on the basis of your reason, experience, and common sense, from one or

8  more established facts, the existence of some other fact.

9       There are times when different inferences may be drawn from facts, whether proved by direct

10  or circumstantial evidence.  The Government asks you to draw one set of inferences, while one or both

11  defendants ask you to draw another.  It is for you, and you alone, to decide what inferences you will

12  draw.

13       Here again, let me remind you that, whether based on direct or circumstantial evidence, or on

14  the logical, reasonable inferences drawn from such evidence, you must be satisfied of the guilt of the

15  defendant beyond a reasonable doubt before you may convict.

16  Adapted from Sand, *Modern Federal Jury Instructions-Criminal,* Instr. 6-1.

17

18  I.  Consciousness of Guilt from Intimidation of a Witness

19       You have heard evidence that the Government argues shows that Mr. Blondet attempted to

20  intimidate or coerce a witness in this case, Harold Figueroa Sanchez.  Mr. Blondet is not on trial for

21  that conduct and you may not consider the evidence as a substitute for proof of guilt in this case.

22       Nevertheless, if you find that Mr. Blondet did attempt to coerce or intimidate a witness in this

23  case, you may, but are not required to, infer that Mr. Blondet believed that he was guilty of the crime

1   or crimes about which he thought Mr. Figueroa Sanchez would testify.  However, consciousness of

2   guilt alone is not sufficient proof beyond a reasonable doubt.

3         Whether the testimony you have heard shows that Mr. Blondet did, in fact, attempt to

4   intimidate or coerce a witness; if so, whether that shows he believed he was guilty of any crime or

5   crimes for which he is now charged; and the significance, if any, to be given to such evidence, are

6   matters for you, the jury, to decide.

7   Adapted from Sand, *Modern Federal Jury Instructions-Criminal,* Instr. 6-16; *see United States v.*

8   *Tang Yuk,* 885 F.3d 57, 81-82 (2d Cir. 2018).

9

10  J.   Credibility of Witnesses

11        How do you evaluate the credibility or believability of the witnesses?  The answer is that you

12  use your common sense.  There is no magic formula by which you can evaluate testimony.  You may

13  use the same tests here that you use in your everyday life when evaluating statements made by others

14  to you.  You may ask yourselves: Did the witness impress you as open, honest, and candid?  How

15  responsive was the witness to the questions asked on direct examination and on cross-examination?

16        If you find that a witness intentionally told a falsehood, that is always a matter of importance

17  you should weigh carefully.  On the other hand, a witness may be inaccurate, contradictory, or even

18  untruthful in some respects and entirely believable and truthful in other respects.  It is for you to

19  determine whether such inconsistencies are significant or inconsequential, and whether to accept or

20  reject all of the testimony of any witness, or to accept or reject only portions.

21        You are not required to accept testimony even though the testimony is uncontradicted and the

22  witness's testimony is not challenged.  You may reject it because of the witness's bearing or demeanor,

23  or because of the inherent improbability of the testimony, or for other reasons sufficient for you to

24  conclude that the testimony is not worthy of belief.

1    I will now explain in greater detail certain considerations for evaluating witness credibility.

2    ~~Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).~~

3

4        1.  Bias of Witnesses

5    In deciding whether to believe a witness, you should note any evidence of hostility or

6    ~~affection~~preference that the witnesses may have toward one or more of the parties.  In particular, you

7    should consider any evidence of resentment or anger that a government witness may have towards a

8    defendant.  Evidence that a witness is biased, prejudiced, or hostile toward a defendant requires you to

9    view the witness' testimony with caution, to weigh it with care, and subject it to close and searching

10   scrutiny.

11   Likewise, you should take into account any evidence that a witness may benefit in some way

12   from the outcome of the case.  Such an interest in the outcome can create a motive to testify falsely and

13   may sway a witness in a way that advances his or her own interests.

14   Keep in mind, though, that it does not automatically follow that testimony given by an

15   interested witness is to be disbelieved.  There are many people who, no matter what their interest in the

16   outcome of the case may be, would not testify falsely.  It is for you to decide, based on your own

17   perceptions and common sense, whether the possible interest of any witness has, intentionally or

18   otherwise, colored or distorted his or her testimony.

19   ~~Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021); *United States v. Lopez-~~

20   ~~Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); *see also* Sand, *Modern Federal Jury Instructions -~~

21   ~~Criminal*, Instrs. 7-1, 7-2, 7-3.~~

22

23       2.  Accomplice or Cooperator Testimony

24   You have heard from a number of witnesses who testified that they were involved in planning

1    and carrying out some of the crimes charged in the Indictment.  You have heard a great deal in

2    counsel's summations about these so-called accomplice or "cooperating" witnesses and whether or not

3    you should believe them.

4          Experience will tell you that the Government sometimes must rely on the testimony of

5    witnesses who admit to participating in the alleged crimes at issue.  The Government must take its

6    witnesses as it finds them and sometimes must use such testimony in a criminal prosecution, because

7    otherwise it would be difficult or impossible to detect and prosecute wrongdoers.  For these very

8    reasons, the law allows the use of testimony from cooperating witnesses.  Indeed, under federal law,

9    the testimony of a cooperating witness may be enough in itself for conviction, if the jury believes that

10   the testimony establishes guilt beyond a reasonable doubt.

11         However, because of the interest a cooperator may have in testifying, you should scrutinize his

12   testimony with special care and caution.  You may consider the fact that a witness is a cooperator as

13   bearing upon his credibility.  Like the testimony of any other witness, accomplice witness testimony

14   should be given such weight as it deserves in light of the facts and circumstances before you, taking

15   into account the witness's demeanor and candor, the strength and accuracy of the witness's

16   recollection, his background, and the extent to which his testimony is or is not corroborated by other

17   evidence in the case.  You may consider whether a cooperating witness has an interest in the outcome

18   of the case, and if so, whether that interest has affected his testimony.

19         You heard testimony about agreements between the Government and each of the cooperating

20   witnesses.  I must caution you that it is no concern of yours why the Government made an agreement

21   with a particular witness.  You may, however, consider the effect, if any, that the existence or terms of

22   the agreement have on the witness's credibility.  A witness who hopes to obtain leniency may have a

23   motive to testify as he believes the Government wishes, or he may feel that it is in his interest to

24   incriminate others.  As with any witness, your responsibility is to determine whether any such motive

1    or intent has influenced the witness's testimony and whether the witness has told the truth, in whole or

2    in part.

3          In sum, in evaluating the testimony of a cooperating witness, you should ask yourselves the

4    following questions:  Would the accomplice benefit more by lying or by telling the truth?  Was any

5    part of his testimony potentially made up because he believed or hoped that he would receive favorable

6    treatment from the Government by testifying falsely or as he believed the Government wanted?  Or did

7    he believe that his interests would be best served by testifying truthfully?  If you believe that the

8    witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie,

9    or was it one that would cause him to tell the truth?  Did this motivation color his testimony?  It does

10   not follow, however, that simply because a person has admitted to participating in one or more crimes,

11   he is incapable of giving a truthful version of what happened.

12         If you think that the testimony was false, you should reject it.  However, if, after a cautious and

13   careful examination of an accomplice witness's testimony, you are satisfied that the witness told the

14   truth, you may accept his testimony as credible and act upon it accordingly.

15         As with any witness, let me emphasize that the issue of credibility need not be decided in an

16   all-or-nothing fashion.  If you find that a witness has been untruthful in some respect, you may, but are

17   not required to, reject the witness's testimony in its entirety.  Even if you find that a witness testified

18   falsely in one part, you still may accept his testimony in other parts.  ~~That~~How much of a witness's

19   testimony to accept, if any, is a determination entirely for you, the jury.

20         Finally, you have heard testimony from witnesses who have pleaded guilty to certain charges

21   arising out of the same facts as this case.  I must emphasize that you may not draw any conclusions or

22   inferences of any kind about the guilt of the defendants on trial from the fact that one or more

23   prosecution witnesses pleaded guilty to similar charges.  The decisions of those witnesses to plead

24   guilty were personal decisions those witnesses made about their own guilt.  It may not be used by you

21

1   in any way as evidence against or unfavorable to the defendants.

2   Adapted from *United States v. Lopez-Cabrera,* S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); Sand,

3   *Modern Federal Jury Instructions – Criminal,* Instr. 7-5; *see United States v. Vaughn,* 430 F.3d

4   518, 523-34 (2d Cir. 2005).

5

6          3.   Witness Using or Addicted to Drugs

7          There has been evidence introduced at the trial that the Government called as a witness a

8   person who was using or addicted to drugs when events he observed took place or who was using

9   drugs when he made or heard certain statements.  I instruct you that there is nothing improper about

10  calling such a witness to testify about events within his personal knowledge.

11         On the other hand, his testimony must be examined with greater scrutiny than the testimony of

12  any other witness.  The testimony of a witness who was under the influence of drugs at the time of

13  events about which he is testifying may be less believable because of the effects the drugs may have on

14  his ability to perceive or relate the events in question.

15         If you decide to accept his testimony, after considering it in light of all the evidence in this

16  case, then you may give it whatever weight, if any, you find it deserves.

17  Adapted from Sand, *Modern Federal Jury Instructions – Criminal,* Instr. 7-9.1.

18

19         4.   Prior Inconsistent or Consistent Statements

20         You have heard evidence that, at some earlier time, witnesses have said something that counsel

21  argues is inconsistent with their trial testimony.  As I noted a few minutes ago, that includes evidence

22  of Jose Victor Pellot Cardona's statements to the Puerto Rico Police Department in 2002.

23         Evidence of a prior inconsistent statement was placed before you not because it is itself

24  evidence of the guilt or innocence of the defendants, but for the purpose of helping you decide whether

1   to believe the trial testimony of a witness who may have contradicted himself.  If you find that the

2   witness made an earlier statement that conflicts with the witness's trial testimony, you may consider

3   that fact in deciding how much of the witness's trial testimony, if any, to believe.

4          In making this determination, you may consider whether the witness purposely made a false

5   statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact,

6   or whether it had to do with a small detail; whether the witness had an explanation for the

7   inconsistency and, if so, whether that explanation appealed to your common sense.

8          It is exclusively your duty, based upon all the evidence and your own good judgment, to

9   determine whether the prior statement was inconsistent and, if so, how much weight, if any, to give to

10   the inconsistent statement in determining whether to believe all, or part of, the witness testimony.

11          You have also heard evidence that certain witnesses made earlier statements that were

12   consistent with their trial testimony.  Such statements were admitted not as independent evidence of

13   guilt or innocence, but solely for whatever light they may shed on the witness's credibility.  If you find

14   that a witness had a motive to testify as he did, but also that he or she told the same story before he had

15   that motive, you may take that into account in deciding whether the witness's interest or motive

16   colored his or her testimony.

17   ~~Adapted from *United States v. Lopez-Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); Sand,~~

18   ~~*Modern Federal Jury Instructions – Criminal*, Instr. 7-19.~~

19

20          5.  <u>Law Enforcement and Government Witnesses</u>

21          You have heard testimony from a number of law enforcement officers.  The fact that a witness

22   may be employed as a law enforcement officer or government employee does not mean that his or her

23   testimony is necessarily deserving of more or less consideration, or greater or lesser weight, than that

24   of any other witness.  Such testimony should not be regarded as more or less truthful or accurate than

1  that of any other witness simply based on the witness's employment.  It is your decision, after

2  reviewing all the evidence, whether to accept the testimony of any law enforcement witness or

3  government witness, as it is with every other type of witness, and to give to that testimony the weight,

4  if any, you find it deserves.

5  *Adapted from United States v. Ansah, 19 Cr. 752 (JMF) (S.D.N.Y. 2021); Sand, Modern*

6  *Federal Jury Instructions - Criminal, Instr. 7-16.*

7

8      6.  Expert Witnesses

9      You have heard testimony from several expert witnesses. As I previously explained, an expert

10  witness is someone who, by education or experience, has acquired learning or experience in a

11  specialized area of knowledge.  Such a witness is permitted to express his or her opinions on matters

12  about which he or she has specialized knowledge and training.  The parties present expert testimony to

13  you on the theory that someone who is experienced in the field can assist you in understanding the

14  evidence or in reaching an independent decision on the facts.

15      Your role in judging credibility applies to experts as well as other witnesses.  In weighing an

16  expert's opinion, you may consider the expert's qualifications, education, and reasons for testifying, as

17  well as all of the other considerations that ordinarily apply, including all the other evidence in the case.

18  If you find the opinion of an expert is based on sufficient data, education, and experience, and the other

19  evidence does not give you reason to doubt his or her conclusions, you would be justified in placing

20  reliance on his or her testimony.  However, you should not accept witness testimony simply because

21  the witness is an expert.  The determination of the facts in this case rests solely with you.

22  *Adapted from United States v. Lopez-Cabrera, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); Sand,*

23  *Modern Federal Jury Instructions - Criminal, Instr. 7-21.*

24

1        7.   Preparation of Witnesses; Joint Defense Meetings

2        You have heard evidence during the trial that witnesses have discussed the facts of the case and

3   their testimony with their own lawyers or with Government lawyers before they appeared in court.

4   Although you may consider these facts when you are evaluating a witness's credibility, there is nothing

5   either unusual or inherently improper about a witness meeting with lawyers before testifying so that

6   the witness can be aware of the subjects he or she will be questioned about, focus on the subjects, and

7   have the opportunity to review relevant exhibits before being questioned about them.  Such

8   consultation helps conserve your time and the Court's time.  In fact, it would be unusual for a lawyer

9   to call a witness without such consultation.

10        In addition, you have heard evidence that certain witnesses and their lawyers may have met

11   together with other defendants and their lawyers in what is called a joint defense meeting.  I instruct

12   you that there is nothing improper about such joint defense meetings and that they are common in

13   cases with multiple defendants because they allow defendants and their lawyers to plan for trial.

14        As always, the weight you give to the fact or the nature of these issues and what inferences you

15   draw from them are matters completely within your discretion.

16   Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

17

18   K.  Uncalled Witnesses

19        There are people whose names you have heard during the course of the trial but who did not

20   appear here to testify.  I instruct you that each party had an equal opportunity, or lack of opportunity, to

21   call any of these witnesses.  Therefore, you should not draw any inferences or reach any conclusions as

22   to what they would have testified to had they been called.  Their absence should not affect your

23   judgment in any way.

1    You should, however, remember my instruction that the law does not impose on a defendant in

2    a criminal case the burden or duty of calling any witness or producing any evidence.  The burden of

3    proof remains at all times with the Government.

4    Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021); Sand, *Modern Federal*

5    *Jury Instructions-Criminal,* Instr. 6-7.

6

7    L.   Number of Witnesses and Uncontradicted Testimony

8    The fact that the Government called more witnesses or introduced more evidence does not

9    mean that you should necessarily find the facts in its favor.  By the same token, you do not have to

10   accept the testimony of any witness who has not been contradicted or impeached, if you find the

11   witness to be not credible.  You must decide which witnesses to believe and determine which facts are

12   true.  To do this, you must look at all the evidence or lack of evidence, drawing upon your own

13   common sense and personal experience.

14   Again, you should also keep in mind that the burden of proof is always on the Government.

15   The defendants are not required to call any witnesses or offer any evidence, since they are presumed to

16   be innocent.  On the other hand, the Government is not required to prove each element of the offense

17   by any particular number of witnesses.  The testimony of a single witness may be enough to convince

18   you beyond a reasonable doubt of the existence of the elements of a charged offense — if you believe

19   that the witness has truthfully and accurately related what he or she has told you.  The testimony of a

20   single witness may also be enough to convince you that reasonable doubt exists, in which case you

21   must find the defendant you are considering not guilty.

22   Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021); Sand, *Modern Federal*

23   *Jury Instructions-Criminal,* Instr. 4-3

24

1    M. <u>Evidence of Custody</u>

2         You have heard evidence that each of the defendants was in custody at one point or another.

3    You may consider this evidence as evidence of the defendants' whereabouts at these points in time.

4    However, you may not consider a defendant's being in custody as evidence that the defendant you are

5    considering is of bad character or has a propensity to commit crime.

6         Adapted from *United States v. Lopez-Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014).

7

8    N. <u>Persons Not on Trial</u>

9         During the course of the trial, you have heard the names of other individuals mentioned in

10   connection with this case.  Some of these other individuals have been mentioned in connection with

11   what the Government alleges was illegal activity, including as members of the enterprise known as La

12   ONU.  You may not draw any inference, favorable or unfavorable, toward the Government or the

13   defendants from the fact that any person is not on trial here.  Nor may you speculate as to what became

14   of them and why.  These matters are wholly outside your concern and have no bearing on your

15   function as jurors in deciding the case before you.

16   Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021); *United States v. Lopez-*

17   *Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); Sand, *Modern Federal Jury Instructions -*

18   *Criminal*, Instr. 3-4.

19

20   O. <u>A Defendant's Right Not to Testify</u>

21        The defendants, Julio Marquez-Alejandro and Luis Blondet, did not testify in this trial.  Under

22   our Constitution, a defendant is presumed innocent and has no obligation to testify or to present any

23   other evidence because, as I have told you, it is the Government's burden to prove a defendant guilty

1    beyond a reasonable doubt.  That burden remains on the Government throughout the entire trial and

2    never shifts to a defendant.  A defendant is never required to prove that he is innocent.

3        You may not attach any significance to the fact that the defendants did not testify.  No adverse

4    inference against a defendant may be drawn by you because the defendant did not take the witness

5    stand.  You may not consider this in any way in your deliberations in the jury room.

6    ~~Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).~~

7                        \*                    \*                    \*

8        That concludes my introductory instructions.  Let me now turn to the charges.

9

10

11                    **INSTRUCTIONS ABOUT THE CHARGED CRIMES**

12

13   A.  The Indictment

14        The two defendants, Julio Marquez-Alejandro and Luis Blondet, are formally charged in an

15   Indictment.  As I instructed you at the outset of this trial, the Indictment is not evidence.  It is simply

16   an accusation, a statement of the charges made against the defendants.  It gives the defendants notice

17   of the charges against them, and it informs the court and the public of the nature of the accusation.  But

18   it is not evidence, and it does not prove or even indicate guilt.  It does not create any presumption or

19   permit any inference that the defendants are guilty.  As a result, you are to give it no weight in deciding

20   the defendants' guilt or lack of guilt.  What matters is the evidence you heard at this trial.  Indeed, as I

21   have previously noted, the defendants are presumed innocent, and each has entered a plea of not guilty.

22   It is the prosecution's burden to prove each defendant's guilt beyond a reasonable doubt.

23        The Indictment before you contains nine counts, or charges.  Each count of the Indictment

24   relates to a different alleged crime.  Julio Marquez-Alejandro is charged in seven counts, and Luis

1  Blondet is charged in three counts.  In your deliberations and in reaching your verdict, you must bear

2  in mind that guilt is individual.  You must therefore consider each count and each defendant separately,

3  must weigh the evidence as to each defendant separately for each count in which that defendant is

4  charged, and return a verdict of guilty or not guilty for each defendant on each count.  Your verdict as

5  to each defendant must be determined separately with respect to him, solely on the evidence, or lack of

6  evidence, presented against him, without regard to the guilt or innocence of anyone else.

7

8  B.  Summary of the Indictment

9       Now, what are the charges in the Indictment?  If I were to ask you right now what the charges

10  are, you would say this case is about a gang, drugs, murders, guns, and bribery.  And that would be

11  correct, in general terms.  But the charges in the Indictment are more specific.

12       In particular, the Government must prove beyond a reasonable doubt the specific elements of

13  the specific charges that it has brought.  That is because this is a federal Indictment, and under our

14  federal system of Government, the United States Government, as opposed to a state or territory, only

15  has jurisdiction to deal with certain kinds of cases.  So, for example, although simply murdering

16  someone is a crime under the laws of Puerto Rico, it is not, by itself, a crime under United States

17  federal law.  Instead, the murders alleged in this Indictment are charged under specific federal statutes

18  designed to meet the specific requirements of federal jurisdiction.

19       Count One charges both defendants with conspiracy in the affairs of a criminal enterprise,

20  which the Indictment refers to as *La Organizacion de Narcotraficantes Unidos* — or La ONU for

21  short.  The alleged members of this criminal enterprise, including the defendants, are accused of

22  engaging in crimes such as murder, attempted murder, drug trafficking, and bribery in order to promote

23  the enterprise, enrich its members, and enhance their standing in it.

24       Count One charges that, from at least in or about 2004 up to and including about 2016, the

1    defendants, together with others, conspired together and with each other to conduct the affairs of a

2    racketeering enterprise through a series of criminal acts alleged to constitute a pattern of racketeering

3    activity.  The Indictment refers to the racketeering enterprise as *La Organizacion de Narcotraficantes*

4    *Unidos*, or La ONU, which is alleged to have been an association of individuals formed in or about

5    2004 and that existed for several purposes.  These included: (1) enriching its members and associates

6    through, among other things, the distribution of narcotics, including the trafficking of cocaine to New

7    York; (2) preserving and protecting the power of the enterprise and its members and associates through

8    murder, attempted murder, and other acts of violence and threats of violence; and (3) promoting and

9    enhancing the enterprise and the activities of its members and associates.

10         Counts Two and Three relate to the murder of Crystal Martinez-Ramirez on or about April 9,

11   2005.  Count Two charges Mr. Blondet with the murder of Ms. Martinez-Ramirez for the purpose of

12   maintaining or increasing his position in the La ONU racketeering enterprise.

13         Count Three charges Mr. Blondet with using or carrying a gun during or in relation to a crime

14   of violence — namely, the murder in aid of racketeering charged in Count Two — resulting in the

15   murder of Crystal Martinez-Ramirez.

16         Counts Four, Five and Six relate to the murder of Israel Crespo-Cotto on or about December

17   28, 2006.  Count Four charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing

18   the murder of Mr. Crespo-Cotto for the purpose of maintaining or increasing his position in the La

19   ONU racketeering enterprise.

20         Count Five charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing

21   another person to kill Mr. Crespo-Cotto while engaged in a drug crime.

22         And Count Six charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing

23   another person to use and carry a gun during and in relation to a crime of violence or drug trafficking

24   crime, resulting in the murder of Israel Crespo-Cotto.

1       Finally, Counts Seven, Eight, and Nine relate to the murder of Carlos Barbosa on or about

2    March 20, 2009.  Count Seven charges Mr. Marquez-Alejandro with aiding and abetting or willfully

3    causing the murder of Mr. Barbosa for the purpose of maintaining and increasing his position in the La

4    ONU racketeering enterprise.

5       Count Eight charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing

6    another person to kill Carlos Barbosa while engaged in a drug crime.

7       And Count Nine charges Mr. Marquez-Alejandro with aiding and abetting or willfully causing

8    another person to use and carry a gun during and in relation to a crime of violence or drug trafficking

9    crime, resulting in the murder of Carlos Barbosa.

10       You'll notice that the various charges overlap in certain ways.  For example, the murder of

11    Israel Crespo-Cotto is charged as a murder in aid of racketeering in Count Four of the Indictment, as a

12    murder in connection with a drug crime in Count Five, and as a murder using a firearm in Count Six.

13    And the murder is also one of the crimes that you may consider as a racketeering act under Count One,

14    which charges the crime of racketeering conspiracy.  It is perfectly legitimate for the Government to

15    charge the same alleged conduct as violations of different statutes.  But, in order for you to convict any

16    defendant of any charge, you will have to consider, as I have said before, whether the Government has

17    met its burden of proving each of the elements of the specific crime charged beyond a reasonable

18    doubt.  You may find that the Government has proved all of these charges, or none, or only some,

19    depending on the evidence relevant to each charge.  So it will be very important for you to follow the

20    different elements of each particular crime.

21       As I told you before, your job will be to determine whether the Government has proved beyond

22    a reasonable doubt that the defendants, Julio Marquez-Alejandro and Luis Blondet, are guilty of any or

23    all of the charges contained in the Indictment.

1      I remind you again that the Indictment is simply an accusation, a statement of the charges made

2   against the defendants.  The defendants are presumed innocent of the charges.  It is your responsibility

3   to decide whether the Government has successfully overcome that presumption by proving each

4   element of each charge beyond a reasonable doubt.  Each count charges one or both defendants with a

5   different crime.  You must consider each count and each defendant separately and return a separate

6   verdict of guilty or not guilty for each defendant on each count in which he is charged.

7      I have already summarized the nine counts contained in the Indictment, and you have now

8   heard extensive arguments about those charges, so I will not repeat that general summary now.

9

10  B.A.    Aiding and Abetting

11     Before I move on to the counts of the Indictment, I want to instruct you on the concept of

12  aiding and abetting, including willfully causing.  The defendants are charged with committing certain

13  criminal acts but are also charged with aiding and abetting or willfully causing the commission of

14  those acts by another person.    It is not necessary for the Government to show that the defendant you

15  are considering himself physically committed a crime in order for you to find him guilty.  You may,

16  under certain circumstances, find the defendant you are considering guilty of the crime as an aider and

17  abettor or as someone who willfully caused someone else to commit the crime.

18     Aiding and abetting liability is its own theory of criminal liability.  In effect, it is a theory of

19  liability that permits a person to be convicted of a specified crime if the person, while not himself

20  committing the crime, assisted another person or persons in committing the crime or willfully caused

21  another person to commit the crime.

22     Under the federal aiding and abetting statute, whoever "aids, abets, counsels, commands,

23  induces or procures" the commission of an offense is punishable as a principal.  You should give these

24  words their ordinary meaning.  A person "aids or abets" a crime if he knowingly does some act for the

32

1   purpose of aiding or encouraging the commission of that crime, with the intention of causing the crime

2   charged to be committed.  To "counsel" means to give advice or recommend.  To "induce" means to

3   lead or move by persuasion or influence as to some action or state of mind. To "procure" means to

4   bring about by unscrupulous or indirect means.  To "cause" means to bring something about, to effect

5   something.

6       A person who aids and abets another to commit an offense is just as guilty of that offense as if

7   he had committed it himself.  Therefore, if you find that the Government has proved beyond a

8   reasonable doubt that another person actually committed a crime, and that the defendant you are

9   considering aided and abetted that person in the commission of the offense, then you may find the

10  defendant you are considering guilty of the crime.

11      As you can see, the first requirement is that the crime charged was actually committed by

12  someone.  Obviously, no one can be convicted of aiding and abetting a crime if no crime was

13  committed.  But if you do find that a crime was committed, then you must consider whether the

14  defendant you are considering aided or abetted the commission of the crime.

15      In order to aid and abet another to commit a crime, it is necessary that the defendant you are

16  considering willfully and knowingly associated himself in some way with the crime and that he

17  willfully and knowingly sought by some act to help make the crime succeed.  To establish that the

18  defendant you are considering participated in the commission of the crime, the Government must

19  prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of

20  bringing about that crime.

21      The mere presence of a person where a crime is being committed, even coupled with

22  knowledge by that person that a crime is being committed, or merely associating with others who were

23  committing a crime is not sufficient to establish aiding and abetting.  An aider and abettor must have

1   ~~some interest in the criminal venture and must take some action to assist or encourage the commission~~

2   ~~of the crime.~~

3   ~~To determine whether a defendant aided and abetted the commission of a crime with which he~~

4   ~~is charged, ask yourself these questions:~~

5   ~~1.  Did he participate in the crime charged as something he wished to bring about?~~

6   ~~2.1.Did he associate himself with the criminal venture knowingly and willfully?~~

7   ~~3.1.Did he seek by his actions to make the criminal venture succeed?~~

8   ~~If he did, then that defendant is an aider and abettor and therefore guilty of the offense.  If your~~

9   ~~answer to any one of these questions in "no," then you must find that defendant not guilty.~~

10  ~~Similarly, a defendant can be found guilty even if he did not himself commit the crime if he~~

11  ~~willfully caused another person to commit the crime.  In considering whether a defendant willfully~~

12  ~~caused another person to commit a crime, ask yourself these questions:~~

13  ~~1.  Did the defendant intend for someone to commit the crime?~~

14  ~~2.1.Did the defendant intentionally instruct or cause another person to commit the criminal~~

15  ~~act?~~

16  ~~If you are persuaded beyond a reasonable doubt that the answer to both of these questions is~~

17  ~~"yes," then the defendant you are considering is guilty of the crime charged just as if he himself had~~

18  ~~actually committed it.  If not, you must find him not guilty under this theory.~~

19  ~~Adapted from Sand, *Modern Federal Jury Instructions - Criminal,* Instrs. 11-1, 11-2, and 11-3;~~

20  ~~*United States v. Berry,* 20 Cr. 84 (AJN) (S.D.N.Y. 2021); *United States v. Merlino,* No. S44 16 Cr.~~

21  ~~522 (RJS) (S.D.N.Y. 2018); *see also Rosemond v. United States,* 572 U.S. 65 (2014); *United States v.*~~

22  ~~*Hamilton,* 334 F.3d 170 (2d Cir. 2003).~~

23  With that, I will turn to the elements of each count in turn.

24

1    C.  <u>Racketeering Conspiracy</u>

2           Count One charges each defendant with conspiring with others to conduct and participate in the

3    affairs of an enterprise through a pattern of racketeering activity.  Most of the charges in the

4    Indictment, and indeed most crimes, are straightforward in the sense that they involve particular acts,

5    committed at one moment in time.  But these racketeering crimes ~~are more complicated in that they~~ do

6    not involve the commission of a single act at a single time.  Instead, these crimes concern a conspiracy

7    to participate in an organization over a period of time by committing a pattern of criminal acts.  Let me

8    explain these charges.

9           Count One alleges a conspiracy to violate the "RICO" statute, which stands for "Racketeering

10   Influenced and Corrupt Organizations."  The statute makes it a crime for a person to participate in the

11   conduct of an enterprise's affairs through a pattern of certain violations of law known as "racketeering

12   acts."  In this case, each defendant is charged with participating in a conspiracy to violate the RICO

13   statute from at least in or about 2004 through and including in or about 2016.

14          In order to convict a given defendant of a conspiracy to violate the RICO statute, the

15   Government must prove beyond a reasonable doubt each of the following four elements:

16                 <u>First</u>, that the conspiracy existed — that is, that two or more persons agreed to

17          conduct or participate in the conduct of a racketeering enterprise;

18                 <u>Second</u>, that the racketeering enterprise or its activities would have affected, or in

19          fact affected, interstate commerce;

20                 <u>Third</u>, that the defendant you are considering knowingly and intentionally joined the

21          conspiracy; and

22                 <u>Fourth</u>, that the defendant you are considering knowingly and intentionally agreed

23          with at least one other person that either he or a co-conspirator would participate in the

35

1    conduct of the affairs of the enterprise through a pattern of two or more criminal acts, called

2       "racketeering acts."

3    It is important to realize that the word "racketeering," as used in the RICO statute, is a purely

4    technical term that is defined specifically for the statute.  You should put out of your mind whatever

5    meaning the term may have for you in ordinary English.  What matters is not whether the defendant

6    you are considering seems to you to be a "racketeer" in any ordinary sense of the word.  All that

7    matters is whether the Government has proved beyond a reasonable doubt each of the elements that

8    make up a violation of this statute, as I will define them for you.

9    Adapted from *United States v. Lopez-Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); Sand,

10   *Modern Federal Jury Instructions-Criminal,* Instrs. 52-26, 27, 28; *see also United States v. Applins,*

11   637 F.3d 59, 75-76 (2d Cir. 2011); *United States v. Zemlyansky,* 908 F.3d 1, 11 (2d Cir. 2018).

12

13       1.   First Element: Existence of the Conspiracy

14   The first element the Government must prove beyond a reasonable doubt with respect to Count

15   One is the existence of a conspiracy that had as its object the illegal purpose charged in the Indictment.

16   A conspiracy is a kind of criminal partnership — a combination or agreement among two or

17   more persons to join together to accomplish some unlawful purpose.  A conspiracy to violate a federal

18   law is a separate and distinct offense from the actual violation of such law, which is the so-called

19   "substantive crime."  A defendant's guilt does not depend on the ultimate success of the conspiracy.

20   The conspiracy itself is a separate crime, even if the conspiracy to commit the underlying substantive

21   crime was not successful.

22   To establish the existence of a conspiracy, the Government is not required to show that two or

23   more people sat around a table and entered into a formal contract or even expressed their agreement

24   orally.  It is sufficient if two or more persons, in any manner, whether they say so directly or not, come

1   to a common understanding to violate the law.  Express language or specific words are not required to

2   indicate agreement to or membership in a conspiracy.  If you find beyond a reasonable doubt that two

3   or more persons came to an understanding, express or implied, to violate the law and to accomplish an

4   unlawful plan, then the Government will have sustained its burden of proof as to this element.

5         In determining whether there has been an unlawful agreement, you may consider acts and

6   conduct of the alleged co-conspirators that were done to carry out an apparent criminal purpose.  The

7   adage "actions speak louder than words" is applicable here.  ~~Often~~Sometimes the only evidence that is

8   available with respect to the existence of a conspiracy is that of disconnected acts and conduct on the

9   part of the individual conspirators, when taken together and considered as a whole.  Different

10   conspirators may undertake different acts at different times.  However, these acts or conduct may

11   warrant the inference that a conspiracy existed.

12         The "object" of a conspiracy is the illegal purpose that the conspirators agree or hope to

13   achieve.  In this case, the object of the conspiracy is to violate the RICO statute, that is, to conduct or

14   participate in the conduct of the affairs of an enterprise whose activities would affect interstate

15   commerce through a pattern of racketeering activity.  Let me define these terms for you.

16         What is an "enterprise"?  Under the racketeering statute, an enterprise means a group of people

17   who have associated together for a common purpose; have an ongoing organization, either formal or

18   informal; and have personnel who function as a continuing unit.  The enterprise does not have to have

19   a particular name or, for that matter, have any name at all.  Nor must it be registered or licensed as an

20   enterprise.  It does not have to be a commonly recognized legal entity, such as a corporation, a trade

21   union, a partnership, or the like.  An enterprise may be a group of people who have informally

22   associated together for a common purpose of engaging in a course of conduct.  This group may be

23   organized for a legitimate and lawful purpose or it may be organized for an unlawful purpose.  Here,

1   the Government alleges that the organization referred to as *La Organizacion de Narcotraficantes*

2   *Unidos*, or La ONU, constituted such an enterprise.

3       In addition to having a common purpose, the enterprise must have a core of personnel who

4   function as a continuing unit.  Furthermore, the enterprise must continue to exist in a substantially

5   similar form through the period charged, in this case from 2004 through 2016.  This does not mean that

6   the membership must remain exactly identical.  The members of the organization can change, and

7   participants in its affairs may come and go, but the enterprise must have a recognizable core that

8   continues during a substantial period during the time frame charged in the Indictment.

9       If you find that there was an agreement to conduct or participate in the conduct of a group of

10   people characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and

11   (3) personnel who function as a continuing unit, then you may find that a conspiracy to violate the

12   RICO statute existed.

13   ~~Adapted from Sand, *Modern Federal Jury Instructions: Criminal,* Instrs. 52-29, 52-20, 19-4;~~

14   ~~*United States v. Lopez-Cabrera,* S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); *United States v. Merlino,*~~

15   ~~No. S44 16 Cr. 522 (RJS) (S.D.N.Y. 2018); *see also United States v. Applins,* 637 F.3d 59, 75-76 (2d~~

16   ~~Cir. 2011); *United States v. Zemlyansky,* 908 F.3d 1, 11 (2d Cir. 2018); *Taylor v. United States,* 136~~

17   ~~S. Ct. 2074, 2077-78 (2016).~~

18

19       2.  <u>Second Element: Effect on Interstate or Foreign Commerce</u>

20       The second element that the Government must prove beyond a reasonable doubt as to Count

21   One is that the criminal enterprise itself, or the racketeering activities of those associated with the

22   enterprise, would have had some effect on interstate or foreign commerce, or in fact has such an effect.

1    This effect on interstate or foreign commerce could have occurred in any way and it need only have

2    been minimal.

3          Interstate commerce includes the movement of goods, services, money, and individuals

4    between states or between states and a U.S. territory, such as Puerto Rico.  It is sufficient, for example,

5    that in the course of racketeering activities, members of the enterprise used weapons that had traveled

6    in interstate commerce, traveled interstate themselves, used telephone facilities interstate, or took

7    money from businesses that had an effect on interstate commerce.  In addition, Congress has

8    determined that all narcotics activity, even purely local narcotics activity, has an effect on interstate

9    commerce.  Thus, if you find that, in the course of the racketeering activities, members of the

10   enterprise trafficked in narcotics, this element is satisfied.  As with the enterprise element, it is not

11   necessary for the Government to prove that any particular act or acts affected interstate or foreign

12   commerce or even that acts that the defendant you are considering personally committed affected

13   interstate or foreign commerce.  It need only prove that some act or acts of the enterprise — even

14   perfectly legal acts of the enterprise —had such an effect.  It is not necessary for you to find that the

15   defendant you are considering knew the enterprise was engaged in interstate commerce.

16   **Adapted from** *United States v. Lopez-Cabrera*, **S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014);** *United*

17   *States v. Merlino*, **S44 16 Cr. 522 (RJS) (S.D.N.Y. 2018); Sand,** *Modern Federal Jury Instructions -*

18   *Criminal*, **Instr. 52-21.**

19

20          3.   <u>Third Element: Membership in the Conspiracy</u>

21          The third element that the Government must prove beyond a reasonable doubt as to Count One

22   is that, at some time during the time period charged in the Indictment, in or about 2004 through in or

23   about 2016, the defendant you are considering was a member of the charged conspiracy.  It is not

1    required that the Government prove that the defendant you are considering was a member of the

2    conspiracy for the entire time that the conspiracy existed.

3         You must determine not only whether the defendant you are considering participated in the

4    conspiracy, but also whether he did so intentionally and knowingly — that is, did he participate in the

5    conspiracy with knowledge of its unlawful purpose and with the specific intention of furthering its

6    objective.  "Unlawful" simply means contrary to law; a defendant need not have known that he was

7    breaking any particular law, but he must have been aware of the generally unlawful nature of his acts.

8         In that regard, it has been said that in order for a defendant to be deemed a participant in a

9    conspiracy, he must have had a stake in venture or its outcome.  You are instructed that, while proof of

10   a financial interest in the outcome of the scheme is not essential, if you find that a defendant had such

11   an interest, that is a factor that you may properly consider in determining whether or not that defendant

12   was a member of a conspiracy charged in the Indictment.

13        As I mentioned a moment ago, before the defendant you are considering can be found to have

14   been a conspirator, you must first find that he knowingly joined the unlawful agreement or plan.  The

15   key question, therefore, is whether the defendant you are considering joined the conspiracy with an

16   awareness of the basic aims and purposes of the unlawful agreement.

17        It is important for you to note that a defendant's participation in the conspiracy must be

18   established by independent evidence of his own acts or statements, as well as those of the other alleged

19   co-conspirators, and the reasonable inferences that may be drawn from them.  A defendant's

20   knowledge is a matter of inference from facts proved.

21        A person acts "intentionally" and "knowingly" if he acts purposely and deliberately and not

22   because of mistake or accident, mere negligence, or other innocent reason.  That is, the acts must be

23   the product of the defendant's conscious objective.

1   If you find that the conspiracy existed and that a defendant participated knowingly and

2   intentionally in it, the extent of that defendant's participation has no bearing on whether or not he is

3   guilty.  The fact that a defendant's participation in a conspiracy was more limited than that of a co-

4   conspirator should not affect your verdict.

5   In addition, the duration and extent of a defendant's participation has no bearing on the issue of

6   that defendant's guilt.  A defendant need not have joined the conspiracy at the outset.  A defendant

7   may have joined the conspiracy at any time in its progress, and that defendant will be held responsible

8   for all that was done before he joined and all that was done during the conspiracy's existence while he

9   was a member.  Each member of a conspiracy may perform separate and distinct acts.  Some

10  conspirators play major roles, while others play minor roles in the scheme.  The law does not require

11  equal roles.  In fact, even a single act may be sufficient to draw a defendant within the scope of the

12  conspiracy.

13  Similarly, the Government need not prove that the defendant you are considering agreed with

14  every other member of the conspiracy, knew all the other members of the conspiracy, or had full

15  knowledge of all the details of the conspiracy.  However, in proving this element, the Government

16  must prove beyond a reasonable doubt that the defendant you are considering was connected to the

17  conspiracy in some meaningful way, and that the defendant knew the general nature of the conspiracy

18  and knew that the conspiracy existed beyond his individual role.

19  I want to caution you, however, that a defendant's mere presence at the scene of an alleged

20  crime does not, by itself, make him a member of the conspiracy.  Similarly, mere association with one

21  or more members of the conspiracy does not automatically make a defendant a member.  A person may

22  know, or be friendly with, a criminal, without being a criminal himself.  ~~Mere~~Mere knowledge that a

23  crime is being committed is, by itself, not sufficient to constitute membership in a conspiracy.

24  Likewise, mere similarity of conduct or the fact that they may have assembled together and discussed

41

1   common aims and interests does not necessarily establish membership in the conspiracy.  What is

2   necessary is that a defendant participated with knowledge of at least some of the purposes and

3   objectives of the conspiracy and with intent to aid in the accomplishment of those unlawful objectives.

4        Ultimately, the question is this: Has the Government proved beyond a reasonable doubt that the

5   defendant you are considering joined the conspiracy and knowingly and intentionally participated in it

6   with the awareness of its basic purpose and as something he wished to bring about?

7   Adapted from Sand, *Modern Federal Jury Instructions - Criminal,* Instrs. 52-29, 52-20; *United*

8   *States v. Lopez-Cabrera,* S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); *United States v. Merlino,* S44 16 Cr.

9   522 (RJS) (S.D.N.Y. 2018).

10

11        4.   Fourth Element: Agreement to Commit Predicate Acts

12        The fourth element that the Government must prove beyond a reasonable doubt as to Count

13   One is that the defendant you are considering knowingly conspired or agreed to participate in the

14   conduct of the affairs of the enterprise through a pattern of racketeering activity.  The focus of this

15   element is on a defendant's agreement to participate in the objective of the enterprise to engage in a

16   pattern of racketeering activity, and not on a defendant's agreement to commit the individual criminal

17   acts.  Additionally, the Government is not required to prove that the defendant you are considering

18   agreed to commit two racketeering acts himself, or that he actually committed two such acts.  Instead,

19   the Government must prove that the defendant agreed to participate in the enterprise with the intent

20   that he or another member or members of the conspiracy would commit two or more racketeering acts,

21   which I will describe in a few minutes.

22        As I have told you, it is not necessary that a conspiracy actually succeed in its purpose for you

23   to conclude that it existed.  Because the agreement to commit a racketeering offense is the essence of

24   Count One, the Government need only prove that if the conspiracy achieved its objective as

1   contemplated, the enterprise would be established, that its members would participate in conducting

2   the affairs of the enterprise through a pattern of racketeering activity, and that those activities would

3   affect interstate or foreign commerce.  Of course, proof that the objective of the conspiracy was

4   accomplished, if you find it was, may be the most persuasive evidence of the existence of the

5   conspiracy.

6          A pattern of racketeering activity requires at least two acts of racketeering, the last of which

7   occurred within ten years, excluding any period of imprisonment after the commission of a prior act of

8   racketeering.  To establish an agreement that the enterprise would engage in a "pattern of racketeering

9   activity," as alleged in Count One of the Indictment, the Government must prove three things beyond a

10  reasonable doubt:

11         First, the Government must prove beyond a reasonable doubt that the defendant you are

12  considering agreed that a conspirator (which could include the defendant himself) would intentionally

13  commit, or cause, or aid and abet the commission of, two or more of the racketeering acts of the types

14  alleged in Count One of the Indictment, which I will list for you shortly.  The jury must be unanimous

15  as to which two acts it finds a defendant conspired to commit; it would not be sufficient for six jurors

16  to find a defendant guilty of conspiring to commit two racketeering acts and the other six jurors to find

17  him guilty of conspiracy to commit two different racketeering acts.

18         Second, the Government must prove beyond a reasonable doubt that the two racketeering acts

19  have a "nexus" to the enterprise and are "related" to one another.  A racketeering act has a "nexus" to

20  the enterprise if it has a meaningful connection to the enterprise.  To be "related" to one another, the

21  racketeering acts must have the same or similar purposes, results, participants, victim, or methods of

22  commission, or be otherwise interrelated by distinguishing characteristics and not be merely isolated

23  events.  But the racketeering acts do not need to be directly related to each other, as long as they are

24  related to the same enterprise.  For example, for both "nexus" and "relatedness" purposes, the requisite

43

1    relationship between the RICO enterprise and a predicate racketeering act may be established by

2    evidence that the defendant you are considering was able to commit the racketeering act solely by

3    virtue of his position in the enterprise or involvement in or control over its affairs; by evidence that the

4    defendant's position in the enterprise facilitated his commission of the racketeering act; by evidence

5    that the racketeering act benefitted the enterprise; by evidence that the racketeering act was authorized

6    by the enterprise; or by evidence the racketeering act promoted or furthered the purposes of the

7    enterprise.  Nevertheless, it is not sufficient for the Government to prove only that the defendant you

8    are considering or a co-conspirator committed or planned to commit two racketeering acts.  A series of

9    disconnected acts does not constitute a pattern.

10          Third, to establish a pattern of racketeering activity, the Government must prove beyond a

11    reasonable doubt that the racketeering acts either extended over a substantial period of time or that they

12    posed or would pose a threat of continued racketeering activity.  A series of criminal acts poses a threat

13    of continued racketeering activity if the acts were committed to further the goals of a long-term

14    association that exists for criminal purposes.  The Government need not prove such a threat of

15    continuity by any mathematical formula or by any particular method of proof, but rather may prove it

16    in a variety of ways.  For example, the threat of continued unlawful activity may be established when

17    the evidence shows that the racketeering acts are part of a long-term association that exists for criminal

18    purposes or when the racketeering acts are shown to be the regular way of conducting the affairs of the

19    enterprise.  Moreover, in determining whether the object of the conspiracy involved the threat of

20    continued unlawful activity, you are not limited to consideration of the specific racketeering acts that a

21    defendant himself is alleged to have committed; instead, in addition to considering such acts, you also

22    may consider the nature of the enterprise, and other unlawful activities of the enterprise and its

23    members viewed in their entirety, including both charged and uncharged unlawful activities.

1    Let me be clear about what the Government is and is not required to prove for a conviction

2    under Count One.  The Government must prove that the defendant you are considering intended to

3    further an endeavor which, if completed, would have satisfied all of the elements of a racketeering

4    offense.  But the Government is not required to prove that the defendant personally committed or even

5    agreed to commit any act of racketeering.  Nor is it required to prove that any acts of racketeering

6    actually occurred.  Instead, for a conviction under Count One, the Government must prove beyond a

7    reasonable doubt that the defendant you are considering agreed to participate in the enterprise with the

8    knowledge and intent that at least one member, which could be the defendant himself, would commit

9    at least two racketeering acts in the conduct of the affairs of the enterprise, and that those acts would

10    constitute a pattern of racketeering activity as defined above.

11    Adapted from *United States v. Lopez-Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); *United*

12    *States v. Merlino*, S44 16 Cr. 522 (RJS) (S.D.N.Y. 2018); Sand, *Modern Federal Jury Instructions-*

13    *Criminal*, Instrs. 52-31, 52-23; *see United States v. Yannotti*, 541 F.3d 112, 129 (2d Cir. 2008);

14    *United States v. Applins*, 637 F.3d 59, 81-83 (2d Cir. 2011) *United States v. Salerno*, 868 F.2d 524,

15    533 (2d Cir. 1989).

16

17        5.   Difference Between "Enterprise" and "Pattern of Racketeering Activity"

18    Keep in mind that an enterprise is not the same thing as the pattern of racketeering activity.  To

19    convict, the Government must prove beyond a reasonable doubt that if the conspiracy achieved its

20    objective, there would be an enterprise *and* that the enterprise's affairs would be conducted through a

21    pattern of racketeering activity.  As I have mentioned, the enterprise in this case is alleged to be a

22    group of individuals who associated together for a common purpose of engaging in a course of

23    conduct, known as La ONU.  A pattern of racketeering activity, on the other hand, is a series of

24    criminal acts.  The proof used to establish these separate elements may be the same or overlapping.

1    For example, if you find that an ongoing enterprise existed, the existence of this enterprise may help

2    establish that the separate racketeering acts were part of a "pattern" of continuing criminal activity.

3    Nevertheless, you should bear in mind that proof of an enterprise does not necessarily establish proof

4    of a pattern of racketeering activity or vice versa.

5    ~~Adapted from *United States v. Lopez-Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014).~~

6

7              6.   Racketeering Predicates

8         I will now instruct you on the substantive law governing the racketeering crimes that the

9    Indictment alleges were part of the pattern of racketeering activity in this case.

10        The Indictment alleges that the following categories of criminal violations were committed or

11   were intended to be committed as part of the racketeering conspiracy charged in Count One:

12              i.    acts involving murder, in violation of Puerto Rico law;

13              ii.   acts involving attempted murder, in violation of Puerto Rico law;

14              iii.  acts involving trafficking in controlled substances, in violation of federal law; and

15              iv.   acts involving bribery, in violation of Puerto Rico law.

16        As a reminder, you must be unanimous as to the *types* of predicate racketeering acts that the

17   defendant you are considering agreed to commit, but you are not required to make a finding of specific

18   predicate acts.

19        I will instruct you about each kind of alleged racketeering act in turn.

20

21              i.    Racketeering Predicate: Murder in Violation of Puerto Rico Law

22        The Indictment alleges that one of the categories of criminal violations that were committed or

23   intended to be committed as part of the racketeering conspiracy charged in Count One included

24   murder, in violation of Puerto Rico law.

46

1    Murder is the killing of another human being with malice aforethought.  In particular, pursuant

2    to Puerto Rico law, the Government must prove two elements beyond a reasonable doubt.

3    First, the Government must prove beyond a reasonable doubt that the person caused the death

4    of another human being, or aided and abetted or willfully caused another person to cause the death of

5    another human being.  The person's conduct must be the direct cause of the victim's death.  In other

6    words, an act caused a victim's death if the act, in a natural and continuous sequence, results in the

7    death, and if the death would not have occurred without the act.

8    Second, the Government must prove that the person acted with malice aforethought.  "Malice

9    aforethought" is the state of mind that would cause a person to act without regard to the life of another.

10   To satisfy this element, the person must have acted consciously, with the intent to kill another human

11   being.  Malice can be proved in any of three ways, and the Government satisfies its burden of proof if

12   it proves any of the three.  The first alternative is that a person intended to kill the victim.  A person

13   must have had it in his mind to kill the victim.  It involves concentrating or focusing the mind for some

14   perceptible period.  The person must have possessed the actual, subjective intent to kill.  The second is

15   that the person intended to cause grievous bodily harm to the victim.  Grievous bodily harm means

16   severe injury to the body.  The third is that the person acted recklessly and wantonly, in a way that

17   grossly deviated from a reasonable standard of care such that he was aware of the serious risk that

18   death would result.  In order to establish this element, the Government must prove beyond a reasonable

19   doubt that the person acted willfully, with a bad or evil purpose to break the law.  However, the

20   Government need not prove spite, malevolence, hatred, or ill will toward the victim.

21   A defendant is not guilty of murder under Puerto Rico law, however, if the killing occurred in a

22   sudden heat of passion or rage and was caused by an adequate provocation on the part of the victim.

23   For the provocation to reduce the crime of murder to voluntary manslaughter, it must be of such a

47

1    nature as to cause an ordinary man to lose control of himself and, impelled by such provocation, to act

2    on the spur of the moment, without due reflection and without deliberate intent.

3    Adapted from Sand, *Modern Federal Jury Instructions: Criminal*, Instr. 41; Puerto Rico Laws tit.

4    33, §§ 4733 (defining murder), 4651 (defining necessary intent), 4736 (defining manslaughter)

5    (2004 code repealed in 2012 but still operative for offenses committed prior to 2012, *see id.*

6    §§ 4638, 5005); *United States v. Millan-Machuca*, No. 16 Cr. 282 (TSH) (D.P.R. 2019), ECF No.

7    2914; *see also United States v. Baez-Martinez*, 950 F.3d 119, 130-31 (1st Cir. 2020); *Pueblo v.*

8    *Rivera Alicea*, 125 P.R. Dec. 37 (1989); *Pueblo v. Lopez Rodriguez*, 101 P.R. Dec. 897 (1974);

9    *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992) (citing *Yates v. Evatt*, 111 S. Ct.

10   1884, 1896 (1991)).

11

12                          ii.   Racketeering Predicate: Attempted Murder in Violation of Puerto Rico Law

13            The Indictment also alleges that one of the categories of criminal violations that were

14   committed or intended to be committed as part of the racketeering conspiracy charged in Count One

15   included acts of attempted murder in violation of Puerto Rico law.  To prove that a person committed

16   an attempted murder, the Government must prove beyond a reasonable doubt that:

17            First, the person intended for a murder to occur;

18            Second, that the person engaged in an act or omission, or aided and abetted or willfully caused

19   another person to engage in an act or omission, that was unequivocally and instantaneously directed

20   toward initiating the commission of the crime; and

21            Third, the crime was not completed due to circumstances beyond the control of the person.

22   Adapted from Sand, *Modern Federal Jury Instructions – Criminal*; Instr. 41; Puerto Rico Laws

23   tit. 33, §§ 4733 (defining murder), 4651 (defining necessary intent), 4663 (defining attempt) (2004

24   code repealed in 2012 but still operative for offenses committed prior to 2012, *see id.* §§ 4638,

1   ~~5005); *United States v. Benitez-Beltran*, 892 F.3d 462, 467 (1st Cir. 2018); *United States v. Baez-~~

2   ~~Martinez*, 950 F.3d 119, 130-31 (1st Cir. 2020).~~

3

4               iii.   Racketeering Predicate: Narcotics Conspiracy

5          The Indictment also alleges that one of the categories of criminal violations that were

6   committed or intended to be committed as part of the racketeering conspiracy charged in Count One

7   included acts involving drug trafficking, namely the distribution or possession with intent to distribute

8   of cocaine, and conspiracy to do the same, in violation of federal law.

9          To sustain its burden of proof with respect to proving a narcotics conspiracy, the Government

10  must prove beyond a reasonable doubt the following two elements:

11         First, that a conspiracy existed; and

12         Second, that the person intentionally and knowingly became a member of that conspiracy —

13  that is, that he knowingly associated himself with the conspiracy and participated in the conspiracy to

14  distribute, or possess with the intent to distribute, cocaine.

15         I refer you to the instructions I previously gave you in connection with Count One regarding

16  the meaning and requirements of these two elements.

17               a.   Object of the Conspiracy

18         Here, the alleged object of the conspiracy — the illegal goal of the conspiracy — was the

19  distribution or possession with intent to distribute of cocaine.

20         Let me note that the Government must prove only that the person either (1) conspired to

21  distribute a controlled substance or (2) conspired to possess the controlled substance with the intent to

22  distribute it.  The Government may, but need not, prove both.  You must be unanimous, however, as to

23  which of these two objectives (or both) was proved beyond a reasonable doubt to have been the object

24  of the conspiracy.

1          b.   Distribution

2          The word "distribution" means the actual, constructive, or attempted transfer of the drug.  To

3  distribute simply means to deliver, to pass over, to hand over something to another person, or to cause

4  it to be delivered, passed on, or handed over to another.  Distribution does not require a sale, but it does

5  include sales.

6          c.   Possession with Intent to Distribute

7          In defining "possession with intent to distribute," I will first discuss the concept of

8  "possession" and then discuss the concept of "intent to distribute."

9          The legal concept of possession may differ from the everyday term, so let me explain it in in

10  some detail.  Actual possession is what most of us think of as possession — that is, having physical

11  custody or control of an object, as I possess this pen.  However, a person need not have actual, physical

12  possession — that is, physical control over an object — in order to be in *legal* possession of it.  If a

13  person has the ability to exercise substantial control over an object, even if he or she does not have the

14  object in his physical custody, and that person has the intent to exercise such control, then the person is

15  in possession of that object.  This is called "constructive possession."

16         Control over an object may be demonstrated by the existence of a working relationship between

17  one person having the power or ability to control the item and the person who has actual physical

18  custody.  The person having control "possesses" the object because he or she has an effective working

19  relationship with the person who has actual physical custody of the object and because he or she can

20  direct the movement or transfer or disposition of the object.

21         More than one person can have control over the same object.  The law recognizes that

22  possession may be sole or joint.  Finally, possession and ownership are not the same.  A person can

23  possess an object and not be the owner of the object.

1    Possession "with intent to distribute" simply means the possession of a controlled substance

2  with the intent or purpose to "distribute" it to another person or persons, as I have already defined that

3  term.

4    Because no one can read a person's mind, the determination as to a person's intent may be

5  inferred from his behavior.  You may ask yourself whether any drugs in a person's possession, that is,

6  subject to his control, were for his personal use or for the purpose of distribution to another.

7                    d.  Controlled Substance

8    Finally, I instruct you that cocaine is a "controlled substance" as a matter of law.

9  ~~Adapted from Sand, *Modern Federal Jury Instructions – Criminal,* Instrs. 19-3S and 19-4; *United~~

10  ~~States v. Berry,* 20 Cr. 84 (AJN) (S.D.N.Y. 2021).~~

11

12              iv.  Racketeering Predicate: Bribery in Violation of Puerto Rico Law

13    Finally, the Indictment also alleges that one of the categories of criminal violations that were

14  committed or intended to be committed as part of the racketeering conspiracy charged in Count One

15  included acts of bribery in violation of Puerto Rico law.  Under Puerto Rico law, any person who,

16  directly or through an intermediary, gives or promises to give money or any benefit to a public officer

17  or employee for the purpose of getting that public officer or employee to perform, omit, or delay an act

18  that pertains to his or her regular office or duties, or to perform an act that is contrary to his or her

19  regular duties, or with the understanding that such renumeration or benefit shall influence any action,

20  decision, vote, or ruling by that person in his or her official capacity, is guilty of bribery.

21    Accordingly, to prove that a person committed bribery, the Government must prove beyond a

22  reasonable doubt two elements.

1    First, the Government must prove that the person, directly or through an intermediary, gave or

2    promised to give money or any benefit to a public officer or employee.  A police officer qualifies as a

3    public officer or employee.

4    Second, the Government must prove that the person did so for one of the following purposes:

5    (a) to get that public officer or employee to perform, omit, or delay an act pertaining to his regular

6    duties; (b) to get that public officer or employee to perform an act that is contrary to his regular duties;

7    or (c) to influence any action or decision by that public officer or employee in his official capacity.  It

8    is sufficient for the act to fall within the general duties of the employee; it is not necessary to show that

9    the official had final authority over any particular matter.

10   ~~*See* **Puerto Rico Laws tit. 33, §§ 4890, 4891 (2004 code repealed in 2012 but still operative for**~~

11   ~~**offenses committed prior to 2012, *see id.* §§ 4638, 5005); *id.* §§ 5350, 5351 (2012 code); *see also***~~

12   ~~***United States v. Bravo-Fernandez*, No. 10 Cr. 232 (FAB) (D.P.R. 2011) (ECF No. 433).**~~

13

14       7.   Multiple Conspiracies

15   ~~The defendants' position is that the Government's proof fails to show the existence of only one~~

16   ~~overall~~Count One charges a racketeering conspiracy.~~ Instead, the~~ relating to a specific alleged

17   enterprise — namely, La ONU.  The defendants argue that there were actually several separate and

18   independent racketeering conspiracies with various groups of members.

19   Whether there existed a single unlawful agreement, or many such agreements, or indeed, no

20   agreement at all, is a question of fact for you, the jury, to determine in accordance with the instructions

21   I am about to give you.

22   When two or more people join together to further one common unlawful design or purpose, a

23   single conspiracy exists.  By way of contrast, multiple conspiracies exist when there are separate

24   unlawful agreements to achieve distinct purposes.

1     Proof of several separate and independent conspiracies is not proof of the single, overall

2     conspiracy charged in Count One of the Indictment, unless one of the conspiracies proved happens to

3     be the single conspiracy described in the Indictment.

4     You may find that there was a single conspiracy despite the fact that there were changes in

5     personnel, activities, or both, so long as you find beyond a reasonable doubt that some of the co-

6     conspirators continued to act for the duration of the conspiracy for the purposes charged in Count One

7     of the Indictment.  The fact that the members of a racketeering conspiracy are not always identical

8     does not necessarily imply that separate racketeering conspiracies exist.  In addition, the existence of

9     subgroups or subunits within a larger conspiracy does not necessarily mean that the larger conspiracy

10    does not exist.

11    On the other hand, if you find that the racketeering conspiracy charged in the Indictment did

12    not exist, you cannot find either defendant guilty of the single racketeering conspiracy charged in

13    Count One.  This is so even if you find that some racketeering conspiracy other than the one charged in

14    Count One existed, even though the purposes of both conspiracies may have been the same, and even

15    though there may have been some overlap in membership.

16    Similarly, if you find that the defendant you are considering was a member of another

17    conspiracy, and not the one charged in the Indictment, then you must acquit that defendant of the

18    conspiracy charge.  A person can be part of more than one conspiracy at the same time, and his actions

19    can further the interests of more than one conspiracy at the same time.

20    Therefore, what you must do is determine whether the conspiracy charged in the Indictment

21    existed.  If it did, you then must determine the nature of the conspiracy and who were its members.

22    Adapted from Sand, *Modern Federal Jury Instructions – Criminal,* Instr. 19-5.

23

24

53

1            \*           \*           \*

2      That completes my instructions as to Count One, the racketeering conspiracy charge.  I will

3 now instruct you on the remaining counts of the Indictment, each of which charges a single defendant

4 with a specific murder in violation of one of three different federal laws.

5

6 D.  Aiding and Abetting

7      Before I move on to the remaining counts of the Indictment, which charge the defendants with

8 what are known as substantive (that is, non-conspiracy) crimes, I want to instruct you on the concept of

9 aiding and abetting, including willfully causing.

10      The defendants are charged in Counts Two through Nine with committing certain criminal acts

11 but are also charged with aiding and abetting or willfully causing the commission of those acts by

12 another person.  It is not necessary for the Government to show that the defendant you are considering

13 himself physically committed a crime in order for you to find him guilty.  You may, under certain

14 circumstances, find the defendant you are considering guilty of the crime as an aider and abettor or as

15 someone who willfully caused someone else to commit the crime.

16      Aiding and abetting liability is its own theory of criminal liability that applies to Counts Two

17 through Nine.  In effect, it is a theory of liability that permits a person to be convicted of a specified

18 crime if the person, while not himself committing the crime, assisted another person or persons in

19 committing the crime or willfully caused another person to commit the crime.

20      Under the federal aiding and abetting statute, whoever "aids, abets, counsels, commands,

21 induces or procures" the commission of an offense is punishable as a principal.  You should give these

22 words their ordinary meaning.  A person "aids or abets" a crime if he knowingly does some act for the

23 purpose of aiding or encouraging the commission of that crime, with the intention of causing the crime

24 charged to be committed.  To "counsel" means to give advice or recommend.  To "induce" means to

1  lead or move by persuasion or influence as to some action or state of mind.  To "procure" means to

2  bring about by unscrupulous or indirect means.  To "cause" means to bring something about, to effect

3  something.

4       A person who aids and abets another to commit an offense is just as guilty of that offense as if

5  he had committed it himself.  Therefore, if you find that the Government has proved beyond a

6  reasonable doubt that another person actually committed a crime, and that the defendant you are

7  considering aided and abetted that person in the commission of the offense, then you may find the

8  defendant you are considering guilty of the crime.

9       As you can see, the first requirement is that the crime charged was actually committed by

10  someone.  Obviously, no one can be convicted of aiding and abetting a crime if no crime was

11  committed.  But if you do find that a crime was committed, then you must consider whether the

12  defendant you are considering aided or abetted the commission of the crime.

13       In order to aid and abet another to commit a crime, it is necessary that the defendant you are

14  considering willfully and knowingly associated himself in some way with the crime and that he

15  willfully and knowingly sought by some act to help make the crime succeed.  To establish that the

16  defendant you are considering participated in the commission of the crime, the Government must

17  prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of

18  bringing about that crime.

19       The mere presence of a person where a crime is being committed, even coupled with

20  knowledge by that person that a crime is being committed, or merely associating with others who were

21  committing a crime is not sufficient to establish aiding and abetting.  An aider and abettor must have

22  some interest in the criminal venture and must take some action to assist or encourage the commission

23  of the crime.

1       To determine whether a defendant aided and abetted the commission of a crime with which he

2   is charged, ask yourself these questions:

3       1.   Did he participate in the crime charged as something he wished to bring about?

4       2.   Did he associate himself with the criminal venture knowingly and willfully?

5       3.   Did he seek by his actions to make the criminal venture succeed?

6       If he did, then that defendant is an aider and abettor and therefore guilty of the offense.  If your

7   answer to any one of these questions in "no," then you must find that defendant not guilty.

8       Similarly, a defendant can be found guilty even if he did not himself commit the crime if he

9   willfully caused another person to commit the crime.  In considering whether a defendant willfully

10  caused another person to commit a crime, ask yourself these questions:

11      1.   Did the defendant intend for someone to commit the crime?

12      2.   Did the defendant intentionally instruct or cause another person to commit the criminal

13          act?

14      If you are persuaded beyond a reasonable doubt that the answer to both of these questions is

15  "yes," then the defendant you are considering is guilty of the crime charged just as if he himself had

16  actually committed it.  If not, you must find him not guilty under this theory.

17

18  D.E.   Murder in Aid of Racketeering

19      Counts Two, Four, and Seven each charge one defendant with committing or causing a murder

20  at least in part for the purpose of maintaining or increasing the defendant's position in a racketeering

21  enterprise.  I am addressing all three of these counts together because the elements of the charges are

22  the same, but to be clear: Count Two charges Mr. Blondet (and Mr. Blondet only) with this crime for

23  the murder of Crystal Martinez-Ramirez; and Counts Four and Seven charge Mr. Marquez-Alejandro

1    (and Mr. Marquez-Alejandro only) with this crime for the murders of Israel Crespo-Cotto and Carlos

2    Barbosa, respectively.

3         This law makes it a crime for any person, for the purpose of gaining entrance to or maintaining

4    or increasing position in an enterprise engaged in racketeering activity, to murder any individual in

5    violation of local law.

6         Accordingly, in order to sustain its burden of proof as to each of Counts Two, Four, and Seven,

7    the Government must prove each of the following three elements beyond a reasonable doubt:

8         First, that the enterprise described in Count One existed, that it engaged in a pattern of

9    racketeering activity, and that its activities affected interstate or foreign commerce, as I have

10   previously defined these terms for you;

11        Second, that the defendant at issue committed murder in violation of Puerto Rico law; and

12        Third, that one of the defendant's purposes in committing the murder was to gain entrance to,

13   maintain his position in, or increase his position in the enterprise.

14        I will explain each of these elements in more detail now.

15        1.   Murder in Aid of Racketeering: Existence of the Enterprise

16        I already defined for you, in connection with Count One, the meaning of "enterprise,"

17   "affecting interstate or foreign commerce," and "racketeering activity."  But unlike the instructions I

18   gave you for Count One, which charged a *conspiracy* to commit racketeering, for purposes of Counts

19   Two, Four, and Seven, the Government must prove that the enterprise charged in the Indictment, La

20   ONU, actually existed.  You must find that at the general time that the murder occurred, the enterprise

21   was engaged in racketeering activity, as I defined that term for you.  And finally, you must find that the

22   criminal enterprise itself, or the racketeering activities associated with it, had some effect on interstate

23   or foreign commerce, as I have previously explained these terms to you.

24

1          2.   Murder in Aid of Racketeering: Murder in Violation of Puerto Rico Law

2          The second element the Government must prove beyond a reasonable doubt with respect to

3   Counts Two, Four, and Seven is that the defendant at issue committed or aided and abetted the charged

4   murder in violation of Puerto Rico law.

5          I have already instructed you on the elements of murder under Puerto Rico law and you should

6   apply those instructions here.  I remind you that, just like the other murder charges I have already

7   discussed, a defendant may be guilty of murder by personally committing the crime, by willfully

8   causing it, or by aiding and abetting it.

9

10         3.   Murder in Aid of Racketeering: Purpose of Gaining Entrance to, or Maintaining or

11              Increasing Position, in the Enterprise

12         The third element that the Government must prove beyond a reasonable doubt with respect to

13   Counts Two, Four, and Seven is that the defendant at issue, or the person whom the defendant aided

14   and abetted or willfully caused to commit the crime, acted for the purpose of gaining entrance to,

15   maintaining his position in, or increasing his position in the La ONU enterprise.

16         Your focus in this element is on the general purpose or motive of the defendant or the person

17   whom the defendant aided and abetted or willfully caused to commit the charged crime.  The

18   Government does not need to prove that gaining entrance to, or maintaining or increasing position in

19   the enterprise, was the defendant's *only* motive, or even his principal motive, so long as it was a

20   substantial motivating factor in the defendant's decision to participate in the murder.  For example, this

21   element is satisfied if the defendant committed the crime because he knew it was expected of him by

22   reason of his involvement in La ONU, because it would enhance or maintain his power or prestige

23   within La ONU, or, with respect to a high-ranking member of the enterprise, if he committed or

1    sanctioned the charged violent act to protect La ONU's operations or to advance its objectives.   These

2    examples, however, are by way of illustration and are not exhaustive.

3    *Adapted from United States v. Lopez-Cabrera, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); United*

4    *States v. Tyrell, 15 Cr. 95 (JSR) (S.D.N.Y. 2018); United States v. Berry, No. 20 Cr. 84 (AJN)*

5    *(S.D.N.Y. 2021); see also Sand, Modern Criminal Jury Instructions - Criminal, Instr. 52-41; United*

6    *States v. White, 7 F.4th 90, 101–02 (2d Cir. 2021); United States v. Whitten, 610 F.3d 168, 178 (2d*

7    *Cir. 2010); United States v. Bruno, 383 F.3d 65, 83 (2d Cir. 2004), as amended (Oct. 6, 2016).*

8

9            4.   Defense Theory Regarding Count Two (Defendant Luis Blondet)

10           Mr. Blondet's position is that the Government has not proved beyond a reasonable doubt that

11   the killing of Crystal Martinez-Ramirez (who is not alleged to have been involved in the affairs of La

12   ONU in any respect) was in furtherance of the La ONU enterprise, or that gaining entrance to, or

13   maintaining or increasing his position in La ONU was a substantial motivating factor in the killing.

14           Mr. Blondet also argues that the Government has not proved beyond a reasonable doubt that he

15   acted with malice aforethought and proved beyond a reasonable doubt that the killing of Crystal

16   Martinez-Ramirez was not committed in the heat of the moment, caused by adequate provocation.

17           If you agree with either argument, you must acquit Mr. Blondet on Count Two.

18   *See United States v. Jones, 291 F. Supp. 2d 78 (D. Conn. 2003); see also United States v. Ferguson,*

19   *246 F.3d 129, 134 (2d Cir. 2001).*

20

21           5.   Special Question Regarding the Relationship Between Counts One and Two

22           Before I turn to the next set of charges, I want to briefly mention two questions that you will

23   see on the Verdict Form after Count Two, which charges Mr. Blondet with murder in aid of

24   racketeering in connection with the death of Crystal Martinez-Ramirez.

1    ~~As you'll see, you should answer each of the questions~~ if and only if ~~you~~ both find (1) either

2    defendant guilty on Count One (which charges each defendant with racketeering conspiracy) and (2)

3    Mr. Blondet guilty on Count Two.  In that event, you will be asked whether your verdict as to the

4    defendant or defendants you found guilty on Count One would have been the same even if you had

5    found Mr. Blondet *not* guilty on Count Two.  In other words, the question seeks to determine whether,

6    in the event you find either defendant guilty on Count One, that verdict depends on your having found

7    that the killing of Crystal Martinez-Ramirez was part of the pattern of racketeering activity that you

8    found in connection with Count One or whether you would have found a pattern of racketeering

9    activity even without that murder.  If you found either defendant guilty of Count One, and that verdict

10   does not depend on a finding that the killing of Crystal Martinez-Ramirez was part of the pattern of

11   racketeering activity that you found in connection with Count One — in other words, if your verdict as

12   to that defendant on Count One would have been guilty even if you had found that the killing of

13   Crystal Martinez-Ramirez did *not* qualify as murder in aid of racketeering — you should answer that

14   question "yes."

15   Again, you should answer these questions only if you find either defendant guilty on Count

16   One, the racketeering conspiracy charge, and you find Mr. Blondet guilty on Count Two.  If you find

17   both defendants not guilty on Count One or you find Mr. Blondet not guilty on Count Two, you should

18   leave the questions blank.

19   You should draw no inference from these questions (or any other questions on the Verdict

20   Form) as to what your verdict should be as to any count.  The questions are not to be taken as any

21   indication that I have any opinion as to how they should be answered.

22

1    ~~E.~~F.    Murder While Engaged in a Drug Crime

2          Counts Five and Eight charge that, while engaged in a conspiracy to distribute five kilograms

3    or more of cocaine, Mr. Marquez-Alejandro killed or aided and abetted or willfully caused another

4    person to kill someone.  Count Five charges Mr. Marquez-Alejandro with this crime in connection

5    with the murder of Israel Crespo-Cotto, and Count Eight charges him with this crime in connection

6    with the murder of Carlos Barbosa.

7          This law makes it a crime for any person who is engaging in certain narcotics offenses to

8    intentionally kill, or counsel, command, induce, procure, or cause the intentional killing of an

9    individual, if such killing results.

10         In order to sustain its burden of proof as to Counts Five and Eight, the Government must prove

11   each of the following three elements beyond a reasonable doubt:

12         First, that at the time of the charged murder, the defendant was engaged in a conspiracy to

13   distribute five kilograms or more of cocaine;

14         Second, that while engaged in that narcotics conspiracy, the defendant either intentionally

15   killed, or aided and abetted the killing of, another person or counseled, commanded, induced, procured,

16   or caused the intentional killing of that person by someone else; and

17         Third, that the killing actually resulted from the defendant's actions.

18   ~~Adapted from *United States v. Berry*, No. 20 Cr. 84 (AJN) (S.D.N.Y. 2021); Sand, *Modern Federal*~~

19   ~~*Jury Instructions - Criminal*, Instr. 56-51; *see also United States v. Walker*, 142 F.3d 103, 113 (2d~~

20   ~~Cir. 1998); *United States v. Martinez-Martinez*, No. 01 Cr. 307, 2001 WL 1287040, at \*1 (S.D.N.Y.~~

21   ~~Oct. 24, 2001).~~

22

1.   Murder While Engaged in a Drug Crime: Narcotics Conspiracy; Drug Weight

As I just mentioned, to find Mr. Marquez-Alejandro guilty of Counts Five and Eight, you must determine first that he was engaged in a narcotics conspiracy, and second, as to these counts, that the conspiracy involved at least five kilograms of cocaine.

I have already explained to you the elements of a narcotics conspiracy in connection with Count One and you should apply those instructions here.

If, but only if, you conclude that the Government has proved beyond a reasonable doubt that the Defendant is guilty of participating in the conspiracy described above, you must then determine whether they intended the distribution of at least five kilograms of cocaine.

To calculate this amount, you should include (1) any transactions in furtherance of the conspiracy in which the Defendant personally participated, and (2) any transactions in furtherance of the conspiracy that the Defendant reasonably foresaw even though he did not personally participate in these sales.  Your findings on quantity must be unanimous and beyond a reasonable doubt.

Adapted from Sand, *Modern Federal Jury Instructions – Criminal*, Instrs. 19-3S and 19-4; 56-53, 54, 55; *United States v. Berry*, 20 Cr. 84 (AJN) (S.D.N.Y. 2021).

2.   Murder While Engaged in a Drug Crime: Counsel, Command, Induce, Procure, or Cause an Intentional Killing

The second element that the Government must prove beyond a reasonable doubt with respect to Counts Five and Eight is that Mr. Marquez-Alejandro, while engaged in that narcotics conspiracy, intentionally killed the person specified in the Indictment, or counseled, commanded, induced, procured, or caused the killing of that person.  I will define those terms for you now.

i.   "While Engaged In"

To show that the killing of the person specified in the Indictment occurred while the defendant was engaged in a narcotics conspiracy, the Government must prove more than simply a temporal connection between the killing and the drug conspiracy.  The Government must prove beyond a reasonable doubt that the killing occurred because and as part of the defendant's engaging in the narcotics conspiracy.  The Government must show that a substantive connection existed between the alleged conspiracy and the killing — in other words, that the alleged conspiracy was one purpose of the killing.  If you find that the murder was wholly unconnected to the alleged narcotics conspiracy or was simply coincidental to it, then this element is not satisfied.  A drug-related motive need not be the sole purpose, the primary purpose, or even one that was equally important to any non-drug-related purpose, as long as it was one of the purposes.

ii.   "Intentionally Killed"

A person intentionally kills another person when he does so deliberately and purposefully.  That is, the defendant's actions must have been his conscious objective rather than the product of a mistake or accident or mere negligence or some other innocent reason.

iii.   "Counsel, Command, Induce, Procure, and Cause"

To meet its burden of proof, the Government does not need to prove that Mr. Marquez-Alejandro directly caused the death of the person specified in the count you are considering.  The statute takes into consideration that while certain people might have direct involvement in an intentional killing, others can be held responsible even if they play a less direct role.  Thus, this element can be satisfied if you find beyond a reasonable doubt that Mr. Marquez-Alejandro aided, abetted, counseled, commanded, induced, procured, or caused the relevant killing.  I have already instructed you on the meaning of these terms within the aiding and abetting instruction, and you should apply those instructions in determining whether this element is met.

1   ~~Adapted from *United States v. Berry*, 20 Cr. 84 (AJN) (S.D.N.Y. 2021); Sand, *Modern Federal*~~

2   ~~*Jury Instructions - Criminal*, Instrs. 56-53, 54, 55; *see United States v. Aguilar*, 585 F.3d 652 (2d~~

3   ~~Cir. 2009); *United States v. Santos*, 541 F.3d 63 (2d Cir. 2008); *United States v. Walker*, 142 F.2d~~

4   ~~103, 113 (2d Cir. 1998).~~

5

6        3.   Murder While Engaged in a Drug Crime: Death Results

7        The third element that the Government must prove beyond a reasonable doubt with respect to

8   Counts Five and Eight is that the death actually resulted from the acts of Mr. Marquez-Alejandro or a

9   person for whose conduct he is criminally responsible.

10  ~~Adapted from Sand, *Modern Federal Jury Instructions — Criminal*, Instr. 56-54.~~

11

12  ~~F.~~G.   Murder Using a Firearm

13       Finally, Counts Three, Six, and Nine each charge a defendant with knowingly using and

14  carrying a firearm in relation to a crime of violence or a drug trafficking crime — or aiding and

15  abetting or willfully causing another person to do the same — resulting in murder.  Count Three

16  charges Mr. Blondet with this crime in connection with the murder of Crystal Martinez-Ramirez, and

17  Counts Six and Nine charge Mr. Marquez-Alejandro with this crime in connection with the murders of

18  Israel Crespo-Cotto and Carlos Barbosa, respectively.

19       To sustain its burden of proof with respect to each of these counts, the Government must prove

20  each of the following five elements beyond a reasonable doubt:

21       First, that on or about the date alleged in the Indictment, the defendant at issue used or carried

22  or possessed a firearm, or any combination of those acts, or aided and abetted or willfully caused

23  another person to do so;

1    Second, that the use or carrying of the firearm was during and in relation to a crime of violence

2    or a drug trafficking crime, or possession of the firearm was in furtherance of such a crime;

3    Third, that the defendant at issue or the person he aided and abetted caused the death of another

4    person through the use of a firearm;

5    Fourth, that the death of that person qualifies as a murder under federal (not Puerto Rico) law,

6    as I will define that term for you in a moment; and

7    Fifth, that the defendant at issue acted knowingly.

8    Adapted from *United States v. Berry*, No. 20 Cr. 84 (AJN) (S.D.N.Y. 2021); Sand, *Modern Federal*

9    *Jury Instructions-Criminal*, Instrs. 41-8, 41-10, 35-87.

10

11        1.   Murder Using a Firearm: Use, Carry, or Possess

12        The first element the Government must prove beyond a reasonable doubt with respect to

13   Counts Three, Six, and Nine is that, on or about the date charged in the Indictment, the defendant at

14   issue, or the person he aided and abetted, used, carried, or possessed a firearm.  Let me start by

15   defining some terms.

16        A "firearm" is defined as any weapon that will, or is designed to or may readily be converted

17   to, expel a projectile by the action of an explosion.  It does not matter if the firearm was loaded or

18   operable at the time of the crime.  A gun is a firearm.

19        In order to prove that someone "used" a firearm, the Government must prove beyond a

20   reasonable doubt an active employment of the firearm during and in relation to the relevant crime of

21   violence or drug trafficking crime, as I will explain those terms in a moment.  This does not mean that

22   the defendant at issue, or the person he aided and abetted or intentionally caused to use the firearm,

23   must actually have fired or attempted to fire the weapon, although those would obviously constitute

24   use of the weapon.  Brandishing, displaying, or even referring to the weapon so that other people knew

1   that the person had a firearm available if needed all constitute "use" of the firearm.  But the mere

2   possession of a firearm at or near the site of the crime at issue, without active employment, is not

3   sufficient to constitute "use" of the firearm.

4         To prove that someone "carried" a firearm, the Government must prove beyond a reasonable

5   doubt that the defendant at issue, or the person he aided and abetted or intentionally caused to carry a

6   firearm, had the weapon within his control in such a way that it furthered the commission of the

7   relevant crime of violence or drug trafficking crime.

8         With respect to "possessing" a firearm, the Government must prove beyond a reasonable doubt

9   that the defendant at issue, or the person he aided and abetted or intentionally caused to possess a

10   firearm, either had actual physical possession of the firearm or had substantial custody or control over

11   it.  But mere possession of a firearm is not enough.  The possession must be in furtherance of the

12   relevant crime of violence or drug trafficking crime — in other words, it must have played some part

13   in furthering the crime for this element to be satisfied.

14   ~~Adapted from *United States v. Berry*, 20 Cr. 84 (AJN) (S.D.N.Y. 2021); *United States v. Lopez-*~~

15   ~~*Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); *United States v. Pizzaro*, 16 Cr. 54 (GHW)~~

16   ~~(S.D.N.Y. 2017); Sand, *Modern Federal Jury Instructions - Criminal*, Instr. 35-89.~~

17

18        2.   <u>Murder Using a Firearm: During and in Relation to a Crime of Violence or Drug</u>

19            <u>Trafficking Crime</u>

20         The second element that the Government must prove beyond a reasonable doubt with respect to

21   Counts Three, Six, and Nine is that the defendant at issue either used or carried a firearm during and in

22   relation to a crime of violence or drug trafficking crime, or possessed a firearm in furtherance of such a

23   crime, or aided and abetted or willfully caused another person to do so.  You must find beyond a

24   reasonable doubt that the defendant actually committed the underlying crime of violence or drug

1  trafficking crime.  Possession in furtherance, as I explained earlier, requires that the firearm must have

2  played some part in furthering the crime in order for this element to be satisfied.

3       For <u>Count Three</u>, which charges Mr. Blondet with committing this crime in connection with the

4  murder of Crystal Martinez-Ramirez, the underlying crime of violence that must be proved beyond a

5  reasonable doubt is the murder in aid of racketeering crime that is charged in Count Two.

6       For <u>Counts Six</u> and <u>Nine</u>, which charge Mr. Marquez-Alejandro with committing this crime in

7  connection with the murders of Israel Crespo-Cotto and Carlos Barbosa, respectively, the underlying

8  crimes of violence and drug trafficking crimes — only one of which must be proved beyond a

9  reasonable doubt — are the murder in aid of racketeering and drug-related murder crimes that are

10  charged in Counts Four and Five and Counts Seven and Nine, respectively.  You must be unanimous,

11  however, as to which of these underlying crimes was proved beyond a reasonable doubt.

12  ~~Adapted from *United States v. Berry*, 20 Cr. 84 (AJN) (S.D.N.Y. 2021); *United States v. Lopez-*~~

13  ~~*Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); *United States v. Pizzaro*, 16 Cr. 54 (GHW)~~

14  ~~(S.D.N.Y. 2017); *see United States v. Gomez*, 580 F.3d 94, 103 (2d Cir. 2009).~~

15

16            3.   <u>Murder Using a Firearm: Causing Death</u>

17       The third element the Government must prove beyond a reasonable doubt with respect to

18  Counts Three, Six, and Nine is that the defendant at issue caused the death of a person through the use

19  of a firearm, or aided and abetted or willfully caused the same.  The defendant may be found to have

20  caused the death of the victim if his conduct, or the conduct of the person he aided and abetted, was a

21  substantial factor in causing the death and the victim would not have died except for that conduct.

22  Conduct was a substantial factor if it had such an effect in producing the death that would lead a

23  reasonable person to regard the conduct as a cause of death.  The death of a person may have one or

24  more than one cause.  The Government need not prove that the conduct of the defendant at issue, or the

1   person he aided and abetted, was the only cause of the victim's death, and you do not need to find that

2   the defendant at issue shot the victim or that he committed the final, fatal act.  The Government need

3   prove only that the conduct of the defendant at issue, or the person he aided and abetted, was a

4   substantial factor in causing the death.

5   ~~Adapted from *United States v. Berry*, 20 Cr. 84 (AJN) (S.D.N.Y. 2021); *United States v. Lopez-~~

6   ~~Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); *United States v. Pizzaro*, 16 Cr. 54 (GHW)~~

7   ~~(S.D.N.Y. 2017).~~

8

9               4.   <u>Murder Using a Firearm: Death Qualifies as a Murder under Federal Law</u>

10             The fourth element the Government must prove beyond a reasonable doubt with respect to

11   Counts Three, Six, and Nine is that the defendant at issue committed, or aided and abetted, the charged

12   murder in violation of federal law.  Fortunately, the definition of murder under federal law is very

13   similar to the definition under Puerto Rico law, which I explained to you in connection with Count

14   One.  The federal statute defines murder as "the unlawful killing of a human being, with malice

15   aforethought."  As I previously instructed, a killing is done with "malice aforethought," if it was done

16   consciously with the intent to kill.  The Government must prove beyond a reasonable doubt that the act

17   that caused death was done willfully, with a bad or evil purpose to break the law.  But the Government

18   need not prove spite, malevolence, hatred, or ill will toward the victim in order to prove "malice

19   aforethought."

20   ~~Adapted from *United States v. Berry*, 20 Cr. 84 (AJN) (S.D.N.Y. 2021); *United States v. Lopez-~~

21   ~~Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); *United States v. Pizzaro*, 16 Cr. 54 (GHW)~~

22   ~~(S.D.N.Y. 2017); *see* Sand, *Modern Federal Jury Instructions – Criminal*, Instr. 35-88.~~

23

1        ### 5.   Murder Using a Firearm: Knowingly

2        The final element the Government must prove beyond a reasonable doubt with respect to

3   Counts Three, Six, and Nine is that the defendant at issue knew that he, or the person he aided and

4   abetted, was using, carrying, or possessing a firearm and that he acted knowingly in doing so.

5        To satisfy this element, you must find that the defendant at issue had knowledge that what was

6   being carried or used was a firearm as that term is generally used.  An act is done "knowingly" if it is

7   done purposefully and voluntarily as opposed to mistakenly or accidentally.  You will recall that I

8   instructed you earlier that to find that someone acted knowingly requires you to make a finding as to

9   that person's state of mind.  In order for the Government to satisfy this element, it must prove that the

10   defendant at issue knew what he was doing — for example, that he knew that he, or the person he

11   aided and abetted, was possessing or carrying a firearm in furtherance of the commission of a crime of

12   violence or a drug trafficking crime.  It is not necessary, however, for the Government to prove that the

13   defendant knew that he was violating any particular law.

14   ~~Adapted from *United States v. Berry*, 20 Cr. 84 (AJN) (S.D.N.Y. 2021); *United States v. Lopez-~~

15   ~~Cabrera*, S5 11 Cr. 1032 (PAE) (S.D.N.Y. 2014); *United States v. Pizzaro*, 16 Cr. 54 (GHW)~~

16   ~~(S.D.N.Y. 2017); *see* Sand, *Modern Federal Jury Instructions - Criminal* Instr. 35-89.~~

17

18   ### ~~G.~~H.   Venue

19        In addition to all of the elements that I have described for you, in order to convict a defendant

20   on any count of the Indictment, you must also decide whether any act in furtherance of that crime

21   occurred within the Southern District of New York.  The Southern District of New York includes

22   Manhattan and the Bronx.

23        The Government need not prove that any crime was committed entirely in this district or that

24   any defendant was present here.  It is sufficient to establish venue if any act in furtherance of the crime

1   you are considering occurred within the Southern District of New York, and it was reasonably

2   foreseeable to the defendant that the act would take place in the Southern District of New York.

3   Therefore, the fact that a murder is alleged to have occurred outside of this district does not preclude

4   you from finding that venue has been established as to the specific charged offenses.  Any action in

5   this district or any communication into or out of this district can establish venue so long as the action

6   or communication furthered the charged offense.  If you find that the crime charged was committed in

7   more than one district, venue is proper in any district in which the crime was begun, continued, or

8   completed.

9        I should note that on this issue — and this issue alone — the Government's burden is not proof

10   beyond a reasonable doubt, but only proof by a preponderance of the evidence.  Thus, the Government

11   has satisfied its venue obligations as to a count if you conclude that it is more likely than not that any

12   act in furtherance of the crime charged in that count occurred in the Southern District of New York.

13   By contrast, if you find that the Government failed to prove venue by a preponderance of the evidence

14   with regard to any count, then you must acquit the defendant you are considering of that count.

15   Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021); Sand, *Modern Federal*

16   *Jury Instructions: Criminal*, Instr. 3-11.

17

18   H.I.    Timing of the Offenses

19        With respect to the dates set forth in the Indictment, it is sufficient if you find that the charged

20   conduct that you are considering occurred around the dates set forth in the Indictment.

21        This is also a good opportunity to instruct you that it does not matter if a specific event or

22   transaction is alleged to have occurred on or about a certain date and the evidence indicates that, in

23   fact, it occurred on another date.  The law requires only a substantial similarity between the dates

24   alleged in the Indictment and the dates established by the testimony and other evidence.

1   Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021); Sand, *Modern Federal*

2   *Jury Instructions-Criminal,* Instr. 3-12.

3

4

5                        **CONCLUDING INSTRUCTIONS**

6   A.  COVID-19 Protocols

7           In a few minutes, you are going to go into the jury room and begin your deliberations.  During

8   your deliberations, please continue to adhere to the safety protocols that we have used throughout the

9   trial, including social distancing and masking.  We have taken those precautions, on the advice of our

10  medical experts, to ensure that everyone remains safe and healthy during trials.  In addition, as I

11  mentioned to you during trial, people have different levels of anxiety and risk tolerance when it comes

12  to COVID-19.  By adhering to the protocols, you not only ensure that everyone remains safe and

13  healthy, but also respect the fact that your fellow jurors may or may not have the same level of comfort

14  with the current situation that you have.

15  Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

16

17  B.  Selection of the Foreperson

18          After you retire to begin your deliberations, your first task will be to select a foreperson.  The

19  foreperson has no greater voice or authority than any other juror but is the person who will

20  communicate with me when questions arise and when you have reached a verdict and who will be

21  asked in open court to pass your completed Verdict Form to me.  Notes should be signed by the

22  foreperson and should include the date and time they were sent.  Any notes from the jury will become

23  part of the record in this case.  So please be as clear and specific as you can be in any notes that you

1    send.  Do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is

2    reached.

3    Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

4

5    C.  Right to See Exhibits and Hear Testimony

6          All of the exhibits (other than the contraband) will be given to you near the start of

7    deliberations.  The documentary evidence will be provided to you in electronic form.  In addition, you

8    will also be provided with an electronic list that the parties have prepared of all witnesses who testified

9    at trial and a separate list of all exhibits that were received into evidence.  When you retire to

10   deliberate, the Court staff with provide you with information on how to access and display these lists

11   and the evidence in the jury room.

12          If, during your deliberations, you prefer to view any evidence here in the courtroom or you

13   want any of the testimony read back to you, you may also request that.  Keep in mind that if you ask

14   for testimony, however, the court reporter must search through his or her notes, the parties must agree

15   on what portions of testimony may be called for, and if they disagree I must resolve those

16   disagreements.  That can be a time-consuming process.  So please try to be as specific as you possibly

17   can in requesting portions of the testimony, if you do.

18          Again, your requests for testimony — in fact, any communication with the Court — should be

19   made to me in writing, signed by your foreperson with the date and time, and given to one of the Court

20   Security Officers.

21   Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

22

1    D.  Juror Note-Taking

2        If any one of you took notes during the course of the trial, you should not show your notes to,

3    or discuss your notes with, any other jurors during your deliberations.  Any notes you have taken are to

4    be used solely to assist you.  The fact that a particular juror has taken notes entitles that juror's views

5    to no greater weight than those of any other juror.  Finally, your notes are not to substitute for your

6    recollection of the evidence in the case.  If, during your deliberations, you have any doubt as to any of

7    the testimony, you may — as I just told you — request that the official trial transcript that has been

8    made of these proceedings be read back to you.

9    Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

10

11   E.  Bias or Sympathy as Juror

12       All of us, no matter how hard we try, tend to look at others and weigh what they have to say

13   through the lens of our own experience and background.  We each have a tendency to stereotype others

14   and make assumptions about them.  Often, we see life and evaluate evidence through a clouded filter

15   that tends to favor those like ourselves.  You must do the best you can to put aside such stereotypes, for

16   all litigants and witnesses are entitled to a level playing field.

17       Indeed, under your oath as jurors, you are not to be swayed by bias or sympathy.  You are to be

18   guided solely by the evidence in this case, and as you sift through the evidence, the crucial question

19   that you must ask yourselves for each count is:  Has the Government proved each element beyond a

20   reasonable doubt?

21       It is for you and you alone to decide whether the Government has proved that each defendant is

22   guilty of each count, solely on the basis of the evidence and subject to the law as I have instructed you.

23       It must be clear to you that once you let prejudice, bias, or sympathy interfere with your

24   thinking, there is a risk that you will not arrive at a true and just verdict.

1    If you have a reasonable doubt as to a defendant's guilt with respect to a particular count, then

2    you must render a verdict of acquittal as to that defendant on that particular count.  On the other hand,

3    if you should find that the Government has met its burden of proving the guilt of a defendant beyond a

4    reasonable doubt with respect to a particular count, then you should not hesitate because of sympathy

5    or any other reason to render a verdict of guilty as to that defendant on that count.

6    I also caution you that, under your oath as jurors, you cannot allow to enter into your

7    deliberations any consideration of the punishment that may be imposed upon a defendant if he is

8    convicted.  The duty of imposing a sentence in the event of conviction rests exclusively with the Court,

9    and the issue of punishment may not affect your deliberations as to whether the Government has

10   proved a defendant's guilt beyond a reasonable doubt.

11   ~~Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021); Judith Olans Brown et~~

12   ~~al., *Some Thoughts About Social Perception & Employment Discrimination Law: A Modest*~~

13   ~~*Proposal for Reopening the Judicial Dialogue*, 46 Emory L.J. 1487, 1531 (1997); *see also* Anna~~

14   ~~Roberts, *(Re)forming the Jury: Detection and Disinfection of Implicit Juror Bias*, 44 Conn. L. Rev.~~

15   ~~827, 859-60 & n.254 (2012).~~

16

17   F.  <u>Duty to Deliberate</u>

18   The most important part of this case, members of the jury, is the part that you as jurors are now

19   about to play as you deliberate on the issues of fact.  I know you will try the issues that have been

20   presented to you according to the oath that you have taken as jurors.  In that oath you promised that

21   you would well and truly try the issues joined in this case and a true verdict render.

22   As you deliberate, please listen to the opinions of your fellow jurors, and ask for an opportunity

23   to express your own views.  Every juror should be heard.  No one juror should hold the center stage in

24   the jury room and no one juror should control or monopolize the deliberations.  If, after listening to

1   your fellow jurors and if, after stating your own view, you become convinced that your view is wrong,

2   do not hesitate because of stubbornness or pride to change your view.  On the other hand, do not

3   surrender your honest convictions and beliefs solely because of the opinions of your fellow jurors or

4   because you are outnumbered.

5          Your verdict must be unanimous.  If at any time you are not in agreement, you are instructed

6   that you are not to reveal the standing of the jurors, that is, the split of the vote, to anyone, including

7   me, at any time during your deliberations.

8   Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

9

10  G.  Return of the Verdict

11         We have prepared a Verdict Form for you to use in recording your decisions,verdict as to each

12  defendant on each count in which he is charged.  As to some counts, if you find a defendant guilty,

13  there will be additional determinations for you to make.  The Verdict Form will set out clearly for you

14  each of the determinations that you will be called upon to make.

15         A copy of which the Verdict Form is attached to these instructions.  DoBut do not write on

16  your individual copies of the Verdict Form.  My staff will give the official Verdict Form to Juror

17  Number One, who should give it to the foreperson after the foreperson has been selected.

18         You should draw no inference from the questions on the Verdict Form as to what your verdict

19  should be.  The questions are not to be taken as any indication that I have any opinion as to how they

20  should be answered.

21         After you have reached a verdict, the foreperson should fill in the Verdict Form and note the

22  date and time, and you should all sign the Verdict Form.  The foreperson should then give a note —

23  **not** the Verdict Form itself — to the Court Security Officer outside your door stating that you have

1    reached a verdict.  Do not specify what the verdict is in your note.  Instead, the foreperson should

2    retain the Verdict Form and hand it to me in open court when I ask for it.

3        I will stress again that each of you must be in agreement with the verdict that is announced in

4    court.  Once your verdict is announced in open court and officially recorded, it cannot ordinarily be

5    revoked.

6    Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

7

8    H.  Closing Comments

9        Finally, I say this, not because I think it is necessary, but because it is the custom in this

10   courthouse to say it: You should treat each other with courtesy and respect during your deliberations.

11       All litigants stand equal in this room.  All litigants stand equal before the bar of justice.  All

12   litigants stand equal before you.  Your duty is to decide between these parties fairly and impartially,

13   and to see that justice is done.

14       Under your oath as jurors, you are not to be swayed by sympathy.  You should be guided solely

15   by the evidence presented during the trial and the law as I gave it to you, without regard to the

16   consequences of your decision.  You have been chosen to try the issues of fact and reach a verdict on

17   the basis of the evidence or lack of evidence.  If you let sympathy interfere with your clear thinking,

18   there is a risk that you will not arrive at a just verdict.  You must make a fair and impartial decision so

19   that you will arrive at the just verdict.

20       Members of the jury, I ask your patience for a few moments longer.  It is necessary for me to

21   spend a few moments with the parties and the court reporter at the side bar.  I will ask you to remain

22   patiently in the jury box, without speaking to each other, and we will return in just a moment to submit

23   the case to you.  Thank you.

24   Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF) (S.D.N.Y. 2021).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                    :
UNITED STATES OF AMERICA,                           :
                                                    :
          -v-                                       :          S13 16-CR-387 (JMF)
                                                    :
JULIO MARQUEZ-ALEJANDRO and LUIS                    :
BLONDET,                                            :          <u>VERDICT FORM</u>
                                                    :
                    Defendants.                     :
                                                    :
------------------------------------------------------------------X


***All Answers Must Be Unanimous***


<u>***Rest of Page Left Intentionally Blank — Please Turn to the Next Page***</u>

**Count One: Racketeering Conspiracy (Defendant JULIO MARQUEZ-ALEJANDRO)**

As to Count One, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

Guilty _____   Not Guilty _____

<u>If and only if</u> you find defendant JULIO MARQUEZ-ALEJANDRO guilty of Count One, which types of racketeering crimes do you find were involved in the offense?

<u>Acts Involving Murder or Attempted Murder</u>

Proved _____        Not Proved _____

_____

_____ If you find that the offense involved acts involving murder or attempted murder, how many such acts do you find were involved in the offense?

_____ One _____   Two _____   More Than Two _____

<u>Acts Involving Drug Trafficking</u>

Proved _____        Not Proved _____

_____ If you find that the offense involved acts involving drug trafficking, ~~did~~how many such acts do you find were involved in the offense ~~involve five kilograms or more of cocaine?~~?

_____ One _____   Two _____   More Than Two _____

If you find that the offense involved acts involving drug trafficking, did the offense involve five kilograms or more of cocaine?

_____ Proved _____ Not Proved _____

_____ Acts Involving Bribery

_____ Proved _____ Not Proved _____

~~Proved _____        Not Proved _____~~

~~Acts Involving Bribery~~

~~Proved _____        Not Proved _____~~

_____ If you find that the offense involved acts involving bribery, how many such acts do you find were involved in the offense?

_____ One _____   Two _____   More Than Two _____

2

**Count One: Racketeering Conspiracy (Defendant LUIS BLONDET)**

As to Count One, how do you find defendant LUIS BLONDET?

Guilty _____   Not Guilty _____

If and only if you find defendant LUIS BLONDET guilty of Count One, which types of racketeering crimes do you find were involved in the offense?

Acts Involving Murder or Attempted Murder

Proved _____          Not Proved _____

_____   If you find that the offense involved acts involving murder or attempted murder, how many such acts do you find were involved in the offense?

_____   One _____   Two _____   More Than Two _____

Acts Involving Drug Trafficking

Proved _____          Not Proved _____

_____   If you find that the offense involved acts involving drug trafficking, how many such acts do you find were involved in the offense?

_____   One _____   Two _____   More Than Two _____

If you find that the offense involved acts involving drug trafficking, did the offense involve five kilograms or more of cocaine?

_____   Proved _____          Not Proved _____

_____   Acts Involving Bribery

_____   Proved _____          Not Proved _____

_____   If you find that the offense involved acts involving bribery, how many such acts do you find were involved in the offense?

_____   One _____   Two _____   More Than Two _____

4

~~If you find that the offense involved acts involving drug trafficking, did the offense involve five kilograms or more of cocaine?~~

~~Proved _____          Not Proved _____~~

~~Acts Involving Bribery~~

~~Proved _____          Not Proved _____~~

## Count Two: Murder in Aid of Racketeering – Crystal Martinez-Ramirez

As to Count 2, how do you find defendant LUIS BLONDET?

Guilty _____          Not Guilty _____

~~If and only if you find defendant LUIS BLONDET guilty of Counts One and Two, would you have reached the same verdict with respect to Mr. Blondet as to Count One even if you had found him not guilty as to Count Two?~~

~~Yes _____          No _____~~

~~If and only if you find defendant JULIO MARQUEZ-ALEJANDRO guilty of Count One and defendant LUIS BLONDET guilty of Count Two, would you have reached the same verdict with respect to Mr. Marquez-Alejandro as to Count One even if you had found Mr. Blondet not guilty as to Count Two?~~

~~Yes _____          No _____~~

## Count Three: Murder Using a Firearm – Crystal Martinez-Ramirez

As to Count Three, how do you find defendant LUIS BLONDET?

Guilty _____          Not Guilty _____

## Count Four: Murder in Aid of Racketeering – Israel Crespo-Cotto

As to Count Four, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

Guilty _____          Not Guilty _____

## Count Five: Murder While Engaged in a Drug Crime – Israel Crespo-Cotto

As to Count Five, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

Guilty _____          Not Guilty _____

**Count Six: Murder Using a Firearm – Israel Crespo-Cotto**

As to Count Six, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

Guilty _____          Not Guilty _____

**Count Seven: Murder in Aid of Racketeering – Carlos Barbosa**

As to Count Seven, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

Guilty _____          Not Guilty _____

**Count Eight: Murder While Engaged in a Drug Crime – Carlos Barbosa**

As to Count Eight, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

Guilty _____          Not Guilty _____

**Count Nine: Murder Using a Firearm – Carlos Barbosa**

As to Count Nine, how do you find defendant JULIO MARQUEZ-ALEJANDRO?

Guilty _____          Not Guilty _____

*After completing the Verdict Form, please sign your names in the spaces provided below, fill in the date and time, and inform the Court Security Officer that you have reached a verdict.*

_____          _____
Foreperson

_____          _____

_____          _____

6

_____          _____

_____          _____

_____          _____

Date and Time:            _____

***Once you have signed the Verdict Form, please give a note — NOT the Verdict Form itself —
to the Court Security Officer stating that you have reached a verdict.***